# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHONES PLUS, INC., Plan Administrator Of the Phones Plus Retirement Savings Plan, On Behalf of Itself and All Others Similarly Situated, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC., HARTFORD LIFE INSURANCE COMPANY and NEUBERGER BERMAN MANAGEMENT INC., | ) ) ) ) |
| Defendants. | ) ) ) |

Civil Action No. 3:06-cv-01835 (AVC)

March 19, 2007

# HARTFORD LIFE INSURANCE COMPANY'S AND THE HARTFORD FINANCIAL SERVICES GROUP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                                                 iii

I.      INTRODUCTION                                                                   1

II.     SUMMARY OF FACTS AND ALLEGATIONS                                             5

        A.      The Parties                                                           5

                1.      Hartford Life Insurance Company                              5

                        (i)     Group Annuity Contract and Fees Received From
                                Mutual Fund Complexes                                 5

                        (ii)    Administrative Services Agreement                     7

                2.      Neuberger Berman Investment Management, Inc.                  8

                3.      Phones Plus, Inc.                                             9

                4.      The Hartford Financial Services Group, Inc.                  11

        B.      Plaintiff's Allegations Against Hartford Life                        11

III.    STANDARD OF REVIEW                                                          12

IV.     ARGUMENT                                                                    12

        A.      Hartford Life Is Not An ERISA Fiduciary To The Phones
                Plus Plan.                                                           12

                1.      Hartford Life Is Not a Named Fiduciary.                      13

                2.      Hartford Life Did Not Engage in any Activity that Would
                        Cause It To Become a Fiduciary Under ERISA.                  13

                        a.      Hartford Life is not a fiduciary with respect to
                                developing and offering a Menu of Funds prior to
                                contract execution.                                  15

                        b.      Hartford Life is not a fiduciary with respect to
                                Phones Plus' selection of Investment Options from
                                the Menu of Funds because Hartford Life played no
                                role in the selection process.                       16

c.    Hartford Life is not a fiduciary with respect to the addition, deletion, or substitution of mutual funds from the Menu of Funds because Phones Plus has the ultimate authority to accept or reject any proposed changes.    17

3.    Hartford Life Did Not Become a Fiduciary by Simply Adhering to the Terms of the Contract and Accepting Fees from the Mutual Fund Complexes that were Disclosed to and Acknowledged by Plaintiff.    20

4.    Hartford Life Is Not a Fiduciary by Virtue of its Receipt and Retention of the Fees Because the Fees are not Plan Assets.    24

a.    Phones Plus has no "beneficial interest" in the Fees.    24

b.    *Haddock* does not and should not apply here.    25

B.    Dismissal Of The Claims In This Case Is Consistent With A Recent And Closely Analogous Decision Of The Seventh Circuit Court of Appeals.    28

C.    Plaintiff's "Alternative" Claim For Knowing Participation In A Breach Of Trust Must Be Dismissed Because The Fees Are Not Plan Assets And Their Receipt And Retention By Hartford Life Is Not Unlawful.    30

D.    The Claims Against The Hartford Financial Services Group, Inc. Must Be Dismissed Because HFSG Is Not A Party To The Contract Or Agreement And Otherwise Had No Involvement With The Plan.    31

V.    CONCLUSION    33

## TABLE OF AUTHORITIES

**Federal Cases**

*Assocs. in Adolescent Psychiatry, S.C. v. Home Life Ins. Co. of New York*,
  729 F. Supp. 1162 (N.D. Ill. 1989) ................................................................... 18, 27

*Brooks v. Von Lenthe,* No. 06-2407-cv, 2006 WL 3509134 (2d Cir. Dec. 5, 2006) .................... 32

*Carlson v. Principal Fin. Group,* 320 F.3d 301 (2d Cir. 2003)..................................... 30

*Chapman v. Klemick*, 3 F.3d 1508 (11th Cir. 1993), *cert. denied*,
  510 U.S. 1165 (1994)................................................................................ 25

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463
  (7th Cir. 2007)............................................................. 16, 18, 20, 25, 27, 28

*Collier v. Aksys Ltd*., No. 3:04CV1232, 2005 WL 1949868 (D. Conn. Aug. 15, 2005) .............. 12

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ..................................... 32

*Dow Jones & Co. v. International Sec. Exch., Inc*., 451 F.3d 295 (2d Cir. 2006)...................... 12

*F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250 (2d Cir. 1987) .................... 14, 15

*Fechter v. Connecticut Gen. Life Ins. Co.,* 800 F. Supp. 182 (E.D. Pa. 1992) ........................... 22

*Ferber v. Travelers Corp*., 802 F. Supp. 698 (D. Conn. 1992) ................................... 12

*Flanigan v. General Elec. Co*., 93 F. Supp. 2d 236 (D. Conn. 2000).......................... 15

*Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669 (2d Cir. 1995).................................... 12

*Haddock v. Nationwide Financial Services, Inc*., 419 F. Supp. 2d 156
  (D. Conn. 2006) ................................................................ 3, 25, 26, 27

*Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co.,* 302 F.3d 18
  (2d Cir. 2002)...................................................................... 14, 21, 23

*Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.* 530 U.S. 238 (2000) ............... 23, 30

*Holloway v. King*, 161 F. App'x. 122 (2d Cir. 2005) ..................................................... 5

*Hurwitz v. Sher*, 982 F.2d 778 (2d Cir. 1992)............................................................ 19

*In re Smithkline Beecham Clinical Labs., Inc*., 108 F. Supp. 2d 84 (D. Conn. 1999)................. 32

*Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10 (2d Cir. 2001) ..................................... 12

*Lyons v. Georgia-Pac. Corp. Salaried Employees Ret. Plan*,  221 F.3d 1235
    (11th Cir. 2000)............................................................................................................ 19

*Mangiafico v. Blumenthal*, No. 05-5465-cv, 2006 WL 3734171
    (2d Cir. Dec. 19, 2006) .................................................................................................. 5

*Natural Res. Def. Council, Inc. v. Muszynski*,  268 F.3d 91 (2d Cir. 2001) ................................ 19

*Schulist v. Blue Cross of Iowa*, 553 F. Supp. 248 (N.D. Ill. 1982)................................................. 20

*Schulist v. Blue Cross of Iowa*, 717 F.2d 1127 (7th Cir. 1983) ............................................. 21, 29

*Seaway Food Town, Inc. v. Medical Mut. of Ohio*, 347 F.3d 610 (6th Cir. 2003) ................ 16, 21

*Sirna v. Prudential Sec., Inc.*, 964 F. Supp. 147 (S.D.N.Y. 1997) ................................................ 15

*Trustees of Laborers' Local No. 72 Pension Fund v. Nationwide Life Ins. Co.*,
    783 F. Supp. 899 (D. N.J. 1992) .................................................................... 18, 22, 27

*Useden v. Acker*, 947 F.2d 1563 (11th Cir. 1991), *cert. denied*, 508 U.S. 959 (1993)................. 25

## Federal Statutes

29 U.S.C. § 1002(21)(A).................................................................................... 12, 13, 14

29 U.S.C. § 1102(a) ................................................................................................. 12, 13

29 U.S.C. § 1104.......................................................................................................... 14

29 U.S.C. § 1104(a)(1).................................................................................................. 9

29 U.S.C. § 1106(b) ..................................................................................................... 15

29 U.S.C. § 1132(a) ..................................................................................................... 30

## Federal Rules

Fed. R. Civ. P. 12(b)(6)................................................................................. 4, 12, 28, 29

**I.     INTRODUCTION**

Both the demise of traditional pension plans and concern about the viability of social security have contributed to the increasing popularity of the 401(k) plan as a vehicle to fund retirement.  In recognition of the demand for a 401(k) product that is affordable and accessible, service providers such as Hartford Life Insurance Company ("Hartford Life") have developed retirement products that provide a menu of investment options from which the employer sponsoring the 401(k) plan can choose, and a mechanism through which the contributions of employee participants can be invested.  While Hartford Life does not offer investment advice, it does, as a service to its customers, offer access to the services of an independent investment adviser like Neuberger Berman Investment Management, Inc. ("Neuberger"), as an optional add-on that is contracted for directly between the retirement plan and the investment adviser.  This type of 401(k) product is a staple of the industry.

The case now before the Court involves a typical employer-sponsored 401(k) retirement plan, the Phones Plus Retirement Savings Plan (the "Plan"). The Plaintiff, Phones Plus, Inc. ("Phones Plus"), the sponsoring employer, is the trustee of the Plan and a fiduciary of the Plan. In this capacity, it is Plaintiff's fiduciary duty to assess the available 401(k) products in the marketplace and to select an appropriate product based on such criteria as the menu of possible investment options and the fees associated with the product.  The Plan is required to make a prudent selection of a service provider, acting at all times in the best interests and for the exclusive benefit of the participants and beneficiaries in the Plan.

