# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

PHONES PLUS, INC., Plan Administrator )
Of the Phones Plus Retirement Savings Plan, )   Civil Action No. 3:06-cv-01835 (AVC)
On Behalf of Itself and All Others Similarly )
Situated, )
)
            Plaintiff, )
)
v. )
)
THE HARTFORD FINANCIAL SERVICES )
GROUP, INC., HARTFORD LIFE INSURANCE )
COMPANY and NEUBERGER BERMAN )
MANAGEMENT, INC., )
)   May 4, 2007
            Defendants. )

# MEMORANDUM OF LAW OF DEFENDANT
# NEUBERGER BERMAN MANAGEMENT INC.
# IN SUPPORT OF ITS
# <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

Page

I.    PRELIMINARY STATEMENT ..................................................................................1

II.    BACKGROUND ......................................................................................................2

    A.    The Parties ..................................................................................................2

    B.    The Parties' Relationship ...........................................................................3

        1.    Phones Plus Engaged The Hartford to Serve as Administrative Service Provider for the Plan. ...................................................3

            a. The Group Annuity Contract ..................................................3

            b. The Administrative Services Agreement .................................4

            c. The Plan Sponsor Submission Information and The Plan Information Forms ...............................................................5

        2.    Phones Plus Retained Neuberger Berman to Recommend Mutual Funds from Those Already Selected by The Hartford .................................6

    C.    Plaintiff's Allegations Against Neuberger Berman ................................7

III.    STANDARD OF REVIEW ....................................................................................8

IV.    ARGUMENT ..........................................................................................................8

    A.    The Scope of the Duty Owed by Neuberger Berman is Limited by the Terms of its Relationship with Phones Plus. ...........................................8

    B.    Phones Plus's Own Fiduciary Duty Was Not Delegated to Neuberger Berman ...................................................................................................13

V.    CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

Birmingham v. SoGen-Swiss International Corp. Retirement Plan,
    718 F.2d 515 (2d Cir. 1983) ........................................................................14

Brandt v. Grounds,
    502 F.Supp. 598 (N.D. Ill. 1980) ...............................................................11

Brandt v. Grounds,
    687 F.2d 895 (7th Cir. 1982) .....................................................................11

Central States, S.E. & S.W. Areas Pension Fund v. Central Transport, Inc.,
    472 U.S. 559 (1985) ...................................................................................13

Ches v. Archer,
    827 F.Supp. 159 (W.D.N.Y. 1993) .............................................................14

Crowley ex rel. Corning, Inc., Investment Plan v. Corning, Inc.,
    234 F.Supp.2d 222 (W.D.N.Y. 2002) ........................................................10

Diduck v. Kaszycki & Sons Contractors, Inc.,
    874 F.2d 912 (2d Cir. 1989) .......................................................................13

F.H. Krear & Co. v. Nineteen Named Trustees,
    810 F.2d 1250 (2d Cir. 1987) ...............................................................10, 12

Gelardi v. Pertec Computer Corp.,
    761 F.2d 1323 (9th Cir. 1985) ....................................................................10

Harris v. City of New York,
    186 F.3d 243 (2d Cir. 1999) .........................................................................8

Harris Trust & Sav. Bank v. John Hancock Mutual Life Insurance Co.,
    302 F.3d 18 (2d Cir. 2002) ...........................................................................9

Herman v. Time Warner Inc.,
    56 F.Supp.2d 411 (S.D.N.Y. 1999) ............................................................14

Johnson v. Georgia-Pacific Corp.,
    19 F.3d 1184 (7th Cir. 1994) ......................................................................10

Mangiafico v. Blumenthal,
    471 F.3d 391 (2d Cir. 2006) .........................................................................3

Pegram v. Herdrich,
    530 U.S. 211 (2000) ...................................................................................11

Schulist v. Blue Cross of Iowa,
      717 F.2d 1127 (7th Cir. 1983) .......................................................................13

Smith v. Local 819 I.B.T. Pension Plan,
      291 F.3d 236 (2d Cir. 2002)............................................................................8

Srein v. Frankford Trust Co.,
      323 F.3d 214 (3d Cir. 2003)..........................................................................10

Whitfield v. Cohen,
      682 F.Supp. 188 (S.D.N.Y. 1988)...............................................................15

