**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| PHONES PLUS, INC, Plan Administrator | : | |
| of the Phones Plus Retirement Savings Plan, | : | Case No. 3:06-cv-1835 (AVC) |
| On Behalf of Itself and All Others Similarly | : | |
| Situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| THE HARTFORD FINANCIAL SERVICES | : | |
| GROUP, INC., HARTFORD LIFE INSURANCE | : | |
| COMPANY and NEUBERGER BERMAN | : | |
| MANAGEMENT, INC., | : | |
| | : | |
| Defendants. | : | May 25, 2007 |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS**
**OF DEFENDANT NEUBERGER BERMAN MANAGEMENT INC.**

---

SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLC
James E. Miller (CT21560)
Patrick A. Klingman (CT17813)
Karen M. Leser (CT23587)
65 Main Street
Chester, Connecticut  06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
E-mail:  jmiller@sfmslaw.com
         pklingman@sfmslaw.com
         kleser@sfmslaw.com

SHEPHERD, FINKELMAN, MILLER
  & SHAH, LLC
Douglas P. Dehler
111 E. Wisconsin Avenue, Suite 1750
Milwaukee, Wisconsin 53202
Telephone: (414) 226-9900
Facsimile: (414) 226-9905
Email: ddehler@sfmslaw.com

Attorneys for Plaintiff

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -i-

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

II.     PROCEDURAL HISTORY AND STATEMENT OF FACTS . . . . . . . . . . . . . . . . . .  2

        A.      Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.      Statement Of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

        A.      Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.      Neuberger Was A Fiduciary To The Phones Plus Plan . . . . . . . . . . . . . . . . . . 10

        C.      Neuberger Breached Its Fiduciary Duty To Evaluate Funds
                On Behalf Of Plaintiff And The Plans And To Inform
                Plaintiff And The Plan Of Any Material Information It
                Discovered In Making Those Evaluations . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.      Plaintiff Does Not Seek To Delegate Its Fiduciary
                Duty To Neuberger . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**TABLE OF AUTHORITIES**

<u>**CASES**</u>

*Alfano v. Bridgeport Airport Services, Inc.,*
373 F. Supp.2d 1 (D. Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bish v. Aquarion Services Co.,*
289 F. Supp.2d 134 (D. Conn. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bixler v. Central Pennsylvania Teamsters Health & Welfare Fund,*
12 F.3d 1292 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14

*Blatt v. Marshall & Lassman,*
812 F.2d 810 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Brandt v. Grounds,*
687 F.2d 895 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Busacca v. Local 436 Welfare Fund,*
953 F.Supp. 867 (N.D.Ohio 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,*
472 U.S. 559 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Crowley ex rel. Corning, Inc., Inv. Plan v. Corning, Inc.,*
234 F.Supp.2d 222 (W.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Davis v. Scheuer,*
468 U.S. 183 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Diduck v. Kaczycki & Sons Contractors, Inc.,*
874 F.2d 912 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Donovan v. Mazzola,*
716 F.2d 1226 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ellis v. Rycenga Homes, Inc.,*
2007 WL 837224 (W.D. Mich. March 15, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York,*
375 F.3d 168 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fink v. National Savings and Trust Co.*,
772 F.2d 951 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Globe Woolen Co. v. Utica Gas and Electric Co.*,
224 N.Y. 483 (1918) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hishon v. King & Spalding*,
467 U.S. 69 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Mercator Software, Inc. Secs. Litig.*,
161 F. Supp. 2d 143 (D. Conn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*LoPresti v. Terwilliger*,
126 F.3d 34 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Marshall v. Snyder*,
1 Empl.Ben. Cases (BNA) 1878 (E.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Massachusetts Mutual Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Outlaws Motorcycle Club v. Williams*,
2004 WL 1945361 at *2 (D. Conn. Sept. 1, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pegram v. Herdrich*,
530 U.S. 211 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Phelps v. Kapnolas*,
308 F.3d 180 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rubinstein v. Skyteller, Inc.*,
48 F. Supp. 2d 315 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Scheuer v. Rhodes*,
416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Swierkiewicz v. Sorema N.A.,*
534 U.S. 506 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. City of New York,*
359 F.3d 83 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES**

ERISA § 3 (21)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 8   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Federal Rule of Civil Procedure 12(b)(6)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Restatement (Second) of Trusts § 173 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Plaintiff, Phones Plus, Inc. ("Plaintiff" or "Phones Plus"), in its capacity as the Plan Administrator of the Phones Plus, Inc. 401-K Profit Sharing Plan (the "Phones Plus Plan" or the "Plan"), as well as on behalf of the class it seeks to represent, respectfully submits this Memorandum of Law in Opposition to the Motion to Dismiss the First Amended Complaint (the "Motion" or "Motion to Dismiss"), filed by Defendant, Neuberger Berman Management, Inc. ("Defendant" or "Neuberger"), on May 4, 2007.

