# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PHONES PLUS, INC., Plan Administrator | ) | |
| Of the Phones plus Retirement Savings Plan, | ) | Civil Action No. 3:06-cv-01835 (AVC) |
| On Behalf of Itself and All Others Similarly | ) | |
| Situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE HARTFORD FINANCIAL SERVICES | ) | |
| GROUP, INC., HARTFORD LIFE INSURANCE | ) | |
| COMPANY and NEUBERGER BERMAN | ) | |
| MANAGEMENT, INC. | ) | |
| | ) | June 27, 2007 |
| Defendants. | ) | |

## REPLY MEMORANDUM OF LAW
## OF DEFENDANT NEUBERGER BERMAN
## MANAGEMENT INC. IN FURTHER
## SUPPORT OF ITS MOTION TO
## DISMISS THE AMENDED COMPLAINT

Defendant Neuberger Berman Management Inc. ("Neuberger") respectfully submits this reply memorandum of law in further support of its motion to dismiss the Amended Complaint of Plaintiff Phones Plus, Inc. ("Plaintiff" or "Phones Plus").

## INTRODUCTION

The concessions detailed below, all derived from Plaintiff's own Opposition Brief and Amended Complaint, mandate dismissal of the Amended Complaint:

- Plaintiff retained The Hartford (not Neuberger) to design and implement its 401(k) retirement plan for employees (the "Plan") and to provide an entire range of administrative and other services necessary to operate the Plan (Opp. Mem. at 3-4; Am. Cplt. ¶ 13.);

- Plaintiff's agreements with The Hartford delegated to The Hartford (not Neuberger) the power and responsibility to select those mutual funds that would appear on the menu from which the Plan could then make its choice of investments (Opp. Mem. at 1; Am. Cplt. ¶¶ 24-25.);

- The Hartford gave Phones Plus two options by which it could make that choice of investments: (a) Phones Plus itself could select investments *from those funds already offered on The Hartford menu*; or (b) Phones Plus could designate Neuberger to assist in the selection of investments *from those funds already offered on The Hartford menu* (Opp. Mem at 4; Am. Cplt. ¶¶ 25-26.);

- Phones Plus elected the latter option. As a result, Phones Plus entered into a separate three-page Advisory Agreement with Neuberger (Am. Cplt. ¶¶ 11, 26; Opp. Mem. Exhibits A and B.);

- The scope of Neuberger's fiduciary duty to Phones Plus is limited to the tasks set out in the Advisory Agreement (Opp. Mem. at 11.);

- The Advisory Agreement required Neuberger to select, from among The Hartford's established menu of 22 families of funds (e.g., Fidelity and Goldman Sachs), those most appropriate to the demographic make-up of the Plan participants (Opp. Mem. at 4 and Exhibit B thereto.);

- The Advisory Agreement did not require Neuberger to police The Hartford or the performance of The Hartford's contractual obligations to Phones Plus (Id. at 13 n. 6.);

- The fees that Plaintiff claims were "excessive and illegal" were not collected by, provided to, shared with, or paid through Neuberger (Opp. Mem. at 6-7; Am. Cplt. ¶¶ 19, 23, 38-43.).

To avoid the dismissal mandated by the pleaded facts and unambiguous text of the contracts here, Plaintiff demands that this Court impose open-ended and wide-ranging duties on Neuberger.  To persuade the Court to imply such non-express duties, Plaintiff conjures contractual provisions that do not exist in the Advisory Agreement and ignores provisions that do.

The non-existent contract provision on which Plaintiff most heavily relies is its repeated assertion that Neuberger was duty-bound to "investigate" the fees that The Hartford was charging Phones Plus pursuant to the separate agreements between those two parties.  Plaintiff's emphasis is understandable, because absent such a duty Neuberger cannot be liable.  Apparently on the theory that repetition makes it so, Plaintiff uses the words "investigate" or "investigation" 20 times in its Opposition Brief.