Hartford Life is a service provider that furnishes the funding vehicle for the Plan in the form of a group annuity contract that offers a "menu" of numerous mutual funds ("Menu of Funds").  From this Menu of Funds, the Plan sponsor or its investment adviser selects a

considerably smaller number of particular funds ("Investment Options") to make available to its participants.  Before Plaintiff entered into the Hartford group annuity contract, Hartford Life expressly informed the Plan that Hartford Life receives fees from some of the mutual fund complexes associated with the mutual funds listed on the Menu of Funds (the "Fees").  The Plan acknowledged Hartford Life's receipt and retention of any such Fees.

Hartford Life also performs certain non-discretionary, ministerial administrative services for the Plan at the Plaintiff's direction.  Neuberger, because Plaintiff elected to retain its services, contracted directly with the Plan to provide fiduciary investment advice to assist Plaintiff in selecting from among the numerous funds on Hartford Life's Menu of Funds a customized list of Investment Options for Plan participants and beneficiaries.

In the context of this arrangement, Phones Plus has sued Hartford Life under the Employee Retirement Income Security act of 1974 ("ERISA") seeking to recover the Fees paid by the mutual fund complexes to Hartford Life.  Since the Plan is not entitled to the Fees under the terms of any contract, Phones Plus has resorted to crafting a novel argument that Hartford Life is an ERISA fiduciary and has violated certain provisions of ERISA, applicable only to ERISA fiduciaries, by receiving and retaining the Fees.  Hartford Life's so-called fiduciary status is allegedly predicated upon (i) its putting together, prior to any contract between Hartford Life and Phones Plus, the Menu of Funds available to all purchasers of this Hartford Life group annuity (and from which group annuity purchasers like Phones Plus could then select a much smaller, customized list of funds to be offered to its Plan participants); (ii) Hartford Life's right to make changes to the Menu of Funds; and (iii) Hartford Life's control over the Fees, which Plaintiff mischaracterizes as assets of the Plan ("Plan assets").

As discussed in greater detail below, Hartford Life is not a fiduciary to the Plan and thus can have breached no fiduciary duties to the Plan.  This is because:

1.   Hartford Life is not named as a fiduciary under the terms of the Plan and in the relevant documents between Phones Plus and Hartford Life, and Phones Plus has acknowledged in writing that Hartford Life does not act as a fiduciary with regard to the Plan;

2.   By its own written acknowledgment, Phones Plus is a fiduciary to the Plan and has "exclusive responsibility for the selection and assessment of investment alternatives under the Plan";

3.   Phones Plus, in its capacity as a plan fiduciary, acknowledged Hartford Life's receipt and retention of the Fees; and

4.   The interlocutory decision upon which Plaintiff's Amended Complaint appears to be based, *Haddock v. Nationwide Financial Services, Inc.*, 419 F. Supp. 2d 156 (D. Conn. 2006), is inapposite here and contrary to the overwhelming weight of both prior and subsequent caselaw and regulatory authority.

Under circumstances similar to those at issue in this case, the courts have consistently held that a service provider like Hartford Life is not acting as a fiduciary and/or breaching any fiduciary duties.  Indeed, consistent with such caselaw, the U.S. Department of Labor has issued an Advisory Opinion (97-16A) which specifically addressed an arrangement almost identical to the arrangement between Phones Plus and Hartford Life, and found that the service provider in that instance was not a fiduciary.  Accordingly, the Advisory Opinion concluded that the service provider breached no fiduciary duties either in connection with (i) its performance of services that are the same as those performed by Hartford Life, or (ii) its receipt and retention of fees similar to those received and retained by Hartford Life.  Service providers like Hartford Life have relied on this Advisory Opinion for over ten years in structuring arrangements with 401(k) plans like the one at issue in this case.

The Amended Complaint invites the Court to substantially extend the scope of ERISA by expanding the definition of an ERISA fiduciary in a way that is contrary to the vast weight of caselaw and regulatory authority.  Hartford Life respectfully submits that the Court should decline this invitation and, pursuant to Federal Rule of Civil Procedure 12(b)(6), dismiss Counts I and II of the Amended Complaint for failing to state a legally cognizable claim because Hartford Life is not an ERISA fiduciary as a matter of law.

Count III of the Amended Complaint alleges an alternative theory:  namely, that if Hartford Life is not a fiduciary, it is nonetheless liable (as a non-fiduciary) for knowing participation in a breach of trust by a fiduciary.  The gravamen of Count III is apparently the theory that Hartford Life received purported Plan assets (that is, the Fees) with actual or constructive knowledge that it did so illegally.  This claim is completely without merit because the Fees are not Plan assets and their receipt and retention by Hartford Life is not only not unlawful but was specifically disclosed to and acknowledged by the Plan in advance.

The claims against The Hartford Financial Services Group, Inc. ("HFSG") should likewise be dismissed  because HFSG is not a party to the contracts between Hartford Life and Phones Plus or any agreements between Hartford Life and the various mutual fund complexes, and HFSG is not alleged to have had any involvement with the Plan.  Plaintiff has failed to allege any facts to justify disregarding the status of HFSG and Hartford Life as distinct corporate entities.

## II.    SUMMARY OF FACTS AND ALLEGATIONS

### A.    The Parties

#### 1.    Hartford Life Insurance Company

Defendant Hartford Life offers 401(k) products to retirement plans.  The 401(k) product

at issue in this case includes two basic components:  a group annuity contract and an

administrative services agreement.[1]  *See* Am. Compl. at ¶ 16.

>           (i)    Group Annuity Contract and Fees Received From Mutual Fund
>                    Complexes

The group annuity contract serves as the funding vehicle into which the plan places the

participants' contributions.  *See, e.g.,* Group Annuity Contract (the "Contract"), Section 2.  The

contributions are then invested primarily in mutual funds, through sub-accounts.  *See, e.g.,*

Contract, Separate Account Rider.[2]  In connection with the negotiation of the group annuity

contract with Hartford Life, a plan sponsor like Phones Plus selects the Investment Options it

will make available to its participants from the Menu of Funds developed by Hartford Life.  *See,*

*e.g.,* Part A, Section 5.  If it chooses not to make the selection itself, the plan can retain the

---

[1]  The Group Annuity Contract No. GA-24503, including all riders and amendments thereto, the Plan Sponsor Submission Information (Part A) ("Part A"), the Plan Information (Part B), and Administrative Services Agreement (Part C) (the "Agreement"), are attached hereto as Exhibits A, B, C, and D, respectively.  Parts A and B are expressly incorporated by reference into the Agreement between the Plan and Hartford Life, which, in turn, are specifically incorporated by reference in the Amended Complaint.  *See* Agreement, Section 16.14.  The Court can consider these contracts and Plan documents in deciding this Motion because they are integral to the Amended Complaint.  *See, e.g., Mangiafico v. Blumenthal*, No. 05-5465-cv, 2006 WL 3734171, at *6 (2d Cir. Dec. 19, 2006) (the court may consider a document on a motion to dismiss "where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint") (citations omitted); *Holloway v. King,* 161 F. App'x. 122, 124 (2d Cir. 2005) ("a complaint is deemed to include any written instrument . . . incorporated by reference") (citation and internal quotation omitted).

[2]  Plan contributions are invested in Hartford Life's separate account, not directly into mutual funds.  The separate account is divided into sub-accounts (or "investment divisions") and the sub-accounts invest in the underlying mutual fund shares.

services of an investment adviser, such as Neuberger or any other investment adviser it chooses, to make the selections on its behalf. *Id.*, Sections 4 & 5. However the plan sponsor chooses to make its mutual fund selections – independently or with the assistance of an investment adviser – Hartford Life offers **no advice**, exercises **no discretion**, and plays **no part** in deciding which mutual funds from the Menu of Funds are made available as Investment Options to the plan's participants. *See, e.g.,* Administrative Services Agreement, Section 16.2 ("The parties acknowledge that the Plan Sponsor has exclusive responsibility for the selection and assessment of investment alternatives under the Plan."); *see also* Basic Plan Document, Section 7.22B ("it shall be the Adopting Employer's responsibility to direct the Trustee (or Custodian, if applicable) as to permissible investments into which Participants may direct their individual accounts."). A copy of the Phones Plus Basic Plan Document is attached hereto as Exhibit E.