## FEDERAL STATUTES

29 U.S.C. § 1002...........................................................................................2, 7, 9, 14

29 U.S.C. § 1102(c) ...............................................................................................14

29 U.S.C. § 1104(a) ...........................................................................................9, 15

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b) ...............................................................................................8

29 C.F.R. § 2509.75-8.............................................................................................15

H.R. Conf. Rep. No. 1280, 93d Cong., 2d Sess. 297 ..................................................14

Betty Linn Krikorian, Fiduciary Standards in Pension and Trust Fund Management..................14

Susan P. Serota and Frederick A. Brodie, ERISA Fiduciary Law...........................................13, 14

## I.      PRELIMINARY STATEMENT

Neuberger Berman Management Inc. ("Neuberger Berman") is at best a tertiary player in the events recited in the Amended Complaint.  Plaintiff Phones Plus, Inc. ("Phones Plus"), trustee of the Phones Plus Retirement Savings Plan (the "Plan") -- a typical employer sponsored 401(k) retirement plan -- makes claims against Hartford Life Insurance Company ("The Hartford") and its affiliate under the Employee Retirement Income Security Act of 1974 ("ERISA").  Phones Plus, as a sponsoring employer, selected The Hartford to serve as the Plan's service provider.  Phones Plus and The Hartford set forth the terms of their rights and obligations in two contracts:  an Administrative Services Agreement and a Group Annuity Contract.  As service provider, The Hartford acted as the funding vehicle for the Plan through the Group Annuity Contract, which offered a "menu" of different mutual funds that would be available to Plan participants.  In this lawsuit, Phones Plus claims that The Hartford received undisclosed fees from certain of those mutual funds in violation of ERISA and to the detriment of the Plan.

Neuberger Berman was not a party to either contract between Phones Plus and The Hartford.  Neuberger Berman is not alleged to have shared in, or even to have known about, the allegedly improper payments that The Hartford supposedly received.  Indeed, Neuberger Berman had no hand in determining which mutual funds The Hartford offered to the Plan.

Neuberger Berman's function, rather, was to evaluate the demographic profile of the employee participants in the Plan and then to recommend mutual funds from those already included in The Hartford's pre-established menu of funds.  Phones Plus has voiced no dissatisfaction with Neuberger Berman's performance of that function:  Nothing in the Amended Complaint takes issue with Neuberger Berman's performance in evaluating the Plan's demographics, or with the modest fee it charged the Plan -- $400 a year -- for the limited service it provided.

Instead, Plaintiff alleges that Neuberger Berman somehow took on an overarching, extra-contractual and entirely "implicit" duty to investigate, audit and report on all the fees and expenses that The Hartford received in connection with the services The Hartford provided to the Plan, as well as a duty to advise Phones Plus as to whether The Hartford was receiving "excessive" compensation.  As detailed below, however, Neuberger Berman undertook no such duty, and the law does not impose any such duty on Neuberger Berman.  As both ERISA and the case law interpreting it make clear, a service provider's duties to a plan are limited to the specific functions it agrees to undertake on behalf of that plan.  Attempts to impose a general fiduciary duty on an entity that has agreed to undertake a limited task have repeatedly been rebuffed by the courts.

Here, Neuberger Berman's duties were defined in a three-page contract executed by Phones Plus.  Plaintiff does not make a single allegation that Neuberger Berman failed in any way to perform the duties it agreed to undertake.  The Plan's complaint is with The Hartford, which received whatever fees are at issue in this case, and perhaps with Plaintiff itself, the Plan Fiduciary which failed to do what it now claims Neuberger Berman should have done.  The Amended Complaint, therefore, should be dismissed for failure to state a claim against Neuberger Berman.

## II.      BACKGROUND

### A.      The Parties

Plaintiff Phones Plus is a telecommunications services company headquartered in Wisconsin.  As an employer, Phones Plus serves as trustee and plan administrator of the Phones Plus Retirement Savings Plan.  As such, Phones Plus is a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  (Am. Compl. ¶ 5.)

Phone Plus contracted with defendant The Hartford to provide savings and retirement products to the Plan.  (Am. Compl. ¶ 6.)  The Hartford offered a menu of mutual funds from which Phones Plus could select particular funds to make available to Plan participants.  (Am. Compl. ¶ 24.)  The Hartford received fees from the Plan and from the mutual funds offered on The Hartford's platform in connection with this arrangement -- fees that Phones Plus alleges constitute unlawful revenue sharing payments.  (Am. Compl. ¶¶ 34, 40, 43.)