I.    **INTRODUCTION**

Neuberger was retained as an investment advisor to provide advice to Phones Plus regarding mutual funds that should be offered as investment vehicles to participants in the Phones Plus Plan from the menu of funds selected and offered to the Plan by The Hartford Financial Services Group, Inc. and Hartford Life Insurance Company (collectively, "The Hartford"). In that position, Neuberger indisputably assumed the role of a fiduciary, as well as the duties and obligations concomitant thereto. Among those responsibilities was Neuberger's obligation to investigate and evaluate mutual funds being offered to the Phones Plus Plan. As explained below, notwithstanding Neuberger's misguided and deceptive attempt to limit its duties to recommending certain mutual funds solely on the basis of demographic statistics, nothing in Neuberger's own contract documents or under ERISA fiduciary or trust law so limits Neuberger's legal responsibilities. As plainly pled in the Complaint, Neuberger breached its fiduciary duty by failing to investigate and evaluate The Hartford's collection and imposition of unlawful and excessive fees and by failing to inform Plaintiff of the imposition of those fees.

The meritless nature of Neuberger's Motion to Dismiss is reflected by the fact it is not able to cite a single case that supports dismissal under the facts alleged in the Complaint or under

-1-

any facts remotely similar to this case.  In essence, Neuberger would have this Court accept the extraordinary proposition that an investment advisor, acting in a fiduciary capacity, that is retained to evaluate investment options for a Plan nevertheless has no obligation to perform the following basic duties:

- investigate the amount of fees charged in relation to potential investments;

- investigate the financial arrangements that the mutual funds offered to 401-K profit sharing plans have with "service providers" and similar entities, such as The Hartford, and the effect of those arrangements upon mutual fund fees;

- determine the impact that the mutual funds' financial arrangements with "service providers" have on the costs and fees associated with the investment options offered to 401-K profit sharing plans;

- determine the extent to which the service provider's financial arrangements with mutual funds affect the investment options that are offered to 401-K profit sharing plans - - from which the investment advisor chooses mutual funds to ***recommend.***

In sum, Neuberger would have this Court hold that an investment advisor, although a fiduciary, has essentially no duties to a 401-K profit sharing plan related to investment advice for which it is evaluating investment options.  Such a holding would be directly contrary to the letter, and spirit, of ERISA.  Moreover, as explained below, since the scope of Neuberger's fiduciary duties, based upon the circumstances of its relationship with Plaintiff, is an inherently factual issue, those duties are the proper subject of discovery and, therefore, should not be addressed in the context of a motion to dismiss.  For all of these reasons, Neuberger's Motion to Dismiss should be denied.

## II.   **PROCEDURAL HISTORY AND STATEMENT OF FACTS**

### A.   **Procedural History**

Plaintiff commenced this action on November 14, 2006, and promptly served Defendants with the initial Complaint.  After obtaining several extensions of time to respond to the initial

Complaint, Defendant The Hartford, filed a motion to dismiss on February 12, 2007.  Plaintiff

timely filed an Amended Complaint ("Complaint"), as of right on March 5, 2007, and Neuberger

responded by filing the instant Motion to Dismiss ("Motion") on May 4, 2007.[1]

### B.   Statement Of Facts

As alleged in its Complaint,[2] Phones Plus is the Plan Administrator of the Plan.  Phones

Plus brings this action on behalf of the Plan in its capacity as its Trustee.  In that capacity, Phones

Plus is a fiduciary of the Plan.  (¶ 5.)  Defendant, The Hartford Financial Services Group, Inc.,

("HFS"), is a diversified insurance and financial services company.  Directly and/or through its

subsidiaries and affiliates, HFS provides savings and retirement products, including the products

of the Hartford Life Insurance Company, to the Plan and other similarly situated 401(k) and

retirement plans.  (¶ 6.)  Defendant, Hartford Life Insurance Company ("Hartford Life"), is a

wholly-owned subsidiary of HFS.  (¶ 7.)  Defendant, Neuberger, is a financial service company,

incorporated in the State of New York, which *is engaged by The Hartford* to offer and provide

investment advice to administrators such as Phones Plus.  Neuberger is an investment advisor to

the Plan and an ERISA fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. §

1002(21)(A).  (¶ 8) *see also* Plan Sponsor Submission Information (Part A), pg. 3, a true and

correct copy attached as Exhibit "A" hereto (defining Neuberger as a fiduciary).