Plaintiff says, for example, that the Hartford questionnaire states that if "the Plan IQ service is selected, Neuberger Berman will assist in **the researching, selecting and monitoring of your Contract's investment choices**."  Opp. Mem. at 13.  And so far Phones Plus is quoting accurately.  But then Phones Plus engages in a verbal sleight of hand: Neuberger's express duty to "research, select and monitor" investment choices morphs into "Neuberger had a duty to investigate, research, and monitor the investment options that it recommended to the Plan and to inform the Plan regarding the findings of that investigation . . . ."  (Opp. Mem. at 13 n. 6.)  But in fact the documents state no duty to "investigate" "options," or to "inform" the Plan about the "findings" of said "investigation."

As to the contract text Plaintiff wants the Court to ignore, Plaintiff selectively quotes from the Advisory Agreement and asserts (again and again) that Neuberger's obligation to assist in the Plan's selection of funds that are "most appropriate" for the Plan participants

means that Neuberger must investigate, evaluate and report on the fees that The Hartford was

charging Phones Plus.  In constructing this argument, Plaintiff omits the very next sentence in

the Advisory Agreement, which in express terms (a) restricts the universe from which Neuberger

can make recommendations to only those funds already offered by The Hartford and (b) restricts

the criteria for such recommendation to matching the demographics of the Plan participants to

the "most appropriate" of such funds.

> The Selection is limited to the Fund Groups selected by Neuberger from the
> Funds offered by Hartford through the Variable Contract and based upon the
> Demographic Information provided by the Client as of the Date of the Selection
> and does not infer, either directly or indirectly, the appropriateness of any other
> mutual fund or group of mutual funds.

(Opp. Mem., Ex. B at ¶ 1.2.)

In short, Plaintiff is wrong in asserting that Neuberger had the "sole discretion" to

"change the composition of the fund groups selected for the Plan."  (Opp. at 5 n. 3.)

Neuberger submits, and the law dictates, that this language unambiguously

circumscribes the task undertaken by Neuberger and establishes the benchmark that Neuberger

was to meet:  Starting with the small group of funds chosen exclusively by The Hartford,

Neuberger was to select those that were "most" appropriate in light of the "Demographic

Information" provided by Phones Plus.  Nothing about that task suggests a duty that Neuberger

investigate, analyze, test and report on the fees that The Hartford was charging Phones Plus

under a series of agreements to which Neuberger was not a party.  Indeed, the language quoted

above expressly states that Neuberger was not passing -- at all -- on the appropriateness or

inappropriateness of the group of funds that initially was selected by The Hartford.

In any event, Phones Plus has not pleaded an underlying wrong with the requisite

factual detail to survive a motion to dismiss.  Plaintiff repeatedly asserts that Neuberger had a

duty to "investigate," but does not identify what the investigation was to focus on, how it was

supposed to proceed, what tests should have been performed, or what benchmarks Neuberger was supposed to employ.  While Plaintiff claims that the fees charged by Hartford were "excessive" and "illegal," it does not support these conclusory assertions with any factual allegations as to why the fees were "excessive" or "illegal."  Under the decision of the Supreme Court of the United States in *Bell Atlantic v. Twombly, infra*, such pleadings can no longer survive a motion to dismiss.  The Amended Complaint therefore should be dismissed as to Neuberger.

<u>**ARGUMENT**</u>

    I.  PLAINTIFF FAILS TO RECOGNIZE -- LET ALONE SATISFY -- THE <u>CORRECT LEGAL STANDARD ON A MOTION TO DISMISS.</u>

      In attempting to defeat Neuberger's motion to dismiss, Phones Plus relies on a standard of pleading that the U. S. Supreme Court rejected last month in *Bell Atlantic Corp. v. Twombly,* No. 05-1126 (U.S. May 21, 2007).  According to Plaintiff's now-discredited version of the law,

> The Court must deny [Neuberger's] motion unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.

Opp. Mem. at 9 (citations omitted; emphasis supplied in Opp. Mem.)  Relying on this standard, Plaintiff argues that this Court can dismiss the Amended Complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  <u>Id.</u>  Plaintiff therefore argues that the Amended Complaint should survive because it is conceivable that Neuberger assumed a duty to conduct an undefined "investigation" to ferret out and report on certain fees that The Hartford was supposedly charging Phones Plus, which fees were, in some unspecified way, "excessive" and "illegal."  (<u>Id.</u> at 10-16.)