As is common in the 401(k) industry, Hartford Life receives Fees from mutual fund complexes in connection with the mutual funds that Hartford Life makes available to its 401(k) plan customers on the Menu of Funds. *See, e.g.,* Part A, Section 7. These amounts are paid for recordkeeping, marketing and distribution services. *Id.* Plans are expressly informed that Hartford Life receives these Fees from some of the mutual funds on the Menu of Funds and the plans expressly acknowledge Hartford Life's receipt of the Fees:

### Fees Received by Hartford Life

Hartford Life receives fees for administrative and other services from many, but not all, of the underlying funds that are offered as variable investment choices through the Group Variable Annuity Contract. These fees are not additional fees assessed by Hartford Life. The investment advisers, distributors and other affiliates of the underlying funds pay Hartford Life these fees in the amount up to 0.75% of assets. Fees may also be based on a percentage of contributions, up to 1.0%. The services for which Hartford Life receives such fees include recordkeeping, accounting, and the mailing of periodic reports, fund prospectuses and proxy materials, processing of purchase and redemption transactions, and marketing

assistance services.  These fees do not constitute compensation for investment advisory services.

Part A, Section 7.  In addition to receiving the above disclosure, a plan can request from Hartford Life specific information regarding which mutual funds pay fees and in what amount.  *See id.* ("For information on which underlying funds pay Hartford Life such fees and at what level, please call 1-800-843-6379.  Written confirmation provided upon request.").

By signing Part A, a plan fiduciary represents that "[a]s a Plan Sponsor/Fiduciary I certify that I have read and understood the information and options described in this document. ***My signature below signifies acceptance of the terms of these options***."  *Id.*, Section 21(emphasis added).  The Administrative Services Agreement reiterates a plan's approval of the Fees:  "The Plan Sponsor acknowledges and agrees that the receipt by Hartford Life of any fees provided for in this Agreement will not constitute a 'prohibited transaction' within the meaning of ERISA or the Code."  Administrative Services Agreement, Section 17.3.

(ii)     Administrative Services Agreement

Under the Administrative Services Agreement (the "Agreement"), Hartford Life agrees to provide non-fiduciary, non-discretionary and ministerial administrative services to the plan.  *See, e.g.,* Agreement, Section 16.1 ("The Plan Sponsor agrees and acknowledges that Hartford Life's duties and responsibilities are exclusively non-discretionary and ministerial and that no fiduciary responsibility is hereby conferred upon or assumed by Hartford Life under this Agreement.").  These services include: enrollment services, establishing participant accounts, handling benefit payments and loans, and records management.  *See generally id.*  The Agreement makes clear that Hartford Life is not the Plan administrator (as defined under ERISA) and that Hartford Life performs all of its functions at the direction of the Plan Administrator (here, Plaintiff).  *See id.*, Section 2.0 ("It is expressly agreed and understood that Hartford Life is not the Plan

7

Administrator and does not become responsible as Plan Administrator by performing any of the services under this Agreement.  Rather, Hartford Life performs such services under the direction of the Plan Administrator and its designated representative.").

The Contract and Agreement provide that a plan has the right to accept or reject any post-contract changes to the Menu of Funds made available by Hartford Life.  *See, e.g.,* Agreement, Section 16.2.  If a plan rejects a proposed change and Hartford Life refuses to acquiesce, the plan can terminate its relationship with Hartford Life.  *See, e.g.*, Contract, Sections 5.1 & 5.2.

### 2.    Neuberger Berman Investment Management, Inc.

Hartford Life contracted with Neuberger to provide, among other things, optional investment advisory services to plan sponsors that request investment advice.  *See* Advisory Services Agreement, Section 1.4, dated March 31, 2003, between Neuberger and Hartford Life Insurance Company, attached hereto as Exhibit F.  Hartford Life made Neuberger's services available to the plans for their consideration.  The plans were not required, however, to retain Neuberger for investment advice.  The plans had the sole discretion to decide whether or not to use Neuberger, and were free to hire any other investment adviser or to select the Investment Options themselves.  Retaining Neuberger was at the plan sponsor's option and expense, with a separate fee paid by the plan for Neuberger's investment advice.  *See* Am. Compl. at ¶ 26.

If a plan retains Neuberger, Neuberger acts as an investment advice fiduciary to the plan.  *See*, *e.g.,* Part A, Section 4.  Neuberger selects mutual funds from Hartford Life's Menu of Funds and creates groupings of mutual funds ("Fund Groups") based upon varying levels of risk tolerance.  *See* Advisory Services Agreement, Section 1.2.  Then, based upon the demographic information provided by the plan sponsors, Neuberger selects "the Fund Group that is most appropriate for the Plan and its participants."  *See, e.g.,* Plan Sponsor Advisory Agreement, Section 1.2, between Phones Plus and Neuberger, attached hereto as Exhibit G.  The Fund Group

1of 39

selected by Neuberger then becomes the Investment Options for the plan participants.  On behalf

of the plans, "Neuberger may change the composition of the Fund Groups and/or the Selection

from time to time, as it deems appropriate in its sole discretion, provided, however, that any such

change will be . . . made in a manner that (i) is consistent with the terms of the Variable Contract

issued by Hartford [Life] to the Plan and (ii) ***does not cause Hartford [Life] to undertake a***

***fiduciary role with respect to the Plan under ERISA***."  *Id.*  (emphasis added).

As the Advisory Services Agreement makes clear, Neuberger has "sole authority, control,

and responsibility for any and all investment research, analysis, recommendations and advice

provided to Plan Sponsors through the Plan Advisory Services."  Advisory Services Agreement,

Section 1.6.  The plan agrees in advance that Hartford Life is not responsible for the selection or

supervision of Neuberger.  *See, e.g.,* Part A, Section 21 ("I understand that Hartford Life is not

responsible for the selection or supervision of any service providers that the Plan has engaged, or

may engage from time to time (e.g., Investment Managers, Investment Advisors, Third Party

Administrators or Consultants))."

### 3. Phones Plus, Inc.

Phones Plus is the Plan sponsor, Plan administrator, and trustee of the Plan, and

acknowledges that it is a fiduciary of the Plan.  *See* Am. Compl. at Caption, ¶ 5.  Plaintiff, as a

named fiduciary to the Plan, presumably satisfied its fiduciary obligation to conduct a complete

review of Hartford Life's 401(k) product, and a review of the other 401(k) products in the

marketplace, before selecting a service provider.[3]

---

[3]   ERISA requires plan fiduciaries, such as Plaintiff (Am. Compl. at ¶ 5), to act in the best
interest of the plan's participants.  *See* ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  To fulfill its
fiduciary obligation to its plan participants, Plaintiff had a duty to review the information
regarding the Fees received by Hartford Life to ensure that the Plan's interests were protected.

Consistent with the contractual arrangement discussed above, Phones Plus purchased Hartford Life's 401(k) product, which included the Contract and Agreement.  The Contract was effective on February 1, 2004.  *See* Contract, Cover Page.  The Contract purchased by the Plan contained a Menu of Funds comprised of seventy-seven (77) mutual funds from which the Plan could select Investment Options for its participants.  *See* Part A, Section 5.  Prior to contracting, Hartford Life expressly informed the Plan that Hartford Life received Fees from some of the mutual fund complexes in connection with mutual funds on the Menu of Funds.  *Id*., Section 7. The Plan acknowledged Hartford Life's receipt and retention of the Fees.  *Id*., Section 21.

At the time of contracting, the Plan hired Neuberger to act as its investment adviser.  *See* Am. Compl. at ¶ 26.  Neuberger selected a Fund Group comprised of thirteen (13) mutual funds as Investment Options for the Plan participants from the Menu of Funds assembled by Hartford Life.  *See* Contract, Amendment Nos. 1 & 2; Part A, Section 5.  It is clear from the relevant contracts that these services are rendered by Neuberger in its capacity as an "agent" of Phones Plus, and not of Hartford Life.  *See* Advisory Services Agreement, Section 1.6.  The authority to select the Investment Options from the Hartford Life Menu of Funds, as well as to make any additions or deletions to the Menu of Funds, rests solely with Plaintiff:  "Plan Sponsor has exclusive responsibility for the selection and assessment of investment alternatives under the Plan" and "Hartford Life performs such services under the direction of the Plan Administrator and its designated representatives."  Agreement, Sections 16.2 and 2.0; *see also* Contract, Amendment No. 1; Plan Sponsor Advisory Agreement, Section 1.3.[4]

---

[4]  Neuberger subsequently recommended to the Plan that it offer four (4) additional mutual funds to its participants, and the Plan agreed and directed Hartford Life to make the change.  Contract, Amendments Nos. 1 & 2.