Defendant Neuberger Berman is a financial services company that Phones Plus chose as an investment advisor (Am. Compl. ¶ 8.)  Neuberger Berman assisted Phones Plus in selecting -- *from the menu of funds offered by The Hartford* -- a tailored list of investment options for participants and beneficiaries in the Plan.

**B.    The Parties' Relationship**

1.    Phones Plus Engaged The Hartford to Serve as Administrative Service Provider for the Plan.

Phones Plus, as Plan Administrator and fiduciary, entered into two contracts with The Hartford:  The Hartford's Group Annuity Contract (attached as Exhibit A) and an Administrative Services Agreement (attached as Exhibit B).  (Am. Comp. ¶ 16, collectively, the "Hartford Contracts.")[1]  Neuberger Berman was not a party to either contract.  Neuberger Berman was not mentioned in either contract.

**a.    The Group Annuity Contract**

---

[1] The Group Annuity Contract, Administrative Services Agreement, Plan Sponsor Submission Information Form, Plan Information Form, and Neuberger Berman Plan IQ Plan Sponsor Advisory Agreement are attached hereto as Exhibits A, B, C, D, and E, respectively.  The Court may consider these contracts and Plan documents in deciding this Motion because they are integral to the Amended Complaint.  See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (holding that the court may consider a document on a motion to dismiss "where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint") (citations omitted).

The Hartford Group Annuity Contract was a comprehensive and detailed agreement between the Trustees of the Plan and The Hartford.  (See Ex. A.)  The Hartford Group Annuity Contract identified:

- the participants in the Plan,

- the ways they could contribute to the Plan,

- the way in which The Hartford should allocate contributions and transfers into the Plan,

- the calculations to be used for withdrawals,

- the expenses that The Hartford would charge Phones Plus, and

- the "Guaranteed Rate" that The Hartford would make available to the Plan.

(Id.)

The Amended Complaint does not allege that Neuberger Berman received or shared in any of the fees or expenses identified in that Contract or allegedly received by The Hartford outside of the Contract.  In fact, Neuberger Berman did not receive or share in any such fees or expenses.

### b.      The Administrative Services Agreement

The Administrative Services Agreement is the second contract between Phones Plus and The Hartford.  (See Ex. B.)  In that contract, Phones Plus represented that it "is the Named Fiduciary of the Plan with authority to act for the Plan and to contract for services on behalf of the Plan."  (Id. at 1.0.)  The ten-page Administrative Services Agreement identifies in detail the services that The Hartford was to provide the Plan and its Participants, including setting up individual accounts for Participants, accounting for contributions and investment returns, creating individual Participant reports, assisting in seeking favorable determination letters from

the IRS, and managing the record-keeping function for the Plan, among a host of other services. (See Ex. B at 2.0 – 16.0.)  The Administrative Services Agreement included a fee schedule that The Hartford assessed Phones Plus for the services rendered.  (Id. at 17.0 and Exhibit A thereto.)

Plaintiff does not allege that Neuberger Berman shared in any of the expenses or fees that The Hartford charged in connection with that Agreement, and Neuberger Berman did not share in such fees and expenses.

> **c.      The Plan Sponsor Submission Information and The Plan Information Forms**

When it entered into the Hartford Contracts, Phones Plus also executed a Plan Sponsor Submission Information form ("PSSI Form," attached as Exhibit C) and a Plan Information form ("PI Form," attached as Exhibit D) that set forth additional details of the relationship between Phones Plus and The Hartford.  The PSSI Form specified by name exactly which investment choices and mutual funds The Hartford would make available to Plan Participants.  (See Ex. C at item 5.)  Funds managed by approximately 22 mutual fund "families," including Fidelity, Goldman Sachs, The Hartford, Oppenheimer and Putnam, were listed.  (Id.)  No Neuberger Berman mutual fund or investment vehicle appeared on the list.  No Neuberger Berman mutual funds were ever selected for Plan Participants.

Phones Plus also confirmed that it had reviewed both (a) the Administrative Services Agreement, including the Fee Schedule, and (b) The Hartford's Group Variable Annuity Contract, including the expense provisions.  (See Ex. C at items 1-3 and 7.)