The employers who are the sponsors of the Plans that compose the Class engage full-

service providers, such as The Hartford, to design and implement the qualified ERISA retirement

---

[1] The Hartford filed a separate Motion to Dismiss on March 19, 2007, which has been fully briefed.

[2] All citations to the Complaint are referenced by paragraph number and such references are cited to, for purposes of convenience, as follows: "(¶ __.)"

plans and to provide an entire range of administrative and other services necessary to operate them.  (¶ 13.)  As part of the services that it provides to the Phones Plus Plan and other similarly situated ERISA retirement plans, The Hartford offers certain of the Plans for which it serves as an administrator the option of engaging Neuberger as an investment advisor to review these plans' needs annually and to *select a specific group of investment choices to be offered to plan participants*.  (¶26) (emphasis added).

Pursuant to these engagements, Neuberger researches, monitors, reviews and evaluates mutual funds, collective funds, fixed accounts and other investment vehicles offered to the Plans for which it serves as an investment advisor.  (*Id.*)  The express language of Neuberger's contract with the Plan provides that, following receipt of certain demographic information regarding the Plan and its participants, "Neuberger shall select for the Client (the 'Selection') the Fund Group that *is most appropriate for the Plan and its participants*."  ( Ex. B, ¶ 1.2.) (emphasis added.) Nothing in Neuberger's contract eliminates the most basic duty of any investment advisor to investigate and evaluate the mutual funds it selects as the "*most appropriate*," including the nature of fees to be charged to the Plan and the reasons for those fees, so that the recommendation truly is based upon the needs and objectives of the Plan.  Although the Neuberger contract states that its selection of mutual fund groups should not be construed so as to imply the "appropriateness or inappropriateness of any other mutual fund or group of mutual funds," Ex. B, ¶1.2, the obvious consequence of that disclaimer (especially when coupled with Neuberger's agreement to select the most appropriate funds), is Neuberger's commitment that the funds *selected* for the Plan (as opposed to those not selected by Neuberger to which the disclaimer applies) are, in fact, appropriate.  But how could Neuberger judge such

-4-

appropriateness and fulfill its fiduciary duties without investigating and evaluating the fees

charged by mutual funds that it has selected as the "***most appropriate***" and the reasons, quantum

and nature of those fees (e.g., to fund "kickbacks" to The Hartford)?  Plaintiff respectfully

submits that it could not.[3]

Neuberger charges the Phones Plus Plan, *inter alia*, an annual fee for these investment

advisory services and charges other Plans, for which it serves as an investment advisor, similar

fees.[4]  Under the Neuberger advisory agreement with The Hartford, The Hartford is authorized to

---

[3]Neuberger's attempt to limit its fiduciary responsibilities (by invocation of a contract that does not support its position), also tellingly ignores the fact that Neuberger retains the "sole discretion" to "change the composition" of the fund groups selected for the Plan.  Ex. B, ¶1.2. The existence of such "sole discretion" once again begs the question of how that fiduciary discretion could be responsibly discharged absent a duty on the part of Neuberger to inform itself fully regarding the investments that it was recommending to the Plan and, in some instances, effectively requiring the Plan to accept based upon that recommendation.  In sum, it is Neuberger's own contractual duties which confirm the fiduciary responsibilities that were violated in this case.

[4]Neuberger attempts to inappropriately garnish unwarranted sympathy by referring to the $400 fee charged to the Plan and somehow suggesting that the amount of the fee lessened its duties.  The amount of the fee charged is irrelevant.  As this Court is well aware, uncompensated trustees and other fiduciaries of plans are regularly held liable under ERISA.  *See, e.g.*, *Busacca v. Local 436 Welfare Fund*, 953 F.Supp. 867 (N.D.Ohio 1996)(discussing liability of uncompensated trustees).  Plaintiff does not suggest that such analysis is directly applicable here because Neuberger is indisputably an investment advisor that was paid a fee.  As a result, Neuberger falls squarely under category of fiduciary defined by ERISA § 3(21)(A)(ii).  The reference to the potential for liability of uncompensated trustees, however, is pertinent to the extent it demonstrates the inappropriate and inequitable nature of any claim by Neuberger that its fiduciary duties were limited by the amount it was paid.  Moreover, as a profit maximizing entity, Neuberger unquestionably intended its role as an investment advisor to be a profitable venture (and there is nothing inappropriate about such action).  Plaintiff anticipates that discovery will demonstrate that the fee collected from the Plan was the tip of the iceberg and that Neuberger either collected or intended to collect a similar fee from a large number of The Hartford's customers on an ongoing basis.  Put another way, if Neuberger collected or had intended to collect a $400 fee from 1 million customers of The Hartford (and was paid $400 million per annum for its services), would it still claim (with a straight face) that its fiduciary duties were meant to be essentially ministerial in nature?  Plaintiff respectfully suggests that Neuberger would