Unfortunately for Plaintiff, the "no set of facts" standard it expressly relies on here "has earned its retirement." *Twombly*, slip. op. at 16.  There can no longer be any doubt that, to survive a motion to dismiss, Phones Plus was required to allege facts sufficient to demonstrate that its entitlement to relief was plausible, not merely speculative or possible or conceivable. See id. at 8-10 & n. 5.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . plaintiff's obligation to provide the "grounds" of his ["entitlement] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. at 8.

Here, Plaintiff has not alleged facts demonstrating any of the following:  (a) that Neuberger had any discretion or power to determine what funds The Hartford selected as the menu to be offered to the Plan, (b) that Neuberger had any duty other than to assist in the selection from that menu of the most appropriate investments based on the demographics of Plan participants, (c) that Neuberger assumed an obligation to "investigate" The Hartford, (d) what such investigation was supposed to entail and how it was to be conducted, or (e) that the fees charged by The Hartford were "excessive" or "illegal."

On the contrary, the facts pleaded by Plaintiff prove that Phones Plus did not have any such duties, because the Advisory Agreement is part of those pleadings.  A plaintiff may not impose on a defendant duties beyond those enumerated in the contract the parties had entered into.  "[W]here parties negotiate the terms of a contract governing a retirement plan, the adherence to those terms by the plan administrator cannot constitute a breach of its fiduciary duties, barring a grant of discretionary authority to the fiduciary." *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 29 (2d Cir. 2002).  The *Harris Trust* court cited ERISA itself, which provides that "a fiduciary shall discharge his duties . . . in accordance with

the documents and instruments governing the plan insofar as such documents and instruments

are consistent with the [fiduciary duty] provisions of [ERISA]."  Id. at 29 (citing 29 U.S.C. §

1104(a)(1)(d)).  The *Twombly* Court also put to rest Plaintiff's fall-back argument that the

Amended Complaint should not be dismissed until Plaintiff has had an opportunity to develop

facts through discovery.  (Opp. Mem. at 2.)

> [W]hen the allegations in a complaint, however true, could not raise a claim of
> entitlement to relief, "this basic deficiency should . . . be exposed at the point of
> minimum expenditure of time and money by the parties and the court.

Slip. op. at 11 (citations omitted).

Because Plaintiff has failed to meet the standards announced in *Twombly*, the

Amended Complaint should be dismissed with prejudice.[1]

## II.  THE CASES CITED BY PLAINTIFF DO NOT ESTABLISH THE EXISTENCE OF A FIDUCIARY DUTY REQUIRING NEUBERGER TO INVESTIGATE THE HARTFORD.

Plaintiff concedes that Neuberger's fiduciary duty was "limited to the functions

that it was retained to perform for Phones Plus."  (Opp. Mem. at 11.)  Plaintiff also recognizes

that there is only one agreement between Neuberger and Phones Plus that identifies those

functions:  the Advisory Agreement.  (Id. at Ex. B.)  Despite the absence of any term in that

agreement requiring Neuberger to investigate The Hartford and its fee arrangements with Phones

Plus, Plaintiff argues that the case law imposes such a duty on Neuberger because it served as an

"investment advisor."  Neither the case law cited by Plaintiff nor the plain language of ERISA

supports Plaintiff's self-serving and overbroad proposition.

---

[1]      Even if Plaintiff were able to allege a cognizable claim -- which it cannot -- Phones Plus will be unable to
satisfy the requirement for certification of a class in this matter, an issue not to be addressed on this motion.

Citing a smattering of cases, and using **bold** print and *italics* in place of accurate quotations and persuasive reasoning, Phones Plus argues that "**the test of prudence focuses on a fiduciary's conduct in investigating, evaluating and making**" investments.  (Opp. Mem. at 14 (boldface in original).)  According to Phones Plus, therefore, Neuberger -- like all "investment advisors" -- was *required* to investigate The Hartford's fee arrangements with Phones Plus and The Hartford's individual relationships with the various fund families with which it does business.