### 4.      The Hartford Financial Services Group, Inc.

The Amended Complaint alleges that Hartford Life is "a wholly owned subsidiary" of HFSG.  Am. Compl. ¶ 7.  HFSG is in fact Hartford Life's indirect corporate parent.[5]  HFSG does not have a contractual relationship with the Plan and nothing in the Plan documents indicates that HFSG is involved at all with the Plan.  *See* Contract and Agreement.[6]

### B.      Plaintiff's Allegations Against Hartford Life

Plaintiff seeks on behalf of the Plan to recover the Fees paid by the mutual fund complexes to Hartford Life.  *See* Am. Compl. ¶¶ 1 & 67.  The Plan has no contractual right to such Fees.  In an attempt to overcome the lack of contractual right to the Fees, the Amended Complaint alleges that Hartford Life is a fiduciary of the Plan and, as such, violated ERISA Sections 404 and 406(b) by accepting and retaining the Fees.  Count I alleges that Hartford Life breached its purported "fiduciary" duties under Section 404 by using its alleged "authority" to obtain the disclosed and acknowledged Fees.  Am. Compl. at ¶ 58.  Count II alleges that Hartford Life's receipt and retention of the Fees violates ERISA Section 406(b)'s prohibition against a "fiduciary" receiving any consideration for its own benefit in connection with a transaction involving "plan assets."  *Id.* at ¶ 66.  Count III, as directed against Hartford Life, alleges that Hartford Life is liable as a co-fiduciary under ERISA Section 405 and if it is determined not to be a fiduciary, it is liable for knowingly participating in a breach of trust by an ERISA fiduciary. *Id.* at ¶ 72.

---

[5] *See* Rule 7.1 Corporate Disclosure Statement, Doc. # 21.

[6] *See* Contract and Agreement (between Plaintiff and Hartford Life), Phones Plus Basic Plan Document, Advisory Services Agreement (between Hartford Life and Neuberger), Plan Sponsor Advisory Agreement (between Plaintiff and Neuberger).  These documents, integral to the allegations in the Amended Complaint and incorporated therein, are attached hereto as Exhibits A-G, respectively.

Plaintiff seeks, among other remedies, a Court order declaring that Hartford Life's receipt and retention of the Fees violates ERISA, a permanent injunction preventing Hartford Life from engaging in the conduct described herein in the future, and disgorgement, restitution and/or damages in the amount of the Fees received by Hartford Life. *Id.* at ¶¶ 4, 63, 68, and WHEREFORE clause.

## III.   STANDARD OF REVIEW

The Federal Rules require dismissal when the complaint fails to state a legally cognizable claim. Fed. R. Civ. P. 12(b)(6).  "[D]ismissal is appropriate if the plaintiff can prove no set of facts that would entitle him to relief." *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001) (citations omitted).  While, for purposes of a Rule 12(b)(6) motion, the Court should generally accept all facts alleged in plaintiff's complaint as true, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Dow Jones & Co. v. International Sec. Exch., Inc.*, 451 F.3d 295, 307-308 (2d Cir. 2006) (citation omitted.).  Similarly, a document either incorporated by reference or upon which Plaintiff otherwise relies controls over inconsistent allegations in the complaint. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995); *see also Collier v. Aksys Ltd.,* No. 3:04CV1232, 2005 WL 1949868, at *12 n.7 (D. Conn. Aug. 15, 2005) (the Court "need not accept as true an allegation that is contradicted by documents on which the complaint relies") (citations omitted); *Ferber v. Travelers Corp.,* 802 F. Supp. 698, 702 (D. Conn. 1992) (same).

## IV.   ARGUMENT

### A.   Hartford Life Is Not An ERISA Fiduciary To The Phones Plus Plan.

Under ERISA, a person can become a fiduciary in two ways.  The person can be named as a fiduciary in the plan documents. *See* ERISA § 402(a), 29 U.S.C. § 1102(a).  If a party is not

a "named" fiduciary, a party can become a fiduciary by virtue of the services it performs on behalf of a plan that give rise to fiduciary status.  *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  As discussed below, Hartford Life is not a fiduciary to the Plan, named or otherwise.

### 1.    Hartford Life Is Not a Named Fiduciary.

Plaintiff does not (and cannot) allege that Hartford Life is a named fiduciary to the Plan. Retirement plan documents generally identify the "named" plan fiduciaries.  *See* ERISA § 402(a), 29 U.S.C. § 1102(a).  Such "named" fiduciaries may include the plan sponsor, plan administrator, asset trustee, and/or investment manager.  *Id.*  Here, Plaintiff is a named fiduciary. Am. Compl. at Caption, ¶ 5; *see also* Agreement, Section 1.0 ("It is hereby represented by the Plan Sponsor that the Plan Sponsor is the Named Fiduciary of the Plan with authority to act for the Plan and to contract for services on behalf of the Plan.").  The Agreement between Plaintiff and Hartford Life explicitly acknowledges that Hartford Life is not a named fiduciary.  *See* Agreement, Section 16.1 ("no fiduciary responsibility is hereby conferred upon or assumed by Hartford Life under this Agreement").

### 2.    Hartford Life Did Not Engage in any Activity that Would Cause It To Become a Fiduciary Under ERISA.

Persons who are not identified as fiduciaries in the plan documents (such as Hartford Life) may be deemed to be ERISA fiduciaries by virtue of the services they perform on behalf of a plan that give rise to fiduciary status.  *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). ERISA defines a "fiduciary" as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any

authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).[7]

The Amended Complaint alleges in Counts I and II that Hartford Life is a fiduciary by virtue of its purported control over the selection of the mutual funds for the Plan, providing investment advice for a fee, and/or the receipt and retention of Fees which are mischaracterized as "plan assets." Based upon the above conduct, the Amended Complaint alleges that Hartford Life violated ERISA sections 404(a)(1)(A) and (B) and 406(b)(1) and (b)(3), which, by their express terms, apply only to ERISA fiduciaries.[8]  As demonstrated below, Hartford Life is not a

---

[7] As the Second Circuit Court of Appeals has observed, "a person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status ***only to the extent*** that he has or exercises the described authority or responsibility." *Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002), (quoting *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987) (emphasis added)).

[8] ERISA Sections 404(a)(1)(A) and (B) provide that "a ***fiduciary*** shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

> (A)  for the exclusive purpose of:
>
> > (i)  providing benefits to participants and their beneficiaries; and
> >
> > (ii)  defraying reasonable expenses of administering the plan;
>
> (B)  with the care, skill prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]."

29 U.S.C. § 1104.  ERISA Sections 406(b)(1) and (b)(3) provide that:

> (b)  "***A fiduciary with respect to a plan*** shall not –
>
> > (1)  deal with the assets of the plan in his own interest or for his own account;"

*     *     *

fiduciary to the Plan by virtue of any of the conduct alleged in the Amended Complaint.  In fact, Phones Plus acknowledged in the parties' contract, that Hartford Life is not a fiduciary:  "***The Plan Sponsor agrees and acknowledges that Hartford Life's duties and responsibilities are exclusively non-discretionary and ministerial and that no fiduciary responsibility is hereby conferred upon or assumed by Hartford Life under this Agreement***."  Agreement, Section 16.1 (emphasis added).

> a.     **Hartford Life is not a fiduciary with respect to developing and offering a Menu of Funds prior to contract execution.**

Hartford Life's development of the Menu of Funds offered to the Plan does not make Hartford Life a fiduciary under ERISA because the Menu of Funds was developed and offered to the Plan prior to contracting, when no relationship existed between Hartford Life and the Plan.  Under these circumstances, courts have consistently found that since no fiduciary relationship exists at the time of contracting, none can be created as a result of such pre-contract activities.

It is well established within the Second Circuit that "[w]hen a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him.  Such a person is not an ERISA fiduciary. . . ."  *F.H. Krear & Co.*, 810 F.2d at 1259;  *see also Flanigan v. General Elec. Co.*, 93 F. Supp. 2d 236, 252 (D. Conn. 2000) (quoting *F.H. Krear* and holding that the mere negotiation of an agreement does not confer fiduciary status); *Sirna v. Prudential*

---

(3)     receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

29 U.S.C. § 1106(b).

*Sec., Inc.*, 964 F. Supp. 147, 151 (S.D.N.Y. 1997) (granting a motion to dismiss on the basis that a brokerage firm was not acting as a fiduciary at the time the plan opened an account, because the parties were strangers, and the brokerage firm had no control over the plan or its assets).

Other Courts of Appeal agree with courts in the Second Circuit.  *See, e.g., Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 477 (7th Cir. 2007) ( "[a service provider] was not a fiduciary at the time it was engaged in arm's-length negotiations with [a plan], prior to entering into any of the agreements"); *Seaway Food Town, Inc. v. Medical Mut. of Ohio,* 347 F.3d 610, 617 (6th Cir. 2003) (holding that the administrator of a plan was not an ERISA fiduciary during contract negotiations with the plan because: "[a]t that point, [the administrator] was in no position to exercise discretion or authority or administer the plan. . . . [d]uring negotiations, [the employer] was free to seek and choose a different administrator with a better plan and lower costs. . . .") (quoting the district court's order).