In the course of filling out the PI Form, Phones Plus made the following additional commitments and determinations:

- identified which plan design it had selected,

- told The Hartford the classes of Phone Plus employees that were to be covered by the Plan,

- selected the methods for determining eligibility under the Plan,

- allocated employer matching and profit sharing contributions under the Plan,

- specified the sources of employer and employee payments that would be included in the Plan, and

- chose the vesting schedules to be used in the Plan, the distributable events under the Plan, and other procedures to be followed by The Hartford in administering the Plan.

Both the PSSI Form and PI Form were created by The Hartford -- not Neuberger Berman. All the factual information in each Form was supplied by plaintiff Phones Plus -- not Neuberger Berman.

Most importantly, Neuberger Berman did not advise or otherwise consult with Phones Plus in connection with any of the agreements, selections, or commitments set forth in the Hartford Contracts or the Forms.  Indeed, at the time Phones Plus signed the Contracts and Forms, Neuberger Berman had not yet begun working for Phones Plus.

> 2.     <u>Phones Plus Retained Neuberger Berman to Recommend Mutual Funds from Those Already Selected by The Hartford</u>

Phones Plus made one other selection in the PSSI Form:  The PSSI offered Phones Plus the option of selecting -- on its own -- from among the *already identified and listed investment choices* offered by The Hartford.  Alternatively, the PSSI Form offered the option of designating Neuberger Berman to advise and assist in that selection.

Phones Plus chose the latter option, resulting in the one agreement between Phones Plus and Neuberger Berman, the Neuberger Berman Plan IQ Plan Sponsor Advisory Agreement

("Plan IQ Agreement," attached as Exhibit E.)  This three-page agreement specifies each and every service that Neuberger Berman was obligated to provide to the Plan.  Neuberger Berman's investment advice was limited to reviewing the list of mutual funds selected by The Hartford and included in the memo supplied by The Hartford to Plan Sponsors, creating groupings based upon varying levels of risk tolerance, analyzing demographic information provided by Phones Plus, and then selecting the grouping that was most appropriate for the Plan.  (See Ex. E.)

The contract imposes no other duties upon Neuberger Berman.  It does not require or suggest that Neuberger Berman was to review or second-guess the work Phones Plus had engaged The Hartford to perform, or uncover revenue-sharing payments, or evaluate The Hartford's compensation, or suggest legal remedies, or investigate the means appropriate to protect the Plan from the risk that it would be charged excessive fees by The Hartford and/or by mutual funds.

Nor would it have been feasible or reasonable for Neuberger Berman to take on such daunting forensic responsibilities:  Phones Plus paid Neuberger Berman an annual fee of $400 for its services.  (Compl. ¶ 22.)  That fee was for the entire Plan and not a per person fee.

### C.   Plaintiff's Allegations Against Neuberger Berman

Relying solely on the assertion that Neuberger Berman was a "fiduciary" within the meaning of ERISA § 3(21)(A), Phones Plus alleges that Neuberger Berman was "under an absolute and continuing obligation" to investigate and advise the Plan of alleged misconduct by The Hartford.  (Am. Compl. ¶ 27.)  More specifically, the Complaint alleges that Neuberger Berman breached its fiduciary duty to Phones Plus by:

(a) failing to advise the Plan as to the existence of the revenue sharing payments,
(b) failing to advise the Plan that The Hartford was receiving excessive compensation for the services that it was providing,

(c) failing to consider the existence of revenue sharing payments and the payment of excessive compensation when determining which investments to recommend to the Plan,

(d) failing to advise the Plan that it should take legal or other appropriate action to recover and/or protect against the losses that it had sustained and was sustaining as a result of The Hartford's misconduct, and

(e) failing to fully investigate the means appropriate to protect the Plan from the risk that it would be charged excessive fees by The Hartford and/or by mutual funds.

(Am. Compl. ¶¶ 28, 61.)  According to the Complaint, by knowingly permitting The Hartford's misconduct (or failing to investigate these matters so as to discover such misconduct), Neuberger Berman breached its fiduciary duties to the Plan.  (Id. ¶ 61.)

## III.   STANDARD OF REVIEW

According to the Federal Rules, dismissal is required when the complaint fails to state a legally cognizable claim.  Fed. R. Civ. P. 12(b)(6).  Dismissal is appropriate if "the plaintiff can prove no set of facts in support of its claim which would entitle him to relief."  Harris v. City of New York, 186 F.3d 243, 247 (2d Cir.1999).  "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (citation omitted).