automatically deduct the Neuberger annual fees from the Plan's assets under the terms of the Variable Annuity Contract.   In its literature, although it attempts to disclaim its own fiduciary status, The Hartford expressly acknowledges the fiduciary status of Neuberger.  (*Id.*) *See also* Ex. A, pg. 3.

The Hartford implemented and participated in a scheme whereby mutual funds made revenue sharing payments to it based upon a percentage of the Plans' assets invested in these mutual funds, respectively, by and through The Hartford.  (¶ 38.)  The Hartford implicitly and/or explicitly made it a condition to offering a mutual fund family's funds to the Plans that the mutual fund family pay them revenue sharing on a majority or all of the funds offered and/or recommended by The Hartford.  (*Id.*)  To implement this scheme, The Hartford initiated changes to its contract pricing to account for revenue sharing arrangements and negotiated revenue sharing agreements with mutual funds on behalf of itself and its affiliates.  (¶ 39.)

Revenue sharing payments are made to The Hartford pursuant to written contracts ("revenue sharing contracts"), often referred to as service contracts, administration contracts, fund services contracts, fund participation contracts and broker dealer contracts, and these contracts are often entered into by and between The Hartford and the investment management firms that provide management and other services to mutual funds.  These revenue sharing payments may be in the form of 12b-1 fees (which are supposed to be fees for marketing of the fund), administration fees, service fees, sub-transfer agent fees and/or similar fees.  All of the revenue sharing payments are based, in whole or part, on a percentage of a given plan's investment in a mutual fund and/or based on the magnitude of the investments by the plan in the

and could not.

mutual fund.  (¶ 40.)

While the revenue sharing payments are often described in revenue sharing contracts as reimbursements for expenses incurred in providing services to the mutual funds, those services by which mutual funds may incidentally benefit are actually ones that The Hartford historically provided to the Plans as a necessary part of its business in return for the fees directly collected by it, and these fees did not change as a result of revenue sharing or based upon the percentage or the magnitude of a plan's investments in the mutual fund.  (¶ 41.)

At all pertinent times, The Hartford (and/or their subsidiaries or affiliates) have been arranging for, receiving and keeping the revenue sharing payments for their own use and benefit in breach of their fiduciary duties under ERISA.  (¶ 43.)

As a fiduciary, at all pertinent times, Neuberger was under an absolute and continuing obligation to advise the Phones Plus Plan and other Plans as to the existence of the revenue sharing payments, that The Hartford was receiving excessive compensation for the services that it was providing, and that the Phones Plus Plan and other Plans should take legal or other appropriate action to recover and/or protect against the losses they had sustained and were sustaining as a result of The Hartford's misconduct.  (¶ 27.)

Despite the fact that The Hartford offered Neuberger's services to the Phones Plus Plan, Neuberger was obligated to discharge its duties solely in the interest of the Phones Plus Plan and the other Plans that had engaged it, and was obligated to discharge its duties with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  (¶ 28.)  Neuberger was aware of the risk that the Phones Plus Plan

-7-

and other Plans would be charged excessive fees by The Hartford and/or by mutual funds and was

under an absolute and continuing duty to investigate fully the means appropriate to protect the

Phones Plus Plan and other Plans from such risk.  (*Id.*)  By engaging in the above conduct, and

permitting the Phones Plus Plan and the other Plans that had engaged Neuberger to invest, either

directly or indirectly, in mutual funds that were charging inflated fees as a result of the revenue

sharing payments or otherwise, Neuberger breached its fiduciary duties to the Phones Plus Plan

and the other Plans that engaged it.  (*Id.*)

## III.    ARGUMENT

### A.    <u>Standard Of Review</u>

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

"tests only the adequacy of the complaint."  *United States v. City of New York*, 359 F.3d 83, 88

(2d Cir. 2004), *cert. denied*, 543 U.S. 1146 (2005); *see Scheuer v. Rhodes*, 416 U.S. 232, 236

(1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984) (motion to dismiss

determines "whether the claimant is entitled to offer evidence to support the claims"); *Eternity

Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir.