Not a single case cited by Plaintiff supports that proposition.  In *Fink v. National Savings and Trust Co.*, 772 F.2d 951 (D.C. Cir. 1985), the defendants did not even include an investment advisor.  Instead, the defendants were the plan, plaintiffs' employer, and the plan's initial and successor trustees.  Id. at 953.  The *Fink* defendants had complete discretion over the investment decisions to be made on behalf of the Plan participants, and they were authorized to invest as much as 100% of the Plan's assets in the employer's illiquid stock.  The plaintiffs in *Fink* alleged that defendants continued to invest plan funds in the employer's stock despite the employer's obvious liquidity problems and in the absence of any evaluation of the prudence of continuing to purchase that stock.  Id. at 955-58.

In contrast to the *Fink* defendants, Neuberger had no discretion as to how to invest the Plan's assets.  Moreover, Phones Plus agreed that The Hartford alone was to select the menu of funds from which Neuberger would make recommendations based on Plan demographics.  While the *Fink* defendants failed to make any inquiry whatsoever as to the prudence of investing all of the plan's money in the declining stock of the employer, there is no claim that Neuberger failed to take into account the Plan participants' demographic profile in making its recommendations.  In short, *Fink* provides no support for the notion that Neuberger

had to conduct some open-ended investigation of The Hartford, the Plan's hand-picked
administrative service provider.

Plaintiff's argument that all "investment advisors" must, as a matter of law,
investigate third-party business relationships that may redound to the detriment of the
beneficiaries flies in the face of the relevant provisions of ERISA.  As detailed in Neuberger's
supporting Memorandum, Section 3(21)(A) of ERISA limits a party's duties "to the extent" that
it has assumed or exercises the described authority or responsibility.  (See Neuberger Mem. at 9-
10.)  A party, therefore, "may be an ERISA fiduciary with respect to certain matters but not
others." *Harris Trust*, 302 F.3d at 28.  Plaintiff's all-encompassing duty to investigate, however,
would effectively ignore the "to the extent" limitation incorporated into the statute and
recognized by the courts.[2]

Plaintiff's reliance on *Ellis v. Rycenga Homes, Inc.*, No. 1:04-cv-694, 2007 WL
837224 (W.D. Mich. March 15, 2007), is similarly misplaced.  In *Ellis*, the defendant was the
sole investment advisor for the employer-based plan at issue for most of the plan's twenty-year
history.  Id. at *13.  Defendant undertook to advise the plan's trustee about the balancing and
diversification of the plan assets.  Id. at *14.  No pre-existing menu of acceptable fund families
or investment vehicles was established by the plan or anyone else.  The trustee, who accepted

---

[2]     Neuberger is not attempting to "garnish [sic] unwarranted sympathy" by referring to the modest $400
annual fee charged to the Plan, as plaintiff contends.  (Opp. Mem. at 5 n. 6.)  The relevant point (ignored by
Phones Plus) is that such a small fee evidences, and is consistent with, the parties' understanding that
Neuberger's duties were narrowly circumscribed in accordance with the terms of the Advisory Agreement.
And that conclusion would be unchanged even if, as Plaintiff imagines, Neuberger had a million customers
paying $400 each (which, of course, it never did).  The number of potential customers has nothing to do
with the particular duties running to each customer as spelled out in the Advisory Agreement.  Put
differently, the potential costs of defending against countless suits like the one alleged by Phones Plus does
not make a massive multiple of the $400 per plan fee any more attractive or sensible economically.
Plaintiff's argument to the contrary is nonsense.

every recommendation the advisor had ever made, made a series of loans to the employer that all

parties agreed were "prohibited transactions" under ERISA.

The plan's annual statements in *Ellis* showed yearly increases in the plan's "cash"

investments, driven principally by larger and larger "Employer Receivables." Id. at *15.

Plaintiff alleged that the defendant did not know where the plan's monies had been invested.

Because the advisor was required to advise the trustee as to the prudent balancing and

diversification of the plan's assets, the Magistrate Judge in *Ellis* concluded that "it is at least

arguable that [defendant] had some duty of inquiring into the nature of the large and increasing

'cash' investments disclosed in the annual reports." Id. at *15.  Defendant's failure to do so,

after being put on inquiry notice, could constitute a breach of duty, according to the Magistrate

Judge.