> **b.**     **Hartford Life is not a fiduciary with respect to Phones Plus' selection of Investment Options from the Menu of Funds because Hartford Life played no role in the selection process.**

Hartford Life is not a fiduciary with respect to Phones Plus' selection of the Investment Options from the Menu of Funds, because Hartford Life took no part in the selection of those Investment Options.  As the Agreement makes clear, Plaintiff (or its designees) "has exclusive responsibility for the selection and assessment of investment alternatives under the Plan." Agreement, Section 16.2; *see also* Basic Plan Document, Section 7.22B.

In this instance, Plaintiff elected to contract directly with Neuberger to provide the "Plan with investment advisory services," including the selection of the Investment Options from the Menu of Funds, and Hartford Life played no role in the selection process.  *See* Am. Compl. at ¶¶ 8, 24, 26; Plan Sponsor Advisory Agreement, Section 1.2.  Neuberger, acting as the Plan's investment adviser, chose the initial thirteen (13) Investment Options from the seventy-seven

(77) mutual funds included on the Menu of Funds.  Plan Sponsor Advisory Agreement, Section 1.3; Part A, Section 5; Contract, Contract Specification Page.  Hartford Life exercised no authority or control over Neuberger's fund selections.  *See* Advisory Services Agreement, Section 1.6 (Neuberger has "sole authority, control, and responsibility for any and all investment research, analysis, recommendations and advice provided to Plan Sponsors").  Nothing in this scenario transformed Hartford Life into a fiduciary with respect to Phones Plus' selection of Investment Options (with Neuberger's assistance), because Hartford Life played no role in the selection process.[9]

> **c.   Hartford Life is not a fiduciary with respect to the addition, deletion, or substitution of mutual funds from the Menu of Funds because Phones Plus has the ultimate authority to accept or reject any proposed changes.**

Hartford Life did not become a fiduciary with respect to the addition, deletion, or substitution of mutual funds from the Menu of Funds because Plaintiff, on behalf of the Plan, has the ultimate authority to accept or reject any proposed addition, substitution, or deletion of mutual funds from the Menu of Funds by Hartford Life.[10]

The Department of Labor's Advisory Opinion 97-16A specifically addresses the issue presented in this case and concludes that no fiduciary relationship is created in this circumstance. A copy of Advisory Opinion 97-16A is attached hereto as Exhibit H.  The Advisory Opinion was issued in response to a request for assurances from Aetna Life Insurance and Annuity Company

---

[9]  For this same reason Hartford Life did not "render investment advice for a fee" in connection with the Plan's selection of Investment Options from the Menu of Funds.  Plaintiff further acknowledged this in Plan documents.  *See* Agreement, Section 16.1 ("The Plan Sponsor hereby acknowledges that Hartford Life does not, pursuant to this Agreement or otherwise, agree to provide . . . investment advice.").

[10]  As reflected in the Contract and Amendments Nos. 1 & 2, Hartford Life, in fact, has made no such substitutions.

("Aetna") that its receipt of fees from mutual funds offered under its group annuity contracts to

401(k) retirement plans did not violate Section 406(b)(3) of ERISA – notwithstanding Aetna's

discretion to make additions or deletions to its menu of funds.  The Department of Labor

concluded that Aetna "would not become a fiduciary *solely as a result of deleting or*

*substituting*. . . [mutual funds], *provided that the actual decision to accept or reject the change*

*in Funds is made by the plan fiduciary*."  97-16A, at 5 (emphasis added).  The Advisory

Opinion further states that:

> It is the view of the Department that a person would not be exercising
> discretionary authority or control over the management of a plan or its assets
> solely as a result of deleting or substituting a fund from a program of investment
> options and services offered to plans, *provided that the appropriate plan*
> *fiduciary in fact makes the decision to accept or reject the change*.  In this
> regard, the fiduciary must be provided advance notice of the change, including
> any changes in the fees received, *and afforded a reasonable period of time*
> *within which to decide whether to accept or reject the change and, in the event*
> *of a rejection, secure a new service provider*.

*Id.* (emphasis added).

Advisory Opinion 97-16A is consistent with caselaw, which holds that a service provider

can reserve the right to make a prospective change to a contract with a plan without becoming a

fiduciary under ERISA, provided that the plan sponsor has the right to reject the change by

discontinuing the contract.  *See Carpenters,* 474 F.3d at 476-77 (a service provider's right to add

or remove drugs from a formulary did not make it a fiduciary under ERISA where the plan had

the ultimate authority to accept or reject the change); *see also Trustees of Laborers' Local No.*

*72 Pension Fund v. Nationwide Life Ins. Co.*, 783 F. Supp. 899, 908-909 (D. N.J. 1992)

(insurance company's contractual right to prospectively amend rates applied to plan assets was

not discretionary, thereby not triggering fiduciary status, because the plan had ample opportunity

to withdraw from the contract); *Assocs. in Adolescent Psychiatry, S.C. v. Home Life Ins. Co. of*

*New York*, 729 F. Supp. 1162, 1186 (N.D. Ill. 1989) (insurance company was not a fiduciary where plan participants, dissatisfied with declared interest rates, had the opportunity to withdraw from the plan).

Hartford Life's contracts with Plaintiff were designed to conform to Advisory Opinion 97-16A.  Accordingly, Plaintiff, on behalf of the Plan, can accept or reject any proposed addition, substitution, or deletion of mutual funds from the Menu of Funds proposed by Hartford Life.  The Contract contemplates that it can be amended by Hartford Life with thirty (30) days advance written notice to the Plan.  *See* Contract, Section 6.2(a).  The Plan, however, has the right to accept or reject the proposed change.  If it decides to reject the change, and Hartford Life refuses to acquiesce, the Plan can terminate its relationship with Hartford Life.  *Id.,* Sections 5.1 & 5.2.  Under Advisory Opinion 97-16A, Hartford Life is thus not a fiduciary with respect to the addition, deletion, or substitution of mutual funds from the Menu of Funds.[11]

Hartford Life and other service providers to 401(k) plans have relied on Advisory Opinion 97-16A as guidance for conducting their business for almost a decade.  *See* Stephen M. Saxon, *Life Insurance Company Products:  Current Securities, Tax, ERISA, and State Regulatory Compliance Issues,* SM039 ALI-ABA 597, 613 (2006), attached hereto as Exhibit I ("Many companies in the 401(k) service-provider industry rely on [97-16A's] guidance in

---

[11]   Advisory Opinion 97-16A is consistent with the federal caselaw and, further, as written guidance from the agency principally charged with enforcing ERISA, it is entitled to great deference.  *See Natural Res. Def. Council, Inc. v. Muszynski*  268 F.3d 91, 98 (2d Cir. 2001) ("when faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration") (citation and quotations omitted)); *Hurwitz v. Sher,* 982 F.2d 778, 782 (2d Cir. 1992) (statutory interpretations by "agencies charged with administering ERISA . . . are entitled to great deference") (citations omitted);  *Lyons v. Georgia-Pac. Corp. Salaried Employees Ret. Plan,* 221 F.3d 1235, 1245 (11th Cir. 2000) ("we owe great deference to the interpretations and regulations of the . . . Department of Labor, which [is one of the] administrative agencies responsible for enforcing and interpreting ERISA").

receiving revenue-sharing payments as part of their overall compensation for recordkeeping and other plan services.").  If Advisory Opinion 97-16A is not deferred to here, 401(k) service providers, such as Hartford Life, will be exposed to ERISA fiduciary liability for which they did not contract, and which they could not have foreseen.  *Id.* at 615 (any change would be "significant" because "common industry practices . . .  are based on Labor Department guidance holding that, generally, a . . . plan service provider does not become a plan fiduciary merely by offering a menu of investment options to plans and making changes to those options from time to time").

> **3.      Hartford Life Did Not Become a Fiduciary by Simply Adhering to the Terms of the Contract and Accepting Fees from the Mutual Fund Complexes that were Disclosed to and Acknowledged by Plaintiff.**

Courts consistently hold that a service provider, such as Hartford Life, is not acting as a fiduciary nor breaching any alleged fiduciary duty merely by adhering to the terms of its contract with a plan.  For example, in *Carpenters*, 474 F.3d at 477, the Seventh Circuit affirmed the dismissal of a health plan's ERISA breach of fiduciary claim filed against its service provider. The plan alleged that the service provider (Caremark) had a fiduciary duty to pass through cost savings and rebates that Caremark negotiated with drug manufacturers and retail pharmacies beyond the savings on drugs and the amount of rebates agreed upon in the plan's contract.  *Id.* at 466-67.  The Seventh Circuit rejected plaintiff's theory, holding that:  "The contract contained no mechanism for a pass-through of any additional savings Caremark managed to negotiate . . . . Given that this scheme was the very deal for which Carpenters bargained at arms' length, Caremark owed no fiduciary duty in this regard."  *Id.* at 473 (citations omitted).