## IV.   ARGUMENT

### A.   The Scope of the Duty Owed by Neuberger Berman is Limited by the Terms of its Relationship with Phones Plus.

Phones Plus alleges that, as an ERISA fiduciary, Neuberger Berman was required to investigate and advise the Plan of alleged misconduct by The Hartford.  Neuberger Berman, however, was hired to advise Phones Plus regarding the various investment options Phones Plus had already selected, not to police Phones Plus's relationship with its service provider. Neuberger Berman acted in accordance with its fiduciary duties in reviewing and evaluating the investment vehicles offered to the Plan and is not liable for failing to ferret out any alleged misconduct by The Hartford.

Under the plain language of the statute, Neuberger Berman possessed fiduciary duties only *to the extent* that it served as an investment advisor to the Plan.  ERISA defines a "fiduciary" as follows:

> [A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (emphasis added); see Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 28 (2d Cir. 2002).

Consistent with that definition, ERISA does not require a fiduciary to prevent any and all harm to the plans that it serves.  Rather, it requires that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]

ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

Phones Plus points to the general fiduciary duties set out in these provisions to support its allegations.  Neuberger Berman, however, was required only to act in accordance with its general fiduciary duties with respect to the *specific functions* it performed for the Plan -- namely, its investment advisory services.  See Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co., 302 F.3d 18, 28 (2d Cir. 2002).  In Harris, the trustee of a retirement plan had sued an insurer for breach of fiduciary duty and other violations of ERISA.  The Second Circuit overruled the district court's overbroad and general construction of the defendant's statutory duty.  Instead, the

Second Circuit construed the fiduciary duty created by ERISA according to the specific contractual obligations assumed by the defendant. Id. "A person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only *'to the extent'* that he has or exercises the described authority or responsibility." Id. (quoting F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1259 (2d Cir. 1987)) (emphasis added).  The Second Circuit refused to imply "discretionary" duties not contained within the express terms of the contract. Id. at 29.

There is therefore no legal authority for the conclusion that an affirmative, non-contractual duty should be imposed upon Neuberger Berman to investigate The Hartford's activities with respect to the Plan and then disclose such activities to Phones Plus, particularly where Neuberger Berman did not know of and had no reason to know of any alleged misconduct. Conclusory allegations, such as those asserted by Phones Plus, are insufficient to establish liability for breach of fiduciary duty.  See Crowley ex rel. Corning, Inc., Inv. Plan v. Corning, Inc., 234 F. Supp. 2d 222 (W.D.N.Y. 2002) (allegations of a breach of fiduciary duty against a plan investment committee based on a decline in stock value were conclusory and not sufficiently proved to establish liability).

The Second Circuit is not alone.  Other Circuits agree that one who takes on specific fiduciary duties  is not a fiduciary for all purposes.  See, e.g., Srein v. Frankford Trust Co., 323 F.3d 214, 221 (3d Cir. 2003) (stating that "[f]iduciary status under § 1002(21)(A) is not an all or nothing concept… [A] court must ask whether a person is a fiduciary with respect to the particular activity in question"); Johnson v. Georgia-Pacific Corp., 19 F.3d 1184, 1188 (7th Cir. 1994) (concluding that "people may be fiduciaries when they do certain things but be entitled to act in their own interests when they do others"); Gelardi v. Pertec Computer Corp., 761 F.2d

1323, 1325 (9th Cir. 1985) (finding that employer which was a fiduciary because it appointed plan administrator was not itself a fiduciary with respect to plan administration).

Where the alleged wrongful conduct occurs outside the scope of the investment advisor's duties, a complaint under ERISA should be dismissed.  Brandt v. Grounds, 687 F.2d 895, 898 (7th Cir. 1982).  In Brandt v. Grounds, 502 F. Supp. 598 (N.D. Ill. 1980), the district court held that a bank's provision of investment advice for a fee did not lead to liability for the alleged conversion of funds on deposit with the bank by the ERISA trustee.  It found that the phrase "to the extent" in ERISA § 3(21)(A) "obviously suggests a limitation of the fiduciary's responsibility":

> If the language of the statute is to be given effect, there must be a causal connection between the advice rendered and the harm suffered. To hold otherwise would, in effect, make every fiduciary of a pension plan covered by ERISA an insurer of the plan, no matter how limited that fiduciary's duties.

Id. at 599.  In affirming the District Court's grant of the bank's motion to dismiss for failure to state a claim for which relief can be granted, the Seventh Circuit held that "the Bank's fiduciary status was limited to its function as an investment advisor."  Brandt, 687 F.2d at 898.