2004) (the purpose of a motion to dismiss "is merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support thereof")

(citations omitted); *see also Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir. 1985) ("[t]he

court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at

a trial but merely to determine whether the complaint itself is legally sufficient") (citation

omitted).

When considering a Rule 12 motion to dismiss, the issue is "not whether a plaintiff is likely

to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."

*Phelps v. Kapnolas*, 308 F.3d 180, 184-85 (2d Cir. 2002).  When assessing the Complaint, this

Court must accept as true all material facts alleged in the Complaint and draw all reasonable

inferences from the facts alleged in plaintiff's favor.  *See Novak v. Kasaks*, 216 F.3d 300, 305 (2d

Cir. 2000).  Defendants' burden on a motion to dismiss is "substantial."  *Rubinstein v. Skyteller,*

*Inc.*, 48 F. Supp. 2d 315, 319 (S.D.N.Y. 1999).  The Court must deny the motion unless "it

appears **beyond doubt** that the plaintiff can prove no set of facts in support of [her] claim which

would entitle [her] to relief."  *Outlaws Motorcycle Club v. Williams*, No. 3:04-CV-537 (JCH),

2004 WL 1945361, at *2 (D. Conn. Sept. 1, 2004) (emphasis added).   Additionally, all

allegations of the Complaint must be read in their totality, not in isolation, to determine whether

plaintiff states a cause of action.  *See In re Mercator Software, Inc. Secs. Litig.*, 161 F. Supp. 2d

143, 150 (D. Conn. 2001).

Taking all well-pleaded facts as true and drawing all reasonable inferences in favor of the

plaintiff, a court may dismiss a complaint only if it is clear that no relief could be granted under

any set of facts that could be proved consistent with the allegations.  *See Swierkiewicz v. Sorema*

*N.A.*, 534 U.S. 506, 513-14 (2002); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Alfano*

*v. Bridgeport Airport Services, Inc.*, 373 F.Supp.2d 1, 4 (D. Conn. 2005); *Bish v. Aquarion*

*Services Co.*, 289 F.Supp.2d 134, 141 (D. Conn. 2003)(same).  The standard of review applicable

to the adjudication of a motion to dismiss is well-settled and long-standing.  Defendant has

pointed to no case that supports the proposition that, under the facts alleged in the Complaint,

Plaintiff's claims against Neuberger should be dismissed.  As a result, it is clear that Defendant's

Motion to Dismiss should be denied in its entirety.

B.    **Neuberger Was A Fiduciary To The Phones Plus Plan**

"In every case charging breach of ERISA fiduciary duty ... the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest but, rather, whether the person was acting as a fiduciary (that is, was performing a fiduciary function)."  *Pegram v. Herdrich*, 530 U.S. 211 (2000).  Here, it is clear and undisputed that Neuberger was acting as a fiduciary.  In fact, as noted above, The Hartford explicitly identified Neuberger as a fiduciary in its literature.

Neuberger's status as a fiduciary investment advisor also is consistent with the long-established fact that "Congress intended ERISA's definition of fiduciary to be broadly construed." *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir.1997) (citations and internal quotation marks omitted); *see also Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987).  Plaintiff's Complaint has properly alleged Neuberger was a fiduciary at all pertinent times.  (¶¶ 8, 56.)

Such a conclusion is also supported by the clear language of ERISA which states, in pertinent part, that "a person is a fiduciary with respect to a plan to the extent ... (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so."  ERISA § 3(21)(A)(ii).  Furthermore, in its Motion, Neuberger does not dispute that, in its role as an investment advisor, it owed fiduciary duties to the Plans.   Thus, the first element of Plaintiff's breach of fiduciary claim against Neuberger is clearly and indisputably satisfied -- Neuberger is, and at all pertinent times was, a fiduciary with respect to the Plan.

**C.      Neuberger Breached Its Fiduciary Duty To Evaluate Funds On Behalf Of
Plaintiff And The Plan And To Inform Plaintiff And The Plan Of Any
Material Information It Discovered In Making Those Evaluations**

Neuberger argues that its fiduciary duty is limited to the functions that it was retained to

perform for Phones Plus.  Plaintiff agrees.  It is those duties for which Defendant was retained in

which Neuberger failed to perform its fiduciary duties.  In its Motion, Defendant has either

intentionally misrepresented or grossly misconstrued Plaintiff's allegations regarding the character

and scope of Neuberger's fiduciary duties.  Plaintiff does not assert, nor did it allege, that