In contrast to the allegation in *Ellis*, Phones Plus has not alleged a single fact that

purportedly put Neuberger on notice that The Hartford was engaging in any impropriety in

selecting funds for the Plan's menu of investment options.  In place of factual averments like

those alleged in *Ellis*, the Amended Complaint simply alleges that "Neuberger also was aware of

the risk that the Phones Plus Plans and other Plans would be charged excessive fees by The

Hartford and/or by mutual funds . . . ."  (Am. Cplt. at ¶ 28.)  Such unsupported conclusory

allegations are exactly what the *Twombly* Court found to be insufficient.[3]

---

[3]     The other cases cited by Plaintiff on pages 12 through 15 also miss the mark.  Two of the cases stand for
the unremarkable proposition that a fiduciary has a "duty to inform" when the fiduciary is aware of
something that might harm the beneficiary.  *Bixler v. Central Pennsylvania Teamsters Health & Welfare
Fund*, 12 F.3d 1292 (3d Cir. 1993); *Globe Woolen Co. v. Utica Gas and Electric Co.*, 224 N.Y. 483, 121
N.E. 378 (1918).  Plaintiff has not alleged that Neuberger knew anything that would adversely affect the
Plan or its participants.  The remainder of the cases note that Congress intended to incorporate, and expand
upon, the fiduciary standards of trust law into ERISA, a proposition that Neuberger does not dispute and
which has no effect on the outcome of this motion.

Plaintiff also fails to distinguish the authorities cited in Neuberger's supporting Memorandum, particularly the decision in *Crowley ex rel. Corning, Inc., Inv. Plan v. Corning, Inc.*, 234 F. Supp. 2d 222 (W.D.N.Y. 2002).  In *Crowley*, a plan participant sued Corning -- the employer-sponsor of the plan at issue -- and the individual members of the plan's Investment Committee (who were also Corning board members).  As in the instant case, the *Crowley* plaintiff alleged that the Investment Committee "failed to independently investigate" facts which, if disclosed, would have avoided plan losses.[4]  Id. at 230.  Like Phones Plus, the *Crowley* plaintiffs claimed that the defendants' failure to investigate constituted a breach of fiduciary duty under ERISA.  Id. at 230-31; see also *Brandt v. Grounds*, 687 F.2d 895, 898 (7th Cir. 1982).

The court granted defendants' motion to dismiss.  In language directly applicable to the instant case, the Court anticipated the *Twombly* decision and held:

> [T]he Court repeats that the Amended Complaint makes no specific allegation that the Committee members actually possessed the 'adverse information.'  A complaint that contains only conclusory allegations and lacking any factual assertions for support fails even the liberal standards of Federal Rule of Civil Procedure 12(b)(6) . . . .
>
> [E]ven under Federal Rule of Civil Procedure 8, plaintiff must make a 'short and plain statement of the claim showing that the pleader is entitled to relief,' and plaintiff has failed to do so in his Amended Complaint.

Id. at 230-31.

In the same way, Phones Plus has failed to allege that Neuberger actually possessed any adverse information relating to The Hartford.  Plaintiff has thereby fatally failed to meet the requirements of Federal Rule of Civil Procedure 8.

---

[4]    In *Crowley*, the defendant allegedly failed to investigate the accuracy of Corning's earnings statements.

## <u>CONCLUSION</u>

For the foregoing reasons, defendant Neuberger Berman Management Inc.

respectfully submits that the Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

By: _____/s/_____

David A. DeBassio (ct24365)
John Droney (ct10906)
Levy & Droney P.C.
Pondview Corporate Center
74 Batterson Park Road
Farmington, CT 06032
(Tel): (860) 676-3000
(Fax): (860) 676-3200

Joseph Baio
jbaio@willkie.com
Willkie Farr & Gallagher, LLP
787 Seventh Avenue
New York, NY  10019
(Tel):  (212) 728-8203
(Fax):  (212) 728-9203

Attorneys for Defendant Neuberger Berman
Management, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 27, 2007, a copy of the foregoing Reply Memorandum Of Law Of Defendant Neuberger Berman Management Inc. In Further Support Of Its Motion To Dismiss The Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic fling system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.


John F. Droney, Esq. (ct10906)
David A. DeBassio, Esq. (ct24365)
LEVY & DRONEY, P.C.
74 Batterson Park Road
Farmington, CT 06032
Tel:  860-676-3000
Fax: 860-676-3200
E-mail:  jdroney@ldlaw.com
            ddebassio@ldlaw.com