Similarly, in *Schulist v. Blue Cross of Iowa,* 553 F. Supp. 248, 253 (N.D. Ill. 1982), the trustees of a health plan asserted that BC/BS, a medical provider for the plan, breached fiduciary duties under ERISA Sections 404 and 406 by refusing to return a surplus of policyholder

reserves at the end of two contract years.  But the BC/BS contract did not include a provision for the return of premium surplus, prompting the court to reject the trustees' claims and to hold that "the retention of premiums paid under a freely negotiated insurance contract does not constitute a violation of . . . fiduciary duties under ERISA."  *Id.* at 254.   The Seventh Circuit Court of Appeals affirmed, finding there was no exercise of discretionary authority, and hence there could be no breach of fiduciary duty, with respect to the negotiation of and compliance with the terms of the contract with the plan.  *Schulist v. Blue Cross of Iowa,* 717 F.2d 1127, 1131-32 (7th Cir. 1983) ("As to the terms and conditions upon which it became a provider . . . BC/BS entered into an arm's length bargain presumably governed by competition in the marketplace.  Ordinarily BC/BS would not be a fiduciary with respect to these matters.").

In *Harris Trust*, the plan trustees asserted claims under ERISA Sections 404 and 406, alleging that Hancock failed to alter the contractually agreed upon method by which trustees were permitted to withdraw certain "free funds" under the plan.  *Harris Trust*, 302 F.3d at 26-27. The Second Circuit held that Hancock had no fiduciary duty to release the funds "in a manner different from that specified in the Contract."  *Id.* at 27.  Indeed, the court found that to so hold would impose unlimited fiduciary duties under ERISA, "because a plan administrator would be in breach of his duties whenever he rejects a request by a plan trustee that is contrary to the parties' agreed-upon terms for operation of the plan."  *Id.* at 27-28.  Accordingly, the Second Circuit held that "[i]f a specific term (not a grant of power to change terms) is bargained for at arm's length, adherence to that term is not a breach of fiduciary duty."  *Id.* at 29.[12]

---

[12]  Likewise, in *Seaway*, the Sixth Circuit Court of Appeals rejected ERISA breach of fiduciary duty claims premised on an insurer's retention of medical provider discounts as provided for in the parties' contract.  347 F.3d at 619.  The court found that the contract permitted BC/BS to retain such funds, "preclud[ing] BC/BS from exercising discretion with respect to such funds" and, accordingly, BC/BS's retention of those funds "did not give rise to ERISA fiduciary status."

Like *Carpenters*, *Schulist*, and *Harris Trust*, the Contract and Agreement specifically contemplate that Hartford Life has the right to retain the Fees.  Nothing in the Contract or Agreement requires Hartford Life to pass-through the Fees to the Plan.  By retaining the Fees, Hartford Life is simply adhering to the terms of the Contract and Agreement and, thus, is not acting as a fiduciary nor breaching any alleged fiduciary duty.  Moreover, Hartford Life disclosed to Plaintiff that it receives the Fees and Plaintiff acknowledged Hartford Life's receipt and retention of the Fees:

> ### Fees Received by Hartford Life
> Hartford Life receives fees for administrative and other services from many, but not all, of the underlying funds that are offered as variable investment choices through the Group Variable Annuity Contract.  These fees are not additional fees assessed by Hartford Life.  The investment advisers, distributors and other affiliates of the underlying funds pay Hartford Life these fees in the amount up to 0.75% of assets.  Fees may also be based on a percentage of contributions, up to 1.0%.  The services for which Hartford Life receives such fees include recordkeeping, accounting, and the mailing of periodic reports, fund prospectuses and proxy materials, processing of purchase and redemption transactions, and marketing assistance services.  These fees do not constitute compensation for investment advisory services.

Part A, Section 7.

In addition to receiving the above disclosure, the Plan also was advised in writing that, by calling Hartford Life via a 1-800 telephone number, the Plan could request more specific information regarding which mutual fund complexes pay Fees and in what amount.  *See id.*

---

*Id.* (citations omitted); *see also Fechter v. Connecticut Gen. Life Ins. Co.,* 800 F. Supp. 182, 199-200 (E.D. Pa. 1992) ("Courts have consistently and repeatedly held that if a specific contractual term is bargained for at arm's length, adherence to that term, at a pre-determined price, is not a breach of fiduciary duty.") (citations omitted); *Trustees of Laborers' Local No. 72 Pension Fund,* 783 F. Supp. at 908 (an insurer "had no discretion in purchasing annuities from itself; this was precisely what plaintiff had bargained for and what the parties agreed to in the insurance Contract").

("***For information on which underlying funds pay Hartford Life such fees and at what level, please call 1-800-843-6379.  Written confirmation provided upon request***.") (emphasis added).  Also, in Part A, Plaintiff acknowledged that "[a]s a Plan Sponsor/Fiduciary I certify that I have read and understood the information and options described in this document.  ***My signature below signifies acceptance of the terms of these options***."  Plan Sponsor Submission, Section 21 (emphasis added).   Section 17.3 of the Agreement further evidences this approval: "The Plan Sponsor acknowledges and agrees that the receipt by Hartford Life of any fees provided for in this Agreement will not constitute a 'prohibited transaction' within the meaning of ERISA or the Code."[13]

Plaintiff attempts to avoid the consequences of its acknowledgement of Hartford Life's retention of the Fees by arguing that (1) the Fees were *per se* unlawful and (2) that the initial disclosure regarding the Fees was false and misleading.  *See* Am. Compl. ¶¶ 21 & 23.  With respect to Plaintiff's first assertion, conduct can be *per se* unlawful only under ERISA Section 406 which only applies to fiduciaries.  *See Harris Trust and Sav. Bank v. Salomon Smith Barney, Inc.*  530 U.S. 238, 240 (2000) ("406(a)'s *per se* prohibitions" are "unknown at common law").  As discussed herein,  Hartford Life is not a fiduciary and, thus, its receipt and retention of the Fees cannot be *per se* unlawful.  Even if Hartford Life were a fiduciary for certain activities, the receipt of Fees disclosed to and acknowledged by Plaintiff would not be *per se* unlawful.  *See, e.g., Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co.,* 302 F.3d 18, 29 (2d Cir. 2002) ( "[i]f a specific term (not a grant of power to change terms) is bargained for at arm's length, adherence to that term is not a breach of fiduciary duty").

---

[13]  Hartford Life does not assert that such language exculpated it from liability if it otherwise breached a fiduciary duty and violated Section 406(b).  It merely evidences Plaintiff's knowledge of and agreement to Hartford Life's receipt and retention of the Fees.

Second, the Amended Complaint alleges that the initial disclosure and a more recent Hartford Life communication were false and misleading.  Am. Compl. ¶¶ 21-23.  Plaintiff has failed to allege, however, that it relied on a specific purportedly misleading provision of the initial disclosure in deciding to contract with Hartford Life.  Moreover, the more recent communication is irrelevant to this action because:  (1)  the more recent communication regarding Fees post-dates the Contract and Agreement; (2) Hartford Life disclosed and the Plan acknowledged the Fees prior to contracting; (3) the Plan had the opportunity to request additional information regarding the Fees at all times, and (4) Hartford Life's receipt and retention of the Fees did not render it a fiduciary under ERISA.

Plaintiff has no contractual right to the Fees.  Hartford Life's receipt and retention of Fees was disclosed in the Agreement and acknowledged by Plaintiff.  *See* Part A, Sections 7 & 21; Agreement, Section 17.3.  Because Hartford Life was merely adhering to the terms of its contract with the Plan, under the applicable authority cited herein, Hartford Life's receipt and retention of the Fees cannot constitute a breach of fiduciary duty or a prohibited transaction under ERISA.

**4.    Hartford Life Is Not a Fiduciary by Virtue of its Receipt and Retention of the Fees Because the Fees are not Plan Assets.**

Plaintiff also incorrectly asserts that Hartford Life is a fiduciary to the Plan by virtue of its purported authority and control over the Fees that the Amended Complaint mischaracterizes as "Plan assets."  This assertion is without merit as to matters of both fact and law.