Neuberger Berman was not "acting" in its capacity as an ERISA fiduciary when it allegedly failed to police The Hartford's activities with respect to the Plan.  See Pegram v. Herdrich, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether the person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.").

The express scope of Neuberger Berman's obligations is set forth in its agreements with The Hartford and Phones Plus.  The Hartford contracted with Neuberger Berman to provide

- 11 -

investment advisory services to plan sponsors that requested investment advice.  (See Advisory Services Agreement, Section 1.4, dated March 31, 2003, between Neuberger Berman and The Hartford.)  Phones Plus elected to retain Neuberger Berman's services as an investment advisor. (See Ex. C at item 4.)  As an investment advisor to the Plan, Neuberger Berman selected mutual funds from The Hartford's menu of funds, created groupings based upon varying levels of risk tolerance, analyzed demographic information provided by Phones Plus, and then selected the group that was most appropriate for the Plan and its participants.  (See Ex. E.)  Nowhere in these agreements do the parties discuss a duty to investigate and advise Phones Plus with respect to the fees that The Hartford charges or any revenue sharing payments that The Hartford receives with respect to the funds.

Phones Plus does not offer any authority for the proposition that investment advisors have a duty to monitor their clients' agreements with third parties.  Phones Plus entered into separate contracts with The Hartford and Neuberger Berman on December 2, 2003.  (See Ex. B; Ex. E.)  Neuberger Berman, which was hired as an investment advisor only *after* Phones Plus had selected The Hartford as its service provider, had absolutely no say in determining what fees The Hartford charged or what payments The Hartford received under the Plan or from the mutual funds on its menu.  Whatever duties arose out of Neuberger Berman's agreement with Phones Plus, which did not impose a duty to monitor The Hartford's activities with respect to the Plan or the mutual funds, had not arisen before Phones Plus signed its agreement with The Hartford.

The two contractual relationships were established independently of each other, and Neuberger Berman had no control over Phones Plus's relationship with The Hartford.  See F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1259 (2d Cir. 1987) ("[w]hen a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no

authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him"). More importantly, Phones Plus accepted the terms and conditions of its contract with Neuberger Berman, and may not now impose obligations outside the scope of Neuberger Berman's fiduciary relationship.  See Schulist v. Blue Cross of Iowa, 717 F.2d 1127, 1132 (7th Cir. 1983) (where the parties entered into an arm's length bargain governed by competition in the marketplace, the responsibility for ensuring a prudent choice among plans rested upon the trustees).

### B.        Phones Plus's Own Fiduciary Duty Was Not Delegated to Neuberger Berman

Phones Plus concedes that *it* is "a fiduciary of the Plan," (Am. Compl. ¶ 5), yet nowhere ventures any attempt to explain why it is not responsible for the same purported "breaches of duty" it seeks to make Neuberger Berman pay for.  In fact, it does not even allege that it conducted any of the "investigations" that Neuberger Berman was supposedly required to conduct merely on account of being a "fiduciary."

Phones Plus's fiduciary status arises in a variety of ways.  First, it explicitly acknowledges that it is the Trustee of the Plan.  (Am. Compl. ¶ 5.)  "Under ERISA, trustees have a fiduciary duty to 'act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries.'" Diduck v. Kaszycki & Sons Contractors, Inc., 874 F.2d 912, 916 (2d Cir. 1989) (quoting Central States, S.E. & S.W. Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 571 (1985)).

Second, Phones Plus acknowledges that it "is the Named Fiduciary of the Plan with authority to act for the Plan and to contract for services on behalf of the Plan."  (Ex. B at Section 1.1.)  A Named Fiduciary is "the single most important fiduciary in administering the plan" and is subject to all of ERISA's rules of fiduciary duty and liability.  Susan P. Serota and Frederick

A. Brodie, <u>ERISA Fiduciary Law</u> 191 (2d ed. 2006).  Legislative history and case law indicate

that Congress's purpose in requiring the designation of a Named Fiduciary was to focus

responsibility, as well as liability, for proper management and operation of a plan.  <u>See</u> H.R.

Conf. Rep. No. 1280, 93d Cong., 2d Sess. 297 (1974) reprinted at 1974 U.S.C.C.A.N. 5038,

5078; <u>Birmingham v. SoGen-Swiss Int'l Corp. Ret. Plan</u>, 718 F.2d 515, 522 (2d Cir. 1983).