Neuberger is a fiduciary for all purposes.  Plaintiff agrees that Neuberger's fiduciary status was

limited to its function as an investment advisor.  *See Brandt v. Grounds*, 687 F.2d 895, 898 (7th

Cir. 1982).  As the Complaint plainly pleads, however, Neuberger failed to perform its duties in

that very capacity -- as an investment advisor.  (¶¶ 28, 61.)[5]

"Section 404(a) [29 U.S.C. § 1104] is the touchstone for understanding the scope and

object of an ERISA fiduciary's duties."  *Bixler v. Central Pennsylvania Teamsters Health &*

---

[5]Neuberger's reliance upon *Crowley ex rel. Corning, Inc., Inv. Plan v. Corning, Inc.*, 234
F.Supp.2d 222, 230 (W.D.N.Y. 2002)(holding that claims against investment committee for
failing to investigate and disclose failed where plaintiff failed to identify the committee members
and failed to allege how they knew or could have known about alleged (but unspecified) false and
misleading statements which were the subject of a securities class action), and *Brandt v. Grounds*,
502 F.Supp. 598 (N.D.Ill. 1980)(bank could not be held liable for act of conversion that bore no
connection to its advice at issue), is totally misplaced.  First, unlike the *Corning* case, where the
court held that, under Fed.R.Civ.P. 8, it was unable to understand the nature of the claims
asserted against the investment committee, in this case, there is no issue that Neuberger has been
placed on notice as to the nature of the claims against it -- as required by the short and plain
statement requirements of Rule 8.  Neuberger's understanding of the nature of the claims asserted
is evinced by its Motion to Dismiss in which it seeks to recast its relationship with the Plan and its
duties under ERISA in order to avoid liability for its conduct.  Second, unlike *Brandt*, the claims
asserted here go to the core of Neuberger's duties to the Plan.  That is the Complaint challenges
Neuberger's conduct in the very context of its role as an investment advisor and in its actions in
failing to investigate and advise the Plan when performing the fiduciary role of rendering
investment advice.

*Welfare Fund*, 12 F.3d 1292, 1299 (3d Cir.1993).  The statute provides, in relevant part, as

follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely
> in the interest of the participants and beneficiaries and-
>
> > (A) for the exclusive purpose of:
> >
> > > (i) providing benefits to participants
> > > and their beneficiaries; and
> > >
> > > (ii) defraying reasonable expenses of
> > > administering the plan;
> >
> > (B) with the care, skill, prudence, and diligence
> > under the circumstances then prevailing that a
> > prudent man acting in a like capacity and familiar
> > with such matters would use in the conduct of an
> > enterprise of a like character and with like aims.

*Id.*  The statutory language of Section 404 does not, however, represent the sum total of duties

imposed on fiduciaries under ERISA.  Section 404(a) "although articulat[ing] a number of

fiduciary duties, is not exhaustive."  *Bixler*, 12 F.3d at 1299.  Moreover, "Congress intended in §

404(a) to incorporate the fiduciary standards of trust law into ERISA ...."  *Massachusetts Mutual*

*Life Ins. Co. v. Russell*, 473 U.S. 134, 153-54, 105 S.Ct. 3085, 3096, 87 L.Ed.2d 96 (1985); *see*

*also Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472

U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985) ("Congress relied upon the

common law of trusts to 'define the general scope of [trustees' and other fiduciaries'] authority

and responsibility'").

Pursuant to the terms of Neuberger's agreement with the Plan (a true and correct copy of

which is attached as Exhibit "B" hereto), Neuberger was to "provide certain advisory services for

Client's participant-directed defined contribution retirement plan ...."  Pursuant to performing those services, the agreement stated that "Neuberger has **reviewed and evaluated** certain mutual funds, collective funds and fixed accounts (the "Funds") currently being offered to the Plan as investment options. . . ."  (Ex. B, ¶ 1.2.) (emphasis added).  The agreement further states that "Neuberger shall select for the Client (the "Selection") the Fund Group that is **most appropriate** for the Plan and its participants." *Id.* (emphasis added.)  Furthermore, in its Plan Sponsor Submission Information, The Hartford expressly states that "[i]f the Plan IQ service is selected, Neuberger Berman will assist in **the researching, selecting and monitoring of your Contract's investment choices**.  **Neuberger Berman will act as an investment advice fiduciary** to those plans that follow its recommendations fully."  (Ex. A, pg. 3.) (emphasis added.)  Thus, Neuberger had an obligation to perform its investment advisor services, *i.e.* to research, select and monitor the Plan's investment choices, in accordance with the prudence standard of ERISA.[6]