**a.    Phones Plus has no "beneficial interest" in the Fees.**

Although ERISA does not explicitly define the term "plan assets," almost without exception that term has been interpreted to encompass assets in which a plan has a direct or beneficial ownership interest.  Thus, the mere fact that a plan might have a potential claim for certain assets (here, the Fees) or might be affected by how particular assets are handled does not

24

make a party allegedly exercising discretion with respect to such assets a plan fiduciary. *See*, *e.g.*, *Carpenters*, 474 F.3d at 476-77 (service provider did not control "plan assets" where it collected rebates from drug manufacturers for its own benefit and not the benefit of the plan); *Chapman v. Klemick*, 3 F.3d 1508, 1510 (11th Cir. 1993) (plan's claim to reimbursement of benefits paid under subrogation clause not an ERISA asset), *cert. denied*, 51 U.S. 165 (1994); *Useden v. Acker*, 947 F.2d 1563, 1573-76 (11th Cir. 1991) (bank's exercise of its contractual rights as a creditor of an employee benefit plan by liquidating collateral did not make it a fiduciary to such plan notwithstanding that liquidation of that collateral was largely responsible for the economic demise of the plan), *cert. denied*, 508 U.S. 959 (1993).

        b.     ***Haddock* does not and should not apply here.**

Here, the Amended Complaint alleges that –

> The revenue sharing payments made by the mutual fund companies to The Hartford constitute plan assets because: (a) The Hartford received the payments as a result of their fiduciary status or function (e.g., because The Hartford receive [*sic*] payments from mutual funds in exchange for offering and/or recommending the funds as an investment option to the Plans and their participants); (b) the mutual funds make payments to The Hartford at the expense of the Plans and participants (e.g., because the mutual funds set the fees they charge Plans and participants to cover not only the fees they would normally charge but also the amount of the revenue-sharing payments they have to make to The Hartford); and/or (c) revenue-sharing payments effectively constitute the proceeds of the Plans' and participants' investments.

Am. Compl. at ¶ 57. Plaintiff's rationale for characterizing the Fees as "Plan assets" appears to be based on the novel approach for defining "plan assets" adopted by Judge Underhill in an interlocutory ruling on the defendant's motion for summary judgment in *Haddock v. Nationwide Financial Services, Inc.,* 419 F. Supp.2d 156, 170-71 (D. Conn. 2006). Hartford Life submits that this so-called "functional approach" is inapposite to this case, is without prior precedent in caselaw, and is inconsistent with the overwhelming weight of authority.

First, under the *Haddock* court's functional test, the Fees would be Plan assets only if they are received and held by Hartford Life "***as a result of its status as a fiduciary or its exercise of fiduciary discretion or authority*** . . . ."  *Haddock,* 419 F. Supp.2d at 170 (emphasis added).  Consistent with the abundance of authorities discussed above, Hartford Life did not contract to receive the Fees in a fiduciary capacity to the Plan because (i) it had no relationship with the Plan when it disclosed to the Plan prior to contracting that it received the Fees from the mutual fund complexes, and (ii) it did not have or exercise the discretion or authority to select on behalf of the Plan the Investment Options from the Menu of Funds which would be made available to Plan participants.

Second, Advisory Opinion 97-16A, which addresses precisely the facts at issue here, is consistent with these rulings in advising that an insurer's receipt of fees from mutual fund complexes will not result in a violation of ERISA Section 406(b) if an insurer gives a plan advance notice of any substitution of funds and the opportunity to reject the change.  The *Haddock* court purports to distinguish Advisory Opinion 97-16A on the grounds that, unlike 97-16A, it was not clear that the fees in *Haddock* were actually received for the performance of administrative services.  There is nothing in 97-16A that explicitly supports such a distinction. Moreover, inasmuch as ERISA Section 406(b)(3) prohibits the receipt by a fiduciary of ***any consideration*** in connection with a transaction involving plan assets, whether or not the fees in 97-16A were purportedly paid for administrative services would be completely irrelevant to the application of 406(b)(3).  ***If the recipient were a fiduciary***, the receipt of ***any consideration*** in connection with a transaction related to the plan would violate Section 406(b)(3).  Rather, it is more reasonable to assume that the Department of Labor in rendering 97-16A was providing advice consistent with the principles in the prior caselaw.

Third, although the *Haddock* court determined that Nationwide nevertheless could be a fiduciary by virtue of its authority to delete and substitute funds *after* it entered into a contractual relation with the Plan, such a determination is inconsistent with the weight of prior caselaw authority as well as Advisory Opinion 97-16A.  As discussed previously, courts consistently hold that a party is not acting as a fiduciary where, as here, a plan can avoid any change by terminating the contract.  *See Carpenters,* 474 F.3d at 476-77 (a service provider's right to add or remove drugs from a formulary did not make it a fiduciary under ERISA where the plan had the ultimate authority to accept or reject the change); *Trustees of Laborers' Local No. 72 Pension Fund*, 783 F. Supp. at 908-909 (insurance company's contractual right to prospectively amend the rates applied to the plan assets was not considered discretionary act thereby triggering fiduciary status ***because the plan had ample opportunity to withdraw from the contract***);  *Assocs. in Adolescent Psychiatry*, 729 F. Supp. at 1186 (insurance company was determined not to be a fiduciary where excess interest rate was declared in advance of payment and for a specified period, ***affording dissatisfied participants the opportunity to withdraw***).

And, fourth, as the *Haddock* court acknowledged, even if an insurer is a fiduciary, its receipt and retention of fees may not be a ***breach of fiduciary duty*** if the plan and insurer contracted for the insurer to receive and retain such fees.  "[T]he question of whether a fiduciary contracted with a Plan to receive benefits does not illuminate whether the benefits at issue are plan assets, ***although it may be relevant to whether the fiduciary is entitled to their receipt***." *Haddock,* 419 F. Supp. 2d 170 (emphasis added).  As already demonstrated, the Plan in this case acknowledged and agreed to Hartford Life's receipt and retention of the Fees, and consistent with *Carpenters* and *Schulist* and the similar cases cited above, Hartford Life cannot be found to be breaching any fiduciary duty simply by adhering to the terms of its contract with the Plan.

**B.**     **Dismissal Of The Claims In This Case Is Consistent With A Recent And Closely Analogous Decision Of The Seventh Circuit Court of Appeals.**

The governing legal principles discussed above that preclude a finding that Hartford Life is a fiduciary or breached any fiduciary duties to the Plan are embodied in a recent decision of the United States Court of Appeals for the Seventh Circuit rendered under circumstances closely analogous to those in this case. This Seventh Circuit case also supports the view that *Haddock* is a drastic departure from well-established ERISA law.

In *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 477 (7th Cir. 2007), the Seventh Circuit upheld a lower court dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of a complaint based on allegations that a pharmaceutical benefits manager acted as a fiduciary and breached its fiduciary duty by retaining discounts negotiated with retail pharmacies who furnish drugs under the plaintiff's health plan, and by retaining rebates negotiated with drug manufacturers.

The role of the prescription drug service provider is very similar to a 401(k) service provider. Prior to contracting with health plans, the service provider (Caremark) negotiates drug pricing discount and rebate arrangements with retail pharmacies and drug manufacturers. Also prior to contracting, Caremark creates a formulary, which is a list of preferred drugs, to be offered to plans and their participants. *Id.* at 467-70. If a plan decides to contract with Caremark, the contract states the price the plan will pay for the drugs on the formulary, which is a discounted price negotiated by Caremark. *Id.* at 472-73. The contract does not require Caremark to pass through any additional cost savings which it might obtain from the retail pharmacies. The contract further provides that Caremark is not a fiduciary under ERISA and that the plan possesses the sole authority to control and administer the plan. *Id.* at 467.

Caremark has the right to add and delete drugs from the formulary, however, like in this case, ***the plan has the ultimate authority to accept or reject the proposed changes***. *Id.* at 477.

The Carpenters plan sued Caremark to recover all of the savings Caremark received from the drug manufacturers and retail pharmacies. The plan alleged that Caremark was an ERISA fiduciary because it had purported discretionary authority over the management and administration of the plan's drug benefit plan and also exercised discretion and control over the plan's assets. *See id.* at 467. Based upon the language of the contracts, the district court granted Caremark's motion to dismiss, holding that the parties' contract did not require Caremark to pass through any savings or rebates (not otherwise provided for in the contracts) to the plan and, therefore, Caremark was not an ERISA fiduciary. *Id.* at 473.

The Seventh Circuit's specific holdings in *Carpenters* apply equally to Plaintiff's claims. In *Carpenters,* the court held that:

- In ruling on a motion to dismiss under Rule 12(b), to the extent that the contracts contradict the complaint, the contracts trump the facts and allegations presented in the complaint. *Id.* at 465.