Third, Phones Plus retained discretionary authority in the administration of the Plan,

performing such fiduciary services as determining employee eligibility under the Plan and

communicating with Plan participants.  <u>See</u> Ex. B at Sections 3.1, 3.2; <u>Herman v. Time Warner

Inc.</u>, 56 F. Supp. 2d 411, 418 (S.D.N.Y. 1999) (holding that employer was fiduciary based on its

role in determining the eligibility of individuals to participate in an ERISA plan); <u>Ches v.

Archer</u>, 827 F. Supp. 159, 168 (W.D.N.Y. 1993) (finding that communications with employees

regarding an ERISA plan were indicative of defendants' fiduciary status).  This conduct places

Phones Plus squarely within the definition of a "fiduciary" as set forth in ERISA § 3(21)(A).

Although Phones Plus elected to appoint an investment advisor, its delegation of duties

was limited to the provision of investment advice.  See ERISA § 402(c)(2), 29 U.S.C. §

1102(c)(2).  All of its other duties Phones Plus retained.

Investment advice in the context of ERISA is "advice concerning the value of securities

or other property and the advisability of investing in such property."  Betty Linn Krikorian,

<u>Fiduciary Standards in Pension and Trust Fund Management</u> § 1.09 (2d ed. 1995).  The statute

does not support the theory that Neuberger Berman, simply by serving as an investment advisor

to the Plan, somehow took on a broad duty to police The Hartford, a service provider that Phones

Plus itself selected.

The responsibility to appoint a fiduciary carries with it a duty to monitor the appointed fiduciary.  See 29 C.F.R. § 2509.75-8 (D-4); Whitfield v. Cohen, 682 F. Supp. 188, 194 (S.D.N.Y. 1988) (stating that, "[w]hile a trustee has a duty to seek independent advice where he lacks the requisite education, experience and skill, the trustee, nevertheless, must make his own decision based on that advice").  Phones Plus did not review Neuberger Berman's performance as an investment advisor to ensure that it was fulfilling its "duty" to monitor The Hartford's activities because Neuberger Berman possessed no such duty, and was in full compliance with the terms of the Plan and the governing statutory standards.

## V.   CONCLUSION

Neuberger Berman did not receive any revenue sharing payments from either The Hartford or the mutual funds offered on The Hartford's platform.  It did not know of, and had no reason to know of, any revenue sharing payments received or excessive fees charged by The Hartford.  More importantly, it had no fiduciary duty to investigate The Hartford's activities with respect to the Plan and disclose them to Phones Plus.  Phones Plus points only to the general fiduciary duties set out in ERISA § 404(a)(1)(A) and (B) to support its allegations.  Neuberger Berman, however, was required only to act in accordance with its general fiduciary duties with respect to the specific functions it performed for the Plan.  It was hired to give investment advice, not to play policeman, and the conclusory allegations asserted by Phones Plus to the contrary are insufficient to establish liability for breach of fiduciary duty.

For the foregoing reasons, Plaintiff has failed to state any legally cognizable claim and the Amended Complaint should be dismissed in its entirety.

Respectfully submitted,

By: _____

John Droney(ct10906)
David A. DeBassio (ct24365)
Levy & Droney P.C.
Pondview Corporate Center
74 Batterson Park Road
Farmington, CT  06032
(Tel):  (860) 676-3000
(Fax):  (860) 676-3200

Joseph T. Baio
Willkie Farr & Gallagher, LLP
787 Seventh Avenue
New York, NY  10019
(Tel):  (212) 728-8203
(Fax):  (212) 728-9203
jbaio@willkie.com

Attorneys for Defendant Neuberger Berman
Management Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 4, 2007, a copy of the foregoing Memorandum Of Law In Support Of Defendant's Motion To Dismiss Plaintiff's Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic fling system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.


John F. Droney, Esq. (ct10906)
David A. DeBassio, Esq. (ct24365)
LEVY & DRONEY, P.C.
74 Batterson Park Road
Farmington, CT 06032
Tel:  860-676-3000
Fax: 860-676-3200
E-mail:  jdroney@ldlaw.com
             ddebassio@ldlaw.com


U:\WPC\Lit\DAD\DRONEY\NEUBERBER BERMAN MANAGEMENT\NB Memo of Law_1.DOC