Moreover, the allegations of the Complaint, and the agreement between both The Hartford and The Plan and Neuberger and The Plan, make it abundantly clear that Neuberger's function was not limited, as Defendant suggests, to evaluating the Plan's demographics.  *See* ¶ 26; Ex. A, pg. 3; Ex. B, ¶ 1.2.  ERISA's prudence standard "is not that of a prudent lay person but rather that of a prudent fiduciary with experience dealing with a similar enterprise."  *Marshall v.*

---

[6]Despite Defendant's repeated attempts to mislead the Court, Plaintiff is not asserting that Neuberger had a duty to "police" The Hartford.  Rather, Plaintiff asserts, and the law and Plan documents support, that Neuberger had a duty to investigate, research, and monitor the investment options that it recommended to the Plan and to inform the Plan regarding the findings of that investigation -- including the duty to investigate the fees charged by mutual funds and paid to The Hartford by mutual funds -- because, without such investigation and advice there is no conceivable manner in which Neuberger could reasonably or prudently provide the very advice that it was engaged to provide.

*Snyder*, 1 Empl.Ben. Cases (BNA) 1878, 1886 (E.D.N.Y.1979); *see Donovan v. Mazzola*, 716 F.2d 1226, 1231-32 (9th Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984) ("Courts have also recognized that in enacting ERISA Congress made more exacting the requirements of the common law of trusts relating to employee benefit trust funds."). And in fact, ***the test of prudence focuses on a fiduciary's conduct in investigating, evaluating and making the investment.*** *See Fink v. National Savings and Trust Co.*, 772 F.2d 951, 957 (D.C.Cir.1985) ("A fiduciary's independent investigation of the merits of a particular investment is at the heart of the prudent person standard.").

It is beyond cavil that Neuberger, acting as a prudent investment advisor, had an obligation, *under the express terms of its agreement* with the Plan, to perform an investigation into the investment options that it deemed "most appropriate" for the Plan.[7]  It is similarly clear that any information garnered from such an investigation regarding unlawful and/or excessive fees would be relevant to the selection of investment options and should have been given to the Plan.

Under the common law of trusts, a fiduciary has a fundamental duty to furnish information to a beneficiary.  "This duty to inform is a constant thread in the relationship between beneficiary and trustee;  it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful."  *Bixler*, 13 F.3d at 1300; *see also*, *Globe Woolen Co. v. Utica Gas and Electric Co.*, 224 N.Y. 483, 121 N.E. 378, 380 (1918) ("A beneficiary, about to plunge into a ruinous course of dealing, may be betrayed by silence as well as by the spoken word.").

---

[7]This is particularly true where, as here, Neuberger holds itself out as an expert in administering employee pension benefit plans and with respect to developing investment strategies, goals and philosophies and making investment recommendations.  (¶37.)

-14-

Furthermore, The Restatement (Second) of Trusts provides:

> [The trustee] is under a duty to communicate to the beneficiary
> material facts affecting the interest of the beneficiary which he
> knows the beneficiary does not know and which the beneficiary
> needs to know for his protection in dealing with a third person.

Restatement (Second) of Trusts § 173, comment d. (1959).  Here, it is clear that Neuberger either

failed altogether to perform an investigation prior to recommending investment options to the

Plan or failed to disclose to the Plan material information regarding illegal and excessive fees

associated with the recommended investment options.  Either failure constitutes an absolute

breach of Neuberger's fiduciary duty to the Plan.  Neuberger knew or should have known that

The Hartford was receiving illegal excessive fees in conjunction with its administration of the

Plan.  Thus, Neuberger's failure to adequately investigate the investments it recommended or,

alternatively, its failure to take corrective action, or even inform the Plan of the illegal/excessive

fees at issue, was a clear breach of its fiduciary duty.

The recent decision of the United States District Court for the Western District of

Michigan, *Ellis v. Rycenga Homes, Inc.*, 2007 WL 837224 (W.D. Mich. March 15, 2007)

(addressing an investment advisor's fiduciary duties), is instructive both with respect to the scope

of Neuberger's duty to investigate the investments it was recommending to the Plan, and with

respect to the manner in which this Motion should be decided.  In *Ellis*, the Court denied

defendant's motion for summary judgment, recognizing the validity of the plaintiff's argument that

"a reasonably prudent investment advisor . . . had an obligation to at least investigate where all

plan funds were invested."  *Id.* at *15.  In denying the defendant's motion for summary judgment,

the Court held that "a rational trier of fact could conclude that a reasonably prudent person should

-15-

have inquired into the nature of the cash investments" and that "a reasonable factfinder could conclude that at some point, the prudent exercise of defendant's role as investment advisor should have led to an inquiry." *Id.* Here, the same analysis applies to the unlawful and excessive revenue sharing payments made by mutual funds to The Hartford, which caused the Plan to suffer harm. Moreover, just as fact issues precluded summary judgment in *Ellis*, it is clear in this case that dismissal of the Complaint would not be proper under the facts pled, which Plaintiff should be given an opportunity to prove through discovery.