- Caremark was not a fiduciary at the time it engaged in arm's-length negotiations with the Carpenters plan. *Id.* at 473, 477 (citing, among other cases, *Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1131-32 (7th Cir. 1983)).

- Caremark's right to add or remove drugs from the formulary did not make it a fiduciary under ERISA because the plan had the final authority to accept or reject the changes to the formulary. *Id.* at 477.

- Caremark was not a fiduciary under ERISA for adhering to the terms of its contract. *Id.* at 473 ("Given that this scheme was the very deal for which Carpenters bargained at arms' length, Caremark owed no fiduciary duty in this regard.").

- Caremark's receipt and retention of rebates it received pursuant to contracts with drug manufacturers did not constitute the exercise of discretion and control over "plan assets." *Id.* at 476 n.6.

Consistent with the Seventh Circuit's decision in *Carpenters*, and the additional legal authorities cited herein, Plaintiff's Amended Complaint should be dismissed in its entirety with respect to Hartford Life and HFSG.

> **C.      Plaintiff's "Alternative" Claim For Knowing Participation In A Breach Of Trust Must Be Dismissed Because The Fees Are Not Plan Assets And Their Receipt And Retention By Hartford Life Is Not Unlawful.**

"In the alternative,"  paragraph 72 within Count III of the Amended Complaint alleges that to the extent that  Hartford Life or HFSG "are not deemed fiduciaries . . . each . . .  is liable . . . as non-fiduciaries that knowingly participated in a breach of trust."  Am. Compl. ¶ 72.  A non-fiduciary can be liable for knowing participation in a breach of trust under ERISA Section 502(a)(3), 29 U.S.C. §1132(a), if it "is a transferee of ill-gotten trust assets" where it "knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of trust."  *Carlson v. Principal Fin. Group,* 320 F.3d 301, 308 (2d Cir. 2003) (quoting *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 520 U.S. 238, 250 (2000)).  To state a claim for knowing breach of trust by a non-fiduciary, Plaintiff must therefore demonstrate that (1) the defendant received trust assets, and (2) that the defendant "had actual or constructive knowledge of the circumstances that rendered [its] transaction unlawful."  *Carlson,* 320 F.3d at 308.

As *Carlson* makes clear, only a recipient of Plan (or "trust") assets can be liable for knowing participation in a breach of trust.  *Carlson,* 320 F.3d at 308.   As discussed *supra* Section IV.A(2), (4), the Fees Hartford Life receives from the mutual fund complexes are not "Plan assets."  For this reason, the claim fails as a matter of law.

The "knowing participation" claim likewise fails because there is no "unlawful" transaction.  The Amended Complaint alleges that Neuberger breached its fiduciary duties by, among other things, failing to advise the Plan of the existence of the Fees and by "knowingly

permitting the Hartford's misconduct." Am. Compl. ¶¶ 27, 61.  However, in this context, it is important to bear in mind that Plaintiff's alternative claim is premised on Hartford Life being a **non-fiduciary**.  As such, Hartford Life's receipt and retention of the Fees could not have violated ERISA Sections 404 and 406.  Moreover, the Amended Complaint does not and can not allege that Neuberger received any portion of the Fees, thus foreclosing any conceivable "knowing participation" liability on that basis.  And in any event, Hartford Life's receipt and retention of the Fees is in accord with the Department of Labor's Advisory Opinion 97-16A.  *See supra* Section IV.A(2)(c).  Because Hartford Life is assumed for purposes of the knowing participation claim to be a non-fiduciary to the Plan and complied with the dictates of 97-16A, Hartford Life could not have possessed actual or constructive knowledge that its retention of the Fees could be unlawful.

Finally, the Amended Complaint fails to allege how Hartford Life participated in Neuberger's alleged breach of trust by omission.  In fact, the Amended Complaint could not possibly make such an allegation, because to do so would be patently inconsistent with the admission that Fees were both disclosed to and acknowledged by the Plan.  For these additional reasons, this claim fails as a matter of law.

> **D.**     **The Claims Against The Hartford Financial Services Group, Inc. Must Be Dismissed Because HFSG Is Not A Party To The Contract Documents And Otherwise Had No Involvement With The Plan.**

Plaintiff's claim that HFSG is a fiduciary, co-fiduciary, or liable for knowing participation in a breach of trust should also be dismissed because HFSG is not a party to any of the contracts at issue and otherwise is not alleged to have had any involvement with the Plan. Moreover, Plaintiff has failed to allege any facts that support disregarding HFSG's or Hartford Life's existence as distinct corporate entities.

First, HFSG is **not** a party to the Contract or Agreement with the Plan.  *See* Exhs. A-G hereto.  Second, although Plaintiff alleges that Hartford Life is a wholly owned subsidiary of HFSG (Am. Compl.  ¶ 7),[14] this allegation alone is an insufficient basis to name HFSG as a party.  Third, the Amended Complaint contains no factual allegations of independent wrongdoing or involvement by HFSG with respect to the Plan.  Throughout the Amended Complaint, Plaintiff misleadingly attempts to create the appearance that HFSG is somehow involved in this dispute by referring to Hartford Life and HFSG as "collectively, 'The Hartford.'"  *See* Am. Compl. at ¶ 10, *passim*.  However, Plaintiff's deceptive pleading tactic does not (and cannot) change the fact that the two companies are distinct and separate entities, and that Plaintiff does not and cannot in good faith allege that HFSG had any involvement with the Plan.

It is well-established that a corporate parent is not liable for its subsidiary's actions unless there is a sufficient reason to pierce the subsidiary's or parent company's corporate veil.  *See, e.g., Brooks v. Von Lenthe,* No. 06-2407-cv, 2006 WL 3509134, at *1 (2d Cir. Dec. 5, 2006) (plaintiff "failed to state a claim" where "its sole allegation" was that defendant "owned" a corporation that was a proper party to the action and there was no properly alleged basis for the court to "pierce the corporate veil").  Plaintiff has not alleged any facts to support piercing the corporate veil in this instance.  *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69-70 (2d Cir. 1996) (to survive a motion to dismiss, "Plaintiffs must come forward with a "showing of actual domination required to pierce the corporate veil . . . conclusory allegations unsupported by factual assertions" are insufficient); *In re Smithkline Beecham Clinical Labs., Inc.*, 108 F. Supp.

---

[14] HFSG is in fact Hartford Life's indirect corporate parent.  *See* Rule 7.1 Corporate Disclosure Statement, Doc. # 21.

2d 84, 103-04 (D. Conn. 1999) ("[m]ere labels *do not*, without more, confer fiduciary status" under ERISA, rather, to state a claim, plaintiffs must "provid[e] specific facts supporting their allegations of fiduciary status") (emphasis added).  Since Plaintiff has failed to state any direct claim against HFSG (legally deficient or otherwise) and has failed to offer any potential basis to pierce the corporate veil, all claims against HFSG should be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff has failed to state any legally cognizable claim and the Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

By:    /s/  Christopher G. Barnes
      Christopher G. Barnes, Esq. (ct23166)
      JORDEN BURT LLP
      175 Powder Forest Drive, Suite 201
      Simsbury, Connecticut 06089-9658
      Telephone:   (860) 392-5000
      Facsimile:    (860) 392-5058
      E-mail:  cgb@jordenusa.com

      and

      James F. Jorden, Esq. (admitted *pro hac vice*)
      JORDEN BURT LLP
      1025 Thomas Jefferson St., N.W.
      Suite 400 East
      Washington, D.C.  20007-5208
      Telephone:   (202) 965-8126
      Facsimile:    (202) 965-8104
      E-mail:  jfj@jordenusa.com

      Attorneys for Defendants,
      Hartford Life Insurance Company and
      The Hartford Financial Services Group, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of March, 2007, a copy of the foregoing Defendants', Hartford Life Insurance Company and The Hartford Financial Services Group, Inc., Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint was filed electronically.  Notice of this filing will be sent by electronic mail to the party below by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

James E. Miller, Esq.
Karen M. Leser, Esq.
Shepherd Finkelman Miller & Shah, LLC
65 Main Street
Chester, CT 06412
jmiller@sfmslaw.com
kleser@sfmslaw.com

Douglas P. Dehler, Esq.
Shepherd Finkelman Miller & Shah, LLC
111 East Wisconsin Avenue
Milwaukee, WI  53202
ddehler@classactioncounsel.com

In addition, a copy of the foregoing was sent by First Class mail, postage paid to:

Joseph T. Baio, Esq.
Wilkie Farr & Gallagher LLP
787 Seventh Avenue
New York, N.Y.  10019

_/s/ Christopher G. Barnes_____
Christopher G. Barnes

179468v.2

34