## D.    Plaintiff Does Not Seek To Delegate Its Fiduciary Duty To Neuberger

Neuberger argues, in its Motion, that Plaintiff is attempting to delegate its fiduciary duties to Neuberger.  Once again, Defendant ignores the allegations of the Complaint and presents the Court with a red herring that barely warrants a response.  Plaintiff does not, as Defendant asserts, seek to delegate its fiduciary duty to Neuberger.  Rather, Phones Plus merely seeks to hold Neuberger to its own fiduciary responsibilities -- to provide investment advice -- presumably in an informed and prudent manner.  As discussed above, the fiduciary duties that Neuberger has breached derive from its role as an investment advisor to the Plan and its agreement with the Plan - - not from any delegation by Plaintiff.  Defendant cites a number of cases that support the contention that Plaintiff, as a Trustee of the Plan, owes the Plan a fiduciary duty.  *See, e.g., Diduck v. Kaczycki & Sons Contractors, Inc.*, 874 F.2d 912 (2d Cir. 1989) (citation omitted).  Plaintiff acknowledges its fiduciary duty.  It is pursuant to this duty that Plaintiff has initiated this action against The Hartford and Neuberger.  Plaintiff's duty, however, is not relevant here.  There is no case or authority standing for the proposition that the existence of Plaintiff's fiduciary duty somehow relieves Neuberger (an investment advisor) of its fiduciary duties to the Plan or that it

-16-

diminishes that duty in any manner.  Neuberger has cited no cases which support, or even purport

to support, the proposition that an investment advisor's fiduciary duty is somehow diminished by

the existence of a trustee that also owes a plan fiduciary duties.  The scope of Neuberger's

fiduciary duties are dependent on its status as an investment advisor and its agreement with the

Plan - - it is not derived in any way from, or related to, a purported delegation of duty from

Phones Plus.

## IV.    CONCLUSION

For all of the reasons stated above, the Motion to Dismiss the Amended Complaint of

Defendants, Neuberger Berman Management, Inc., should be denied in its entirety.[8]

Dated: May 25, 2007                              Respectfully submitted,


                                                  /s/ Patrick A. Klingman
                                                 James E. Miller  (CT21560)
                                                 Patrick A. Klingman (CT17813)
                                                 Karen M. Leser (CT23587)
                                                 SHEPHERD, FINKELMAN, MILLER
                                                   & SHAH, LLC
                                                 65 Main Street
                                                 Chester, Connecticut  06412
                                                 Telephone: (860) 526-1100
                                                 Facsimile: (860) 526-1120
                                                 E-mail:  jmiller@sfmslaw.com
                                                          pklingman@sfmslaw.com
                                                          kleser@sfmslaw.com

---

[8]If the Court determines that there is any deficiency or the need for clarification with
respect to any subject contained in the Amended Complaint, Plaintiff respectfully requests leave to
file a Second Amended Complaint to address any such matter.

Douglas P. Dehler
SHEPHERD, FINKELMAN, MILLER
   & SHAH, LLC
111 E. Wisconsin Avenue  Suite 1750
Milwaukee, Wisconsin  53202
Telephone (414) 226-9900
Facsimile  (414) 226-9905
E-mail: ddehler@sfmslaw.com

James C. Shah
Nathan Zipperian
SHEPHERD, FINKELMAN, MILLER
   & SHAH, LLC
35 E. State Street
Media, PA 19063
Telephone: (610) 891-9880
Facsimile: (610) 891-9883
E-mail: jshah@sfmslaw.com
       nzipperian@sfmslaw.com

Attorneys for Plaintiff and the Proposed Class

**CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2007, a copy of the foregoing, together with attached

exhibits, was filed electronically and served by mail on anyone unable to accept electronic filing.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing

system or by mail to anyone unable to accept electronic filing as indicated on the Notice of

Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


    /s/ Patrick A. Klingman
Patrick A. Klingman (ct17813)
Shepherd Finkelman Miller & Shah, LLC
65 Main Street
Chester, Connecticut  06412
Phone: (860) 526-1100
Fax: (860) 526-1120
E-mail: pklingman@sfmslaw.com

-19-