**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| PHONES PLUS, INC., Plan Administrator | ) | |
| Of the Phones Plus Retirement Savings Plan, | ) | Civil Action No. 3:06-cv-01835 (AVC) |
| On Behalf of Itself and All Others Similarly | ) | |
| Situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE HARTFORD FINANCIAL SERVICES | ) | |
| GROUP, INC., HARTFORD LIFE INSURANCE | ) | |
| COMPANY and NEUBERGER BERMAN | ) | |
| MANAGEMENT INC., | ) | |
| | ) | March 3, 2008 |
| Defendants. | ) | |

**HARTFORD LIFE INSURANCE COMPANY'S**
**AND HARTFORD FINANCIAL SERVICES GROUP, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................... iv

INTRODUCTION ..................................................................... 1

KEY UNDISPUTED MATERIAL FACTS
SUPPORTING SUMMARY JUDGMENT ON ALL COUNTS ....................... 5

    The Parties ..................................................................... 5

        1.      Phones Plus, Inc. and Plan Trustees ......................... 5

        2.      The Hartford Insurance Company ............................ 6

        3.      Neuberger Berman Management, Inc. ....................... 7

        4.      Hartford Financial Services Group, Inc. .................... 7

    Background and History of the Parties' Contractual Relationships ......... 8

        1.      Hartford Life's Contract with Phones Plus ................. 8

        2.      Phones Plus's Retention of Neuberger's Advisory Services ... 9

        3.      Phones Plus's Initial Selection of Investment Options ...... 9

        4.      Phones Plus's Changes to Investment Options ............. 10

        5.      Hartford Life's Disclosure and Phones Plus's
                  Acknowledgment of Fees Received From
                  Underlying Funds ........................................... 10

STANDARD OF REVIEW ........................................................... 10

ARGUMENT ........................................................................ 12

I.      HARTFORD LIFE (AND DERIVATIVELY, HFSG) DID NOT
       VIOLATE ERISA SECTIONS 404(a) OR 406(b) AND THEREFORE
       IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS I AND II
       AS WELL AS THE CO-FIDUCIARY CLAIM UNDER COUNT III ......... 12

       A.      Only ERISA fiduciaries may be liable for violations of Sections
             404(a) or 406(b), and the undisputed facts demonstrate that Hartford
             Life (and, derivatively, HFSG) is not an ERISA fiduciary to the
             Phones Plus Plan. ........................................... 12

1.      Hartford Life is not a named fiduciary. ..........................................14

2.      Hartford Life did not *exercise any discretion, authority or control* that would cause it to become a fiduciary under ERISA. ......15

    a.      Hartford Life did not "exercise discretion" as to the Phones Plus Plan when it assembled its menu of funds prior to having any relationship with the Plan. ............16

    b.      Hartford Life did not "exercise discretion" and had no role in Phones Plus's selection of investment options from the menu and did not otherwise provide "investment advice" in connection with such selection. ........18

    c.      Hartford Life did not "exercise discretion, authority or control" in connection with the addition, deletion or substitution of investment options selected by Phones Plus for the Plan. ..................................................................19

    d.      Hartford Life is not otherwise a fiduciary by virtue of its receipt and retention of the Fees because the Fees are not plan assets. ........................................................................22

        (i)      The Fees are not plan assets under well-established law and regulation. ..........................23

        (ii)     Hartford Life assumed no fiduciary or other obligations to Phones Plus or the Plan with respect to the Fees where Phones Plus, while on notice of the Fees, did not contract with Hartford Life for any right to them. ..........................25

        (iii)    The Fees are not plan assets even under the novel test created in *Haddock v. Nationwide*, which, in any event, should not be followed. ............28

B.      Phones Plus cannot establish that it sustained any out-of-pocket loss, or suffered any damages, and its Section 404(a) and 406(b) claims therefore fail as a matter of law on this ground as well. ..................31

II.     HARTFORD LIFE AND HFSG ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S "ALTERNATIVE" CLAIM UNDER COUNT III FOR KNOWING PARTICIPATION IN A BREACH OF TRUST ......34

III.     HFSG IS ALSO ENTITLED TO SUMMARY JUDGMENT ON COUNT III
         BECAUSE IT IS NOT A PARTY TO THE PHONES PLUS CONTRACT
         AND WAS NOT OTHERWISE INVOLVED, DIRECTLY OR INDIRECTLY,
         IN ANY OF THE ALLEGED CONDUCT OR TRANSACTIONS AT ISSUE ...... 36

CONCLUSION .................................................................................................... 38

# **TABLE OF AUTHORITIES**

## **Federal Cases**

*American Fed. of Unions Local 102 Health & Welfare Fund v. Equitable Life
Assur. Soc. of the U.S.*, 841 F.2d 658 (5th Cir. 1988) ................................................... 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................ 10

*Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12 (1st Cir. 1998) .............................. 16

*Borthwick v. First Georgetown Sec., Inc.*, 892 F.2d 178 (2d Cir. 1989) ............................... 11

*Brooks v. Von Lenthe*, No. 06-2407-cv, 2006 WL 3509134 (2d Cir. Dec. 5, 2006) ............... 37

*Carlson v. Principal Fin. Group*, 320 F.3d 301 (2d Cir. 2003) ............................................ 35

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................. 11

*Chapman v. Klemick*, 3 F.3d 1508 (11th Cir. 1993) ..................................................... 23, 24

*Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463
(7th Cir. 2007) ......................................................................................................... 25, 30

*Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54 (4th Cir. 1992), *cert. denied,* 506 U.S. 1081
(1993) ...................................................................................................................... 15

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996), *cert. denied* 519 U.S. 1007 ........ 37

*Deluca v. Blue Cross Blue Shield of Mich.*, No. 06-12552, 2007 WL 3203131,
(E.D. Mich. Oct. 31, 2007) ......................................................................................... 29

*Deluca v. Blue Cross Blue Shield of Mich.*, No. 06-12552, 2007 WL 4591914
(E.D. Mich. Dec. 28, 2007) ......................................................................................... 29

*F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250 (2d Cir. 1987) ..................... 17

*Farm King Supply, Inc. Integrated Profit Sharing Plan and Trust v. Edward D.
Jones & Co.*, 884 F.2d 288 (7th Cir. 1989) ................................................................... 19

*Fechter v. Connecticut Gen. Life Ins. Co.*, 800 F. Supp. 182 (E.D. Pa. 1992) ...................... 27

*Flanigan v. General Elec. Co.*, 93 F. Supp. 2d 236 (D. Conn. 2000), *aff'd,* 242 F.3d 78, *cert.
denied,* 534 U.S. 1065 (2001) ...................................................................................... 17

*Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18 (2d Cir. 1996) .......................... 16

*Haddock v. Nationwide Financial Services, Inc.,* 419 F. Supp. 2d 156
   (D. Conn. 2006) .......................................................................................... 28, 30

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 520 U.S. 238 (2000) ........ 35

*Henry v. Champlain Enterprises, Inc.*, 468 F. Supp. 2d 368 (W.D.N.Y. 2007) ........... 32

*Hotel Employees & Restaurant Employees Int'l Union Welfare Fund v. Gentner,*
   815 F. Supp. 1354 (D. Nev. 1993), *aff'd,* 50 F.3d 719 (1995) ...................... 24, 25

*In re Smithkline Beecham Clinical Labs., Inc.*, 108 F. Supp. 2d 84 (D. Conn. 1999) ......... 38

*Lipton v. Nature Co.*, 71 F.3d 464 (2d Cir. 1995) ..................................................... 11

*LoPresti v. Terwilliger*, 126 F.3d 34 (2d Cir. 1997) ............................................. 20, 21

*Moeckel v. Caremark, Inc.*, No. 3:04-0633, 2007 WL 3377831
   (M.D. Tenn. Nov. 13, 2007) ....................................................................... 27

*National Market Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520 (2d. Cir. 2004) ........ 34

*Nelson v. Hodowal*, 512 F.3d 347 (7th Cir. 2008) ................................................... 33

*Pegram v. Herdrich*, 530 U.S. 211 (2000) ......................................................... 13, 17

*PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101 (2d Cir. 2002) .................................. 11

*Reichling v. Continental Bank*, 813 F. Supp. 197 (E.D.N.Y. 1993) ....................... 23, 25

*Schulist v. Blue Cross of Iowa*, 553 F. Supp. 248 (N.D. Ill. 1982) ........................... 26

*Schulist v. Blue Cross of Iowa*, 717 F.2d 1127 (7th Cir. 1983) ................................ 27

*SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329 (2d Cir. 2004) ........................... 10

*Seaway Food Town, Inc. v. Medical Mut. of Ohio*, 347 F.3d 610 (6th Cir. 2003) ........ 26

*Sirna v. Prudential Sec., Inc.*, 964 F. Supp. 147 (S.D.N.Y. 1997) ........................... 17

*Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.,*
   793 F.2d 1456 (5th Cir. 1986), *cert. denied,* 479 U.S. 1034 (1987) ................. 21

*Tardif v. Gen. Elec. Co.*, No. 4:98-CV-1374, 2000 WL 33376644
   (D. Conn. Sept. 30, 2000) ....................................................................... 32, 34

*Useden v. Acker*, 947 F.2d 1563 (11th Cir. 1991) .................................................. 23, 24

*Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118 (2d Cir. 1990) ..................... 11

*Ying Jing Gan v. City of New York*, 996 F.2d 522 (2d Cir. 1993) ............................. 11

## Federal Statutes

29 U.S.C. § 1002(21) ........................................................................................ 23

29 U.S.C. § 1002(21)(A) .............................................................................. 13, 15, 19

29 U.S.C. § 1002(21)(A)(i) ................................................................................ 2

29 U.S.C. § 1002(21)(A)(ii) ........................................................................... 2, 21

29 U.S.C. § 1101(b)(1) ................................................................................. 24, 25

29 U.S.C. § 1102(a) ...................................................................................... 13, 14

29 U.S.C. § 1104(a)(1) ................................................................................... 13

29 U.S.C. § 1105 ............................................................................................ 13

29 U.S.C. § 1106 ............................................................................................ 13

29 U.S.C. § 1106(b)(1) .................................................................................... 30

29 U.S.C. § 1106(b)(3) .................................................................................... 30

29 U.S.C. § 1132(a) ........................................................................................ 34

## Federal Rules

Fed. R. Civ. P. 56(c) ....................................................................................... 10

Fed. R. Civ. P. 56(e) ....................................................................................... 11

**Federal Regulations**

29 C.F.R. § 2509.75-8 .................................................................................................. 16

29 C.F.R. § 2510.3-101 ............................................................................................ 24, 25

**State Regulations**

L.R. 56(a)1 ....................................................................................................................... 5

Defendants, Hartford Life Insurance Company ("Hartford Life") and Hartford Financial

Services Group, Inc. ("HFSG") (collectively, "Hartford"), by and through their attorneys, Jorden

Burt LLP, respectfully submit this memorandum of law in support of their motion for summary

judgment on all three counts of the Amended Class Action Complaint ("Complaint") of the sole

named plaintiff, Phones Plus, Inc. ("Phones Plus" or "Plaintiff"), in this action.

## **INTRODUCTION**

In this putative class action, Phones Plus, the sponsor and administrator of a 401(k)

retirement plan for its employees, alleges that Hartford Life and HFSG committed violations of

the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended.  Phones Plus

claims that Hartford Life violated ERISA by receiving and retaining certain fees from mutual

fund families whose funds Hartford Life offers on a large "menu" from which plan fiduciaries

like Phones Plus select a limited number of particular funds to make available as investment

options to their retirement plan participants.  However, as discussed below, Hartford Life's

receipt of such well-established and accepted service fees (the "Fees"), which in any event result

in a lower cost product to Hartford Life's plan sponsor customers, is permissible under

applicable law and industry regulation.  Plaintiff's attempt to rewrite the law, and ignore the

dispositive facts of this case, should therefore be rejected.[1]

---

[1] By way of background, the category of fees at issue originated when retail mutual fund advisers began to make their mutual funds available to 401(k) plan sponsors (such as Plaintiff) and at the same time began to reimburse retirement plan service providers (such as Hartford Life) for the costs of various services associated with the sale and trading of the mutual fund shares, including substantial recordkeeping for fund shares held by 401(k) plan accounts.  In the early 1990's, fund advisers of the principal mutual fund families first offered their funds  to 401(k) plans through custodial accounts sponsored by major brokerage firms, such as Merrill Lynch.  In contrast, 401(k) products sold by insurance companies at that time tended to be limited to so-called "proprietary" investment platforms, such as an insurance company's own affiliate-managed accounts or mutual funds.  In the late 1990's, however, insurance companies began to offer "open architecture" group annuity contracts to the 401(k) market:  that is, group annuity contracts offering as investment options a very large number of funds from many different mutual fund families.  It was at this time that, as reimbursement  for the additional services provided and the additional costs incurred by insurance company service providers in offering the outside

Plaintiff's efforts to twist well-established ERISA jurisprudence do not survive scrutiny when analyzed against the undisputed facts of this case, which lead to the irrefutable conclusion that Hartford Life is not a fiduciary under ERISA.  In sum as well as substance, Phones Plus's primary claims are that Hartford Life's receipt and retention of the Fees from the mutual fund families violate Hartford Life's (and, derivatively, HFSG's) purported fiduciary duty to act solely in the interest of the plan pursuant to Section 404(a) of ERISA and constitute prohibited transactions pursuant to ERISA Section 406(b).  However, those ERISA sections – as well as Section 405(a) regarding co-fiduciary liability – only apply (and, in turn, may only be violated) if Hartford, in connection with its receipt and retention of the Fees, is acting in the capacity of a "fiduciary" to the Phones Plus 401(k) Retirement Savings Plan (the "Plan").  As demonstrated herein, however, Hartford Life, contrary to the allegations of the Complaint, was ***not*** and is ***not*** acting as a fiduciary.

Hartford Life is not a fiduciary because, simply put, Hartford Life did not "***exercise*[ ]** any discretionary authority or discretionary control respecting management [of the Plan] or ***exercise*[ ]** any authority or control respecting management or disposition of [the Plan's] assets" as required under ERISA's definition of a fiduciary.  ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) (emphasis added).  Likewise, Hartford Life did not "render[ ] investment advice to the [Plan] for a fee or other compensation …"  ERISA § 3(21)(A)(ii), 29 U.S.C. § 1002(21)(A)(ii).  Under these ERISA provisions, Hartford Life, as a matter of law, cannot be a fiduciary unless it exercises such discretionary authority/control or renders investment advice.

To the contrary, when Phones Plus purchased a group annuity contract from Hartford Life as the funding vehicle for the Plan, it was Phones Plus (not Hartford Life) which had the

---

funds in their 401(k) products, the mutual fund families began to pay to insurance companies the same types of service fees that they had been paying to brokerage firms.

responsibility to select from the offered "menu" of numerous mutual funds, from many different mutual fund families, those specific mutual fund-based and fixed-income investment options that it would offer to Plan participants and thus include in the group annuity contract.  Phones Plus did in fact discharge this responsibility and make these selections, acting upon the recommendations of its separately retained investment adviser, co-defendant Neuberger Berman Management, Inc. ("Neuberger").  Hartford Life had no role or involvement in such selections. Moreover, and of utmost significance to this summary judgment motion, Hartford Life has ***never*** initiated, recommended, proposed, or directed any changes to the investment options selected by Phones Plus during the course of the parties' business relationship.[2]  The only "additions, deletions or substitutions" of mutual funds under the Phones Plus Plan have occurred ***at the direction of Phones Plus***, with no role by Hartford Life other than to carry out Phones Plus's instructions.

In addition, it is undisputed that Hartford Life's receipt and retention of the Fees were disclosed in writing to, and acknowledged in writing by, Phones Plus when it contracted with Hartford Life to have Hartford Life perform certain non-discretionary, administrative services relating to the operation of the Plan.  However, Phones Plus did ***not***, under its contract with Hartford Life, seek to secure a right to all or any portion of these third-party Fees.  Consistent with long-standing ERISA jurisprudence, such circumstances unequivocally negate Phones

---

[2] The industry has relied for over a decade upon an advisory opinion – Advisory Opinion 97-16A – issued by the Department of Labor ("DOL"), the federal agency charged with implementing ERISA.  Advisory Opinion 97-16A holds that, provided certain conditions are met, a 401(k) service provider like Hartford Life does not become a fiduciary under ERISA even if it exercises limited discretion to make additions, deletions or substitutions to the list of funds actually selected as investment options by the plan sponsor/fiduciary.  Here, however, the threshold issue of whether the exercise of some limited discretion falls within the ambit of Advisory Opinion 97-16A does not even arise because Hartford Life exercised ***no discretion*** whatsoever with respect to the Phones Plus Plan.  (Nevertheless, a copy of Advisory Opinion 97-16A is attached to this Memorandum as Exhibit A for the Court's reference.)

Plus's claims that Hartford assumed fiduciary obligations with respect to the Fees, or that the Plan is otherwise entitled to them.

The Complaint relies on additional theories to allege that Hartford Life (and, derivatively, HFSG) is an ERISA fiduciary, but they likewise fail when analyzed against the undisputed facts of this case. The Complaint attacks the fact that Hartford Life assembled an extensive "menu" of mutual funds from which 401(k) plan sponsors could select from a very large number of investment options to offer to their participants. This "menu," however, was indisputably assembled before Hartford Life had any relationship, contractual or otherwise, with Phones Plus, thereby precluding Hartford Life from having any possible fiduciary relationship with the Phones Plus Plan in connection with the menu's creation. In other words, the "menu" – from which Phones Plus selected investment options to include in the group annuity contract and, in turn, to offer to Plan participants – pre-dated any relationship between the parties: it is obviously a factual impossibility for a service provider like Hartford Life to exercise discretion or control with respect to a plan or to render investment advice to such a plan at a time when it has no relationship with the plan. Likewise, when Hartford Life enters into agreements with mutual fund families under which Hartford Life receives Fees, it does so in the context of its entire 401(k) product line and not for or on behalf of any specific plan customer like Phones Plus. Finally, Plaintiff's allegation that the Fees themselves constitute "plan assets" over which Hartford Life exercises discretionary authority or control must be rejected because the Plan never had any direct or indirect interest in the Fees.

Hartford is therefore entitled to summary judgment on those claims which Phones Plus has predicated on its erroneous theory that Hartford is an ERISA fiduciary to the Plan. Hartford is also entitled to summary judgment on Plaintiff's "alternative" claim that Hartford, as a non-

fiduciary, knowingly participated in a purported breach of fiduciary duty by another party (Hartford's unaffiliated co-defendant, Neuberger).  In addition, summary judgment should be granted on the separate ground that Plaintiff will be unable to establish loss causation or damages in this case.  Plaintiff has not alleged, and cannot in good faith allege, that the Plan has sustained any ascertainable loss as a result of Hartford Life's receipt of the Fees from the mutual funds, nor can Plaintiff dispute the fact that, even if, *arguendo,* there were a loss to the Plan,  the loss would have been caused by Plaintiff's own decision to enter into the contract with Hartford Life knowing that Hartford Life would receive and retain the Fees.  Finally, HFSG is entitled to summary judgment on all counts for the additional incontrovertible reason that it is not a party to the Phones Plus contract and was not otherwise involved, directly or indirectly, in any of the alleged conduct or transactions at issue.  For these reasons, Hartford's motion for summary judgment should be granted as to both Hartford defendants on all three counts of Plaintiff's Complaint.

## KEY UNDISPUTED MATERIAL FACTS
## <u>SUPPORTING SUMMARY JUDGMENT ON ALL COUNTS</u>

Hartford refers the Court to its Local Rule 56(a)1 Statement for a full recitation of the facts material to Hartford's motion as to which there is no genuine issue to be tried.  However, the key undisputed facts supporting summary judgment in Hartford's favor are set forth below.

<u>The Parties</u>

1.    **Phones Plus, Inc. and Plan Trustees**

Plaintiff Phones Plus is the Plan Sponsor and Plan Administrator of the Phones Plus Retirement Savings Plan (the "Plan").  L.R. 56(a)1 Statement ¶ 1.  Thomas Sodemann and Robert Sodemann are the Trustees of the Plan.  *Id.* ¶ 2.[3]

---

[3]    The Plan Trustees are third-party defendants in this action.

## 2. Hartford Life Insurance Company

Defendant Hartford Life is a retirement plan service provider that focuses on offering high quality products and services to smaller-market companies that sponsor 401(k) plans for their employees. *Id.* ¶ 3.  At the core of this business, Hartford Life provides certain enumerated, administrative, non-discretionary services to 401(k) retirement plan sponsors and administrators. *Id.* ¶ 4.  In connection with these services, Hartford Life furnishes a funding mechanism for plan sponsors and administrators in the form of a group annuity contract or similar vehicle through which Hartford Life offers both a fixed interest general account and a "menu" of numerous mutual fund investment options. *Id.*  From this generic menu of investment options offered to all prospective customers, the plan sponsor or its investment adviser selects a smaller number of particular funds to make available to its participants. *Id.*  Consistent with long-accepted practices within the retirement services industry, and as Hartford Life expressly discloses in writing to all of its plan customers, Hartford Life receives Fees from funds listed on the menu, in return for which Hartford Life offers the funds on its 401(k) platform of services and provides the funds and the plans with numerous recordkeeping, accounting, trade processing and other services. *Id.* ¶¶ 6-7.  These Fees are integral to Hartford Life's pricing of its retirement products. *Id.* ¶¶ 8, 17 They help to fund Hartford Life's provision of extensive customer services to 401(k) plans and thus effectively reduce the cost of these services to plan sponsors such as Phones Plus, and to plan participants. *Id.* ¶¶ 8, 13.

Hartford Life discloses its receipt of the Fees to its customers before it contracts with them, and it also notifies customers that they can call a toll-free telephone number to receive additional information, including the specific Fees paid to Hartford Life by any particular fund. *Id.* ¶¶ 6, 20.  If a customer inquires through the toll-free number, Hartford Life will confirm the fund-specific Fee information in writing. *Id.* ¶21.

6

Hartford Life did not and could not influence a plan sponsor to select certain funds over others for inclusion in the plan.  *Id.* ¶ 22.  This is because the contract vests sole authority in the plan sponsor to assess and select funds for the plan.  *Id.* ¶ 5.

### 3.    Neuberger Berman Management, Inc.

Defendant Neuberger Berman Management, Inc. ("Neuberger") is an investment advisory firm that, at times relevant to this lawsuit, provided investment advisory services to 401(k) plan sponsors and administrators.  *Id.* ¶ 23.  Hartford Life contracted with, and arranged for, Neuberger to offer this independent service to those Hartford Life customers desiring to have professional investment advice in choosing from among the wide menu of mutual funds on the Hartford Life platform.  *Id.* ¶ 24.  Hartford Life had no role in the separate advisory relationships Neuberger thereafter formed with those customers and was not a party to the separate contracts into which Neuberger entered with those customers for the provision of investment advice.  *Id.* ¶ 25.  Hartford Life did not and could not influence Neuberger's recommendations or investment advice to plan sponsors.  *Id.* ¶ 26.  Neuberger, moreover, received no portion of the Fees remitted to Hartford Life by the mutual fund families, and Hartford Life received no portion of the advisory fees remitted to Neuberger by plan customers who retained Neuberger's services**.**  *Id.* ¶ 27.

### 4.    Hartford Financial Services Group, Inc.

HFSG is a holding company, not an operating company, and is not a party to Hartford Life's contracts with Phones Plus or Neuberger.  *Id.* ¶ 28.  Hartford Life is an indirect subsidiary of HFSG, and the two are separate and distinct corporate entities.  *Id.* ¶ 29.  HFSG performed no functions or actions with respect to Phones Plus or the Plan, had no part in any of the activities at issue in this litigation, and has not directed or controlled any actions of Hartford Life that are at

issue in this litigation.  *Id.* ¶ 30.  HFSG also is not a party to any of the Hartford Life agreements

with the mutual fund complexes under which the Fees at issue in this litigation are paid.  *Id.* ¶ 31.

**Background and History of the Parties' Contractual Relationships**

     **1.**      **Hartford Life's Contract with Phones Plus**

Hartford Life and Phones Plus first came into contact through a broker in Wisconsin.  *Id.*

¶ 32.  After various negotiations (including Hartford Life's and the broker's agreement to waive

certain start-up and first-year fees and reduce the ongoing separate account fee under the annuity

contract), Hartford Life and Phones Plus on or about December 2, 2003 executed the contract,

which consists of two primary agreements:  the Group Annuity Contract ("GAC") and the

Administrative Services Agreement ("ASA").  *Id.* ¶ 34.  These agreements incorporate additional

documents, including the Plan Sponsor Submission Information (Part A) and Plan Information

(Part B).  *Id.* ¶ 35.  (The GAC, ASA, Part A and Part B will be referred to hereinafter,

collectively, as the "Contract.")

The GAC serves as a funding vehicle under which plan/participant contributions are

allocated according to the directions of the plan/participant for investment in either the fixed

income investment option or in specific mutual funds, through separate accounts that Hartford

Life utilizes to allocate the investments to the underlying mutual funds in accordance with the

plan/participant-directed allocations.  *Id.* ¶ 38.

The Contract also includes the ASA, pursuant to which Hartford Life performs specified

non-discretionary, administrative services in connection with the accounting, distribution, and

reporting of contributions and benefits under the GAC.  *Id.* ¶ 41.  The ASA states in part:

> Hartford Life shall perform its obligations hereunder as agent for
> the Plan Sponsor and only in accordance with instructions from
> those persons authorized to act on behalf of the Plan Sponsor as
> specified to Hartford Life in writing.  The parties acknowledge that

> the Plan Sponsor has exclusive responsibility for the selection and assessment of investment alternatives under the Plan.
>
> The Plan Sponsor agrees and acknowledges that Hartford Life's duties and responsibilities are exclusively non-discretionary and ministerial and that no fiduciary responsibility is hereby conferred upon or assumed by Hartford Life under this Agreement.  The Plan Sponsor hereby acknowledges that Hartford Life does not, pursuant to this Agreement or otherwise, agree to provide tax, legal, or investment advice.

*Id.* ¶¶ 43-44.

### 2.      **Phones Plus's Retention of Neuberger's Advisory Services**

Phones Plus elected to retain Neuberger "to provide advisory services to help with the selection and monitoring of the investment choices" to be offered to Plan participants from Hartford Life's menu of funds.  *Id.* ¶ 45.  Having elected to retain Neuberger's advisory services, Phones Plus then entered into a separate contract directly with Neuberger to which Hartford Life is not a party.  *Id.* ¶ 46.

### 3.      **Phones Plus's Initial Selection of Investment Options**

Hartford Life provided a menu of investment options to Phones Plus prior to entering into the Contract.  *Id.* ¶¶ 48-49.  The Contract Specification Page and Separate Account Riders identify the investment options initially selected from the menu by Phones Plus based on the Neuberger recommendations.  *Id.* ¶ 50.  As the parties expressly acknowledged and agreed, Hartford Life played no role in Phones Plus's selection of the thirteen funds initially chosen for inclusion in the Plan (out of more than seventy-five funds available on the "menu").  *Id.* ¶ 51. Indeed, Hartford Life provided no investment advice of any kind at any time to Phones Plus.  *Id.* ¶ 52.

### 4.   Phones Plus's Changes to Investment Options

Hartford Life has never initiated, recommended, proposed, or directed any changes to the investment options selected by Phones Plus.  *Id.* ¶ 53.  On two occasions from plan inception to the present, Phones Plus *has directed Hartford Life* (at Neuberger's written recommendation) to carry out changes to the investment options offered under the Plan.  *Id.* ¶¶ 54-55.  Hartford Life had no involvement whatsoever in recommending, suggesting, or initiating the two changes which Phones Plus directed Hartford Life to execute.  *Id.* ¶ 56.

### 5.   Hartford Life's Disclosure and Phones Plus's Acknowledgment of Fees Received From Underlying Funds

Phones Plus was explicitly made aware of, acknowledged in writing, and agreed to Hartford Life's receipt and retention of Fees from underlying funds, *before* it ever entered into a contract with Hartford Life, and subsequently during the course of the contractual relationship. *Id.* ¶¶ 57, 61.  The Contract did not provide that Hartford Life would remit such Fees, or any portion thereof, to Phones Plus.  *Id.* ¶ 62.

## <u>STANDARD OF REVIEW</u>

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  *See also SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 338 (2d Cir. 2004).  The burden lies on the moving party to establish that there are no genuine issues and that it is entitled to judgment.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  With respect to issues as to which the nonmovant would bear the burden of proof at trial, the moving party can satisfy its burden in one of two ways:  (1) if it presents affirmative evidence negating an essential element of the nonmoving party's claim; or (2) if it

10

can point to the failure of proof concerning an essential element of the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (moving party may satisfy its burden "by 'showing' -- that is pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case") (citations omitted).  If the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  *Celotex*, 477 U.S. at 323.

"The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, *or defeat the motion through 'mere speculation or conjecture*.'"  *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (quoting *Borthwick v. First Georgetown Sec., Inc.*, 892 F.2d 178, 181 (2d Cir. 1989)) (other citations omitted) (emphasis added).  *See also Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995) (party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment") (citation omitted).  Rather, "the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried" in order to avoid summary judgment.  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted).  Additionally, the nonmoving party may not rest on the "mere allegations or denials" contained in its pleadings.  *See id.* at 532-33 (citing Fed. R. Civ. P. 56(e)) (further holding that party may not rely on conclusory statements or on argument that affidavits in support of motion for summary judgment are not credible).

**ARGUMENT**

I. **HARTFORD LIFE (AND DERIVATIVELY, HFSG) DID NOT VIOLATE ERISA SECTIONS 404(a) OR 406(b) AND THEREFORE HARTFORD LIFE AND HFSG ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTS I AND II AS WELL AS ON THE CO-FIDUCIARY CLAIM UNDER COUNT III**

This lawsuit attacks an accepted, legally recognized practice within the retirement services industry that ultimately (and ironically, in view of Plaintiff's claims in this lawsuit) benefits plans and plan participants with lower cost products and services. In addition to ignoring the fact that it was on notice of the practice prior to contracting with Hartford Life, and that the practice benefits the Plan and its participants to whom Plaintiff has a fiduciary obligation to protect, Phones Plus faces an insurmountable legal obstacle to proving its case. Plaintiff's ERISA claims require Plaintiff to establish that Hartford Life was a fiduciary to the Plan with respect to its receipt and retention of the Fees. As a matter of unassailable fact and law, Plaintiff simply cannot make this showing. With respect to the Phones Plus Plan, Hartford Life has *never* exercised discretionary authority or control over the management or disposition of plan assets, has *never* rendered investment advice, and has *never* otherwise assumed any fiduciary responsibilities under ERISA. As a service provider to 401(k) plans generally, Hartford Life has always acted (and has been acknowledged as acting) as a non-fiduciary. As discussed below, Plaintiff's erroneous arguments as to fiduciary status must be rejected.

A. <u>Only ERISA fiduciaries may be liable for violations of Sections 404(a) or 406(b), and the undisputed facts demonstrate that Hartford Life (and, derivatively, HFSG) is not an ERISA fiduciary to the Phones Plus Plan.</u>

As the United States Supreme Court has observed:

> In every case charging breach of ERISA fiduciary duty, . . . the threshold question is not whether the actions of some person employed to provides services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).  On the indisputable record before the Court, Phones Plus cannot make this threshold showing with respect to Hartford Life's receipt and retention of the Fees at issue.

Phones Plus brings this action under Sections 404, 405 and 406 of ERISA.[4]  These sections describe, respectively, the duties of ERISA fiduciaries and co-fiduciaries and certain types of transactions in which ERISA fiduciaries are prohibited from engaging.  *See generally* ERISA §§ 404, 405 and 406, 29 U.S.C. §§ 1104, 1105 and 1106.  Liability under these sections attaches <u>only</u> to ERISA fiduciaries.  *See* ERISA § 404, 29 U.S.C. § 1104(a)(1) ("a *fiduciary* shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries") (emphasis added); ERISA § 405, 29 U.S.C. § 1105 ("a *fiduciary* with respect to a plan shall be liable for a breach of fiduciary responsibility of another *fiduciary*") (emphasis added); ERISA § 406, 29 U.S.C. § 1106 ("a *fiduciary* with respect to a plan shall not cause the plan to engage in [certain transactions]") (emphasis added).

A party can become an ERISA fiduciary in one of two basic ways.  First, the party can be named as a fiduciary in the plan documents.  *See* ERISA § 402(a), 29 U.S.C. § 1102(a).  If a party is not a "named" fiduciary, a party can nevertheless be deemed a fiduciary in certain contexts by virtue of the functions it performs on behalf of a plan.  *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  As discussed below, the undisputed facts confirm that Hartford Life is

---

[4] While Counts I and II of the Complaint do not (and could not) make any allegations of actionable conduct specific to HFSG, in Count III Phones Plus alleges that HFSG, a holding company and the indirect parent of Hartford Life, is "jointly and severally" liable with Hartford Life "in exactly the same manner and respect as Hartford Life" under ERISA Sections 404 and 406, or as a co-fiduciary under ERISA Section 405, because HFSG allegedly "controlled and directed Hartford Life in engaging in the above conduct."  *See* Am. Compl. ¶¶ 70-71.  In section III of the Argument, *infra*, Hartford will address Plaintiff's baseless allegations against HFSG in the context of Count III.  However, to the extent Plaintiff asserts that HFSG is jointly or derivatively liable with Hartford Life under Counts I and II, Hartford requests that summary judgment be entered in HFSG's favor on Counts I and II as well, based on Hartford Life's lack of liability under ERISA Sections 404 and 406 as set forth herein.

not a fiduciary to the Plan -- named or otherwise -- with respect to the services it provides under

its Contract with Phones Plus.  Therefore, Plaintiff's causes of action under Count I, Count II,

and its co-fiduciary claim under Count III fail as a matter of law.[5]

**1.    Hartford Life is not a named fiduciary**.

As an initial matter, Hartford Life is not a named fiduciary to the Plan.  The relevant plan

documents generally identify the "named" plan fiduciaries.  *See* ERISA § 402(a), 29 U.S.C. §

1102(a).  Such "named" fiduciaries may include the plan sponsor, plan administrator, asset

trustee, or investment manager.  *Id.*  Here, Phones Plus is a named fiduciary.  *See* ASA [Exhibit

5 to Affidavit of Todd Thompson, Exhibit A to Rule 56(a)1 Statement], Section 1.0 ("It is hereby

represented by the Plan Sponsor [defined in Section 2.1 of the ASA as "the Employer and its

designated representative, including the Plan Administrator"] that the Plan Sponsor is the Named

Fiduciary of the Plan with authority to act for the Plan and to contract for services on behalf of

the Plan.").  The parties' Contract explicitly acknowledges that Hartford Life is not assuming any

fiduciary responsibility by virtue of the parties' agreement, and Phones Plus does not allege in

the Complaint that Hartford Life or HFSG are named fiduciaries.  *See, e.g., id.*, Section 16.1

("The Plan Sponsor agrees and acknowledges that Hartford Life's duties and responsibilities are

exclusively non-discretionary and ministerial and that no fiduciary responsibility is hereby

conferred upon or assumed by Hartford Life under this Agreement").[6]

---

[5]  Plaintiff's "alternative" claim under Count III for non-fiduciary liability will be addressed in Section II, *infra*.

[6]      In addition, Section 2.1 of the ASA (definition of "Plan Administrator") states in pertinent part: "It is expressly understood and agreed that Hartford Life is not the Plan Administrator and does not become responsible as Plan Administrator by performing any of the services under this Agreement. Rather, Hartford Life performs such services under the direction of the Plan Administrator and its designated representative."  *See* ASA, [Exhibit 5 to Affidavit of Todd Thompson, Exhibit A to 56(a)1 Statement] Section 2.1.

**2.      Hartford Life did not *exercise any discretion, authority or control* that would cause it to become a fiduciary under ERISA.**

Given that Hartford Life is not a named fiduciary of the Plan, and given the parties'

express contractual acknowledgments that Hartford Life was not assuming any fiduciary role or

responsibility on behalf of the Plan, the only basis upon which Phones Plus can seek to bestow

fiduciary status on Hartford Life is to establish that it nevertheless functioned as a fiduciary in

connection with its receipt and retention of the Fees from the fund companies.  Based on the

undisputed material facts at bar, Phones Plus cannot do so.

ERISA provides:

> a person is a fiduciary with respect to a plan to the extent (i) he
> exercises any discretionary authority or discretionary control
> respecting management of such plan or exercises any authority or
> control respecting management or disposition of its assets, (ii) he
> renders investment advice for a fee or other compensation, direct
> or indirect, with respect to any moneys or other property of such
> plan, or has any authority or responsibility to do so, or (iii) he has
> any discretionary authority or discretionary responsibility in the
> administration of such plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  *See also Coleman v. Nationwide Life Ins. Co*., 969

F.2d 54, 61 (4th Cir. 1992) ("[T]he inclusion of the phrase 'to the extent' in § 1002(21)(A)

means that a party is a fiduciary only as to the activities which bring the person within the

definition. The statutory language plainly indicates that the fiduciary function is not an

indivisible one. In other words, a court must ask whether a person is a fiduciary with respect to

the particular activity at issue.") (citations omitted) *cert. denied,* 506 U.S. 1081 (1993).

Plaintiff's Complaint conclusorily alleges a number of amorphous facts and theories in an

attempt to shoehorn Hartford Life's activities as a service provider into the definitions of

"fiduciary" set forth in ERISA § 3(21)(A).[7]  However, as set forth below, the undisputed facts

and applicable legal authorities demonstrate that Hartford Life never performed any service

which would bring it within the purview of ERISA's definitions of functional fiduciary status,

particularly with respect to the Fees.  As such, each of Plaintiff's several "fiduciary" theories

fails.

> **a.   Hartford Life did not "exercise discretion" as to the Phones Plus Plan when it assembled its menu of funds prior to having any relationship with the Plan.**

Hartford Life could not, as a matter of fact, law and logic, have had or exercised any

discretionary authority or control over the assets or administration of the Phones Plus Plan, or

rendered investment advice to the Plan, by assembling a menu of funds for its entire retirement

product platform prior to entering into a relationship with Phones Plus.  At the time it assembled

the generic menu of more than seventy-five investment options from which Phones Plus later

made a selection of roughly a dozen mutual funds to offer to its participants, Hartford Life had

---

[7] Plaintiff does not appear to assert, nor can any colorable claim be made, that the administrative tasks Hartford Life performs under the ASA can be considered "discretionary" so as to come within the purview of ERISA § 3(21)(A)(iii).  Indeed, the DOL considers these duties as "purely ministerial in nature."  *See* 29 C.F.R. § 2509.75-8 (deeming the following tasks non-discretionary: "(1) Application of rules determining eligibility for participation or benefits; (2) Calculation of services and compensation credits for benefits; (3) Preparation of employee communications material; (4) Maintenance of participants' service and employment records; (5) Preparation of reports required by government agencies; (6) Calculation of benefits; (7) Orientation of new participants and advising participants of their rights and options under the plan; (8) Collection of contributions and application of contributions as provided in the plan; (9) Preparation of reports concerning participants' benefits; (10) Processing of claims; and (11) Making recommendations to others for decisions with respect to plan administration.").  *See also Geller v. County Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir. 1996) ("A person performing these functions [listed in 29 C.F.R. § 2509.75-8] is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan."); *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 18 (1st Cir. 1998) ("the mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient to confer fiduciary status") (citations omitted).  *Cf. generally*, ASA (listing Hartford Life's duties pertaining to the establishment of individual accounts for participants, collecting and allocating contributions, calculating and payment of benefits, processing loans, preparing individual participant reports, preparing Plan Sponsor reports, plan document filing and preparation, enrollment services, compliance testing services, preparation of IRS Form 5500, and records management).

no relationship, contractual or otherwise, with Phones Plus, the Plan, or any assets of the Plan. L.R. 56(a)1 Statement ¶¶ 49-50.  Necessarily, then, Hartford Life thus had no discretion or influence over any matter relating to the Plan at this point in time.  Moreover, Phones Plus was free to opt not to purchase the product and thus not to enter into a group annuity contract with Hartford Life if it did not like the funds listed on the menu (or for any other reason).  In sum, Hartford Life cannot be a fiduciary to the Plan based on Hartford Life's pre-contract activity (that is, its activity prior to its contract with Phones Plus) in assembling the menu for its retirement product platform and providing such menu to a prospective customer.  *See, e.g., Pegram v. Herdrich*, 530 U.S. 211, 227 (2000) (holding that, even *if* a subsequent fiduciary relationship arises by virtue of a contract between an ERISA plan and a service provider, there can be no fiduciary responsibility or liability attributed to the service provider for acts preceding the parties' contract) (citing 29 U.S.C. § 1109(b)); *see also F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987) ("When a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with him.  Such a person is not an ERISA fiduciary. . . .") (citation omitted); *Flanigan v. General Elec. Co.*, 93 F. Supp. 2d 236, 252 (D. Conn. 2000) (quoting *F.H. Krear* and holding that the mere negotiation of an agreement does not confer fiduciary status) *aff'd,* 242 F.3d 78, *cert. denied,* 534 U.S. 1065 (2001); *Sirna v. Prudential Sec., Inc.*, 964 F. Supp. 147, 151 (S.D.N.Y. 1997) (brokerage firm was not acting as a fiduciary at the time the plan opened an account, because the parties were strangers, and the brokerage firm had no control over the plan or its assets) (citation omitted).

Thus, Hartford Life cannot, as a matter of law, be liable as a fiduciary to Phones Plus in connection with the assembly of the menu of funds offered, or for any other conduct which occurred prior to any relationship between the parties.

**b.      Hartford Life did not "exercise discretion" and had no role in Phones Plus's selection of investment options from the menu and did not otherwise provide "investment advice" in connection with such selection.**

Plaintiff's assertion that Hartford Life is a fiduciary due to its "provision of investment advice for a fee or other compensation with respect to the monies or other property of the Plans" (Am. Compl. ¶ 56) is plainly contradicted by the undisputed facts.  As the parties expressly confirmed in their Contract, Hartford Life was to play no advisory role in Phones Plus's selection of funds for inclusion in its Plan, and it goes without saying that the Contract contains no provision for a fee or other compensation to Hartford Life in return for any investment advisory services.  *See* L.R. 56(a)1 Statement ¶¶ 43-44 (*quoting* ASA, General Provisions, § 16.1 ("The Plan Sponsor hereby acknowledges that Hartford Life does not, pursuant to this Agreement or otherwise, agree to provide tax, legal, or investment advice."); § 16.2 ("The parties acknowledge that the *Plan Sponsor has exclusive responsibility for the selection and assessment of investment alternatives under the Plan.*") (emphasis added)).[8]  Moreover, Hartford Life did not, in fact, provide any advice or recommendations regarding Phones Plus's investment option selections from the menu.  *See* L.R. 56(a)1 Statement ¶¶ 51-52.

---

[8] *See also* Phones Plus-Neuberger Agreement [Exhibit 6 to Affidavit of Todd Thompson, Exhibit A to Rule 56(a)1 Statement], § 1.2 ("Promptly following the completion of the Demographic Inquiry and receipt by Neuberger of the Demographic Information, Neuberger shall select *for the Client* [Phones Plus] . . . the Fund Group that is most appropriate for the Plan and its participants.") (emphasis added); Hartford–Neuberger Agreement [Exhibit A to Affidavit of James Davey, Exhibit C to L.R. 56(a)1 Statement], §§ 1.4, 1.6 (when retained by a Plan Sponsor pursuant to a separate advisory agreement between Neuberger and that sponsor, "Neuberger shall . . . make a recommendation to the Plan Sponsor as to which 401(a) Fund/Category Match is most appropriate for such plan"; "Neuberger shall have sole authority, control and responsibility for any and all . . . recommendations and advice provided to Plan Sponsors. . . . ").

Rather than providing "advice" regarding the initial selections for the Plan (or any later changes to those selections – *see infra* Section I.A.2.c), Hartford Life merely followed Plaintiff's directives, as it was obligated to do under the Contract.  L.R. 56(a)1 Statement ¶¶ 53-56. Therefore, Hartford Life cannot be deemed an "investment advice" fiduciary relative to the selection or modification of the investment options Phones Plus offered to Plan participants.  *See, e.g., Farm King Supply, Inc. Integrated Profit Sharing Plan and Trust v. Edward D. Jones & Co.*, 884 F.2d 288, 293 (7th Cir. 1989) (defendant not acting as fiduciary by rendering investment advice where "[t]he only 'agreement' between the parties was that the trustees would listen to [defendant broker's] sales pitch and if the trustees liked the pitch, the Plan would purchase from among the suggested investments, the very cornerstone of a typical broker-client relationship").  *Cf. American Fed. of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S.*, 841 F.2d 658, 664 (5th Cir. 1988) (party not a fiduciary under ERISA where purported "investment advice" was not given in exchange for a fee).

> **c.** **Hartford Life did not "exercise discretion, authority or control" in connection with the addition, deletion or substitution of investment options selected by Phones Plus for the Plan.**

Cutting to the core of this case, to qualify as an ERISA fiduciary under Section 3(21)(A)(i), a party must do more than merely *possess* discretionary authority or control over the plan's management or assets.  In order to be charged with fiduciary responsibility, a party must *exercise* such discretionary authority or control.  *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (a party is a plan fiduciary "to the extent . . . he *exercises* any discretionary authority or discretionary control respecting management of such plan or *exercises* any authority or control respecting management or disposition of its assets") (emphasis added).  It is undisputed, and ultimately dispositive of Plaintiff's Section 404, 405 and 406 claims in this case,

that Hartford Life did *not* exercise such discretionary authority or control with respect to any changes made to the investment options that Phones Plus elected to offer to participants under the Plan.

In *LoPresti v. Terwilliger,* 126 F.3d 34 (2d Cir. 1997), the Second Circuit ruled that a business owner with check-writing authority over plan assets was not a fiduciary because he never exercised such authority.  In that case, the court separately analyzed the fiduciary status of both Donald Terwilliger and John Terwilliger, two brothers who were the sole shareholders of a company that funded its employees' benefit and pension plans by deducting a sum from the paychecks of the employees, placing that sum in its general assets, and then drawing funds from those assets to finance the plans.  *Id.* at 37-38.  The company subsequently used the employees' contributions to pay off other creditors after it suffered financial problems, leaving the plans without sufficient funds to cover benefits.  *Id.* at 38-39.  Analyzing Donald Terwilliger's status, the Court held that he qualified as an ERISA fiduciary because he signed checks on the company's account and had a role in deciding which creditors to pay and when to pay them, and thereby "*exercised* authority or control respecting disposition of plan assets" sufficient to qualify as an ERISA fiduciary.  *Id.* at 40 (internal citations, punctuation omitted; emphasis added).  In contrast, however, the Court held that John Terwilliger was *not* an ERISA fiduciary because, while he had the authority to write checks and thereby possessed authority over plan assets in the same manner as his brother Donald, there was no evidence in the record that he had actually exercised that authority.  *Id.* at 40-41.

Here, like John Terwilliger in *Lopresti*, Hartford Life never *exercised* any purported discretionary authority or control respecting the addition, deletion, or substitution of funds from among those initially selected by Phones Plus.  Rather, on the two occasions where changes were

20

made to Phones Plus's selections, it is undisputed that *Phones Plus directed Hartford Life* (at Neuberger's written recommendation) *to execute the changes*.  *See* L.R. 56(a)1 ¶¶ 53-56 & Exhibits 2, 7 and 8 to the Affidavit of Todd Thompson, attached as Exhibit A thereto.  Hartford Life has never initiated, suggested or directed any changes to the investment options selected by Phones Plus.  L.R. 56(a)1 ¶ 53.[9]

Because it is undisputed that Hartford Life never *exercised* any discretionary authority or discretionary control respecting management of the Plan and never *exercised* any authority or control respecting management or disposition of Plan assets by making any additions, substitutions or deletions to the funds selected by Phones Plus, Hartford Life does not qualify as a fiduciary under ERISA § 3(21)(A)(i) as a matter of law.  *See* ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(ii).  *See also Lopresti*, 126 F.3d at 40-41; *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc*. 793 F.2d 1456, 1459 - 60 (5th Cir. 1986) ("The phrase 'to the extent' indicates that a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control. . . . [T]he court should have instructed the jury that it could not infer that the defendants controlled the trustees' decision merely from the defendants' status. . . . [T]he district court should have instructed the jury that it could find the requisite control only if the defendants, either through the use of their positions or otherwise,

---

[9] Both Hartford and the Court were constrained on Hartford's Motion to Dismiss to accept as true Plaintiff's false allegation that Hartford Life had made unilateral, discretionary changes to the funds selected by Phones Plus and Plan participants (*see* Am. Compl. ¶ 30).  For purposes of this summary judgment motion, the analysis shifts to the actual, undisputed facts: namely, that Hartford Life made no such changes.  Thus the issue of whether Hartford Life conformed to the DOL's guidance under Advisory Opinion 97-16A regarding the sufficiency of any notice of proposed changes to a plan's fund selections (and the plan fiduciary's ability to reject any such changes) is no longer of consequence and has been rendered moot.  In other words, because Hartford Life in fact never even proposed a change to the investment options selected by Phones Plus for its Plan, Hartford Life's actual business practice in this respect does not implicate the parameters of service provider "discretion" assumed by the DOL for purposes of Advisory Opinion 97-16A.

caused the trustees to relinquish their independent discretion in deciding whether to sell the

Trust's stock and to follow instead the course prescribed by the defendants.") *cert. denied,* 479

U.S. 1034 (1987) (citation omitted).[10]

> **d.    Hartford Life is not otherwise a fiduciary by virtue of its receipt and retention of the Fees because the Fees are not plan assets.**

Presumably recognizing the likely futility of its arguments that Hartford Life is a

fiduciary based on either (i) its alleged exercise of discretionary authority or control over the

---

[10] Even leaving aside the fact that Hartford Life never exercised any discretionary authority and assuming, *arguendo*, that the mere *possession* of discretionary authority to add, delete or substitute funds would be sufficient to make Hartford Life a fiduciary (which, as a matter of law, it is not), Hartford Life did not possess such authority in any event.  A provision of the separate account rider to the Phones Plus GAC states:

> I.    FUND AVAILABILITY
>
> 1. The Hartford reserves the right, subject to compliance with the law, to offer additional Funds with differing investment objectives.  The Hartford also reserves the right, subject to compliance with the law, to substitute the shares of any other registered investment company for the shares of any Fund.  Substitution may occur if shares of the Funds become unavailable or due to changes in applicable law or interpretations of law.
>
> 2. A Fund may be discontinued if the underlying mutual fund is no longer offered or if The Hartford determines that the Fund is no longer commercially feasible and notifies the Contractholder in writing that the Fund will be discontinued.

*See* GAC [Exhibit 2 to the Affidavit of Todd Thompson, Exhibit A to L.R. 56(a)1 Statement], at Separate Account Rider, § I(1) & (2).

That Hartford Life's prescribed "right" to add, delete or substitute funds is necessarily limited to plan direction or approval or under *force majeure* circumstances (and, thus, does not constitute a reservation of any form of discretionary authority) is further confirmed by the ASA [Exhibit 5 to the Affidavit of Todd Thompson, Exhibit A to L.R. 56(a)1 Statement], *see* General Provisions, § 16.2 ("the Plan Sponsor has exclusive responsibility for the selection and assessment of investment alternatives under the Plan"), and by Hartford Life's agreement with Neuberger, *see* Hartford–Neuberger Agreement [Exhibit A to the Affidavit of James Davey, Exhibit C to L.R. 56(a)1 Statement], § 1.6 (noting that, to the extent any plan sponsor chose to retain Neuberger for its advisory services, Neuberger would "have sole authority, control, and responsibility for any and all investment research, analysis, recommendations and advice provided to Plan Sponsors through the Plan Advisory Services") (emphasis added).

investment options selected by Phones Plus or (ii) its alleged investment advice to Phones Plus regarding those options, Plaintiff also argues that the Fees are "plan assets" over which Hartford Life exercises discretionary authority and control, thus giving rise to fiduciary status.  *See* Am. Compl. ¶¶ 57-58.  Like the preceding arguments, Plaintiff's "plan asset" argument finds no support in the facts or law of this case.

(i)    The Fees are not plan assets under
well-established law and regulation.

Although ERISA does not explicitly define the term "plan assets," the language of the statute itself and the court decisions interpreting that statute indicate that the term encompasses only those assets in which a plan has a direct or beneficial ownership interest.  *See* ERISA § 3(21), 29 U.S.C. § 1002(21) ("A person is a fiduciary . . . to the extent (i) he exercises any discretionary authority or discretionary control respecting management of *such plan or . . . its assets*, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any *moneys or other property of such plan. . .*") (emphasis added).

The courts have consistently recognized that assets do not become "plan assets" merely because a plan has a disputed claim to them or because the manner in which the assets are handled might arguably affect the plan in some way.  *See e.g., Chapman v. Klemick,* 3 F.3d 1508, 1510 (11th Cir. 1993) ("a contractual 'claim' for reimbursement of . . . medical expenses . . . did not automatically convert the $25,000.00 settlement which Klemick disbursed into assets of the Trust Fund"), *cert. denied*, 510 U.S. 1165 (1994); *Useden v. Acker*, 947 F.2d 1563, 1574 (11th Cir. 1991) (under ERISA's definitional approach, the discretionary role needed to support fiduciary status must amount to more than "a theoretical contrivance" to hold a party whose business touches on the disposition of plan assets to be a fiduciary with respect to a plan), *cert. denied,* 508 U.S. 959 (1993); *Reichling v. Cont'l Bank*, 813 F. Supp. 197, 198-99 (E.D.N.Y.

23

1993) (defendant bank not a fiduciary where it unilaterally transferred funds from retirement trust's account to sheriff pursuant to execution order despite plaintiff trustee's claim to funds as ERISA plan assets based on trustee's original deposit of funds in bank and bank's failure to obtain trustee's consent to transfer) (citation omitted); *Hotel Employees & Rest. Employees Int'l Union Welfare Fund v. Gentner*, 815 F. Supp. 1354, 1358–59 (D. Nev. 1993) (attorney of plan participant against whom plan asserted claim to proceeds of third-party lawsuit as reimbursement for certain medical expenses previously paid by plan in connection with participant's auto accident was not a fiduciary because plan's claim did not transform third-party proceeds into a plan asset) (citation omitted) *aff'd,*  50 f.3d 719 (1995).

Moreover, the general assets of the mutual fund companies to which investments are directed are specifically excluded from the definition of plan assets under ERISA and the pertinent Department of Labor regulation.  *See* 29 U.S.C. § 1101(b)(1) ("In the case of a plan which invests in any security issued by an investment company registered under the Investment Company Act of 1940 . . . , the assets of such plan shall be deemed to include such security but shall not, solely by reason of such investment, be deemed to include any assets of such investment company."); 29 C.F.R. § 2510.3-101 ("when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity").

Because the Fees are not paid to Hartford Life by the plans, but are instead paid by mutual fund advisers or distributors, or from the underlying assets of the mutual funds themselves (L.R. 56(a)1 Statement ¶ 9), Plaintiff has no direct or beneficial ownership interest in the Fees, and the Fees thus cannot constitute plan assets.  *See, e.g., Chapman,* 3 F.3d at 1510;

*Useden*, 947 F.2d at 1574; *Reichling*, 813 F. Supp. at 198-99; *Gentner*, 815 F. Supp. at 1358–59.
*See also* 29 U.S.C. § 1101(b)(1); 29 C.F.R. § 2510.3-101.[11]

> (ii)    Hartford Life assumed no fiduciary or other
>         obligations to Phones Plus or the Plan with
>         respect to the Fees where Phones Plus, while
>         on notice of the Fees, did not contract with
>         Hartford Life for any right to them.

The weakness of Phones Plus's attempted characterization of the Fees as plan assets is underlined by the fact that, prior to contracting with Hartford Life, Phones Plus was put on notice of the Fees and made no attempt to negotiate into the Contract any right to such Fees.  L.R. 56(a)1 Statement ¶¶ 57, 59, 61-63.  If Phones Plus, as a fiduciary to the Plan, genuinely viewed the Fees as plan assets, why did it not seek to ensure under the Contract that the Fees would go to the Plan?  Having bargained for and agreed to the terms of a contract, Phones Plus cannot now twist and convolute the meanings of "fiduciary" and "plan assets" under ERISA in an effort to evade its obligation to comply with those contractual terms.  Put another way, Hartford Life did not assume or breach any fiduciary or other obligations to Phones Plus or the Plan with respect to the Fees where Phones Plus, although on notice of the Fees, did not contract with Hartford Life for any right to them.

An argument virtually identical to Plaintiff's was recently rejected by the Seventh Circuit Court of Appeals in *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463 (7th Cir. 2007).  In that case, the plaintiff alleged that the defendant service provider, Caremark, Inc. (which managed prescription drug benefits in connection with the plaintiff's union-sponsored prescription drug coverage plan) improperly retained rebates it obtained from

---

[11] To the extent the mutual funds pay the Fees directly to Hartford Life, ERISA statutory law and regulation confirm that the Fees cannot be plan assets.  To the extent the Fees are paid by mutual fund investment advisers, distributors, or other affiliated (or unaffiliated) service providers, the Fees are yet a further step removed from the Plan's (or Plan participants') contributions or investments and thus, necessarily, cannot be plan assets.

drug makers that supplied prescription medications under the plan.  These rebates enabled

Caremark to provide the drugs to the plan at the contractually negotiated rates while allowing

Caremark to "pocket the difference" between those rates and the rebated rates it was able to

negotiate with the drug makers.  *Id.* at 473.  The plaintiff contended that the contractual pricing

provisions "gave Caremark control over Carpenters' assets," namely, over the portion of the

rebates paid by drug makers that "belongs to Carpenters."  *Id*. at 469.  The plan alleged that

Caremark therefore had a fiduciary duty to pass through the cost savings to the plan.  *Id.* at 466-

67.  The Seventh Circuit rejected the plaintiff's theory, holding that "[t]he contract contained no

mechanism for a pass-through of any additional savings Caremark managed to negotiate . . . .

Given that this scheme was the very deal for which Carpenters bargained at arms' length,

Caremark owed no fiduciary duty in this regard."  *Id.* at 473 (citations omitted).

Likewise, in *Seaway Food Town, Inc. v. Medical Mut. of Ohio*, 347 F.3d 610 (6th Cir.

2003), the Sixth Circuit Court of Appeals rejected claims of fiduciary status premised on an

insurer's retention of medical provider discounts as provided for in the parties' contract.  *Id.* at

619.  The court found that the contract permitted the insurer to retain such funds, and,

accordingly, the insurer's retention of those funds "did not give rise to ERISA fiduciary status."

*Id.* (citations omitted).

Similarly, in *Schulist v. Blue Cross of Iowa,* 553 F. Supp. 248 (N.D. Ill. 1982), the

trustees of a health plan asserted that BC/BS, a service provider for the plan, breached fiduciary

duties under ERISA Sections 404 and 406 by refusing to return a surplus of policyholder

reserves at the end of two contract years.  But the BC/BS contract did not include a provision for

the return of premium surplus, prompting the court to reject the trustees' claims and to hold that

"the retention of premiums paid under a freely negotiated insurance contract does not constitute a

violation of . . . fiduciary duties under ERISA." *Id.* at 253.   The Seventh Circuit Court of

Appeals affirmed, finding that there was no exercise of discretionary authority, and consequently

no breach of fiduciary duty, with respect to the negotiation of and compliance with the terms of

the contract with the plan. *Schulist v. Blue Cross of Iowa,* 717 F.2d 1127, 1131-32 (7th Cir.

1983) ("As to the terms and conditions upon which it became a provider . . . BC/BS entered into

an arm's length bargain presumably governed by competition in the marketplace.   Ordinarily

BC/BS would not be a fiduciary with respect to these matters."). *See also Moeckel v. Caremark,*

*Inc.*, No. 3:04-0633, 2007 WL 3377831, at *20 (M.D. Tenn. Nov. 13, 2007) ("Caremark did not

pass through the rebates that it received from drug manufacturers.   Neither was it required to do

so under the PBM Agreement.   As such, the rebates that Caremark received from drug

manufacturers were not plan assets; they were Caremark's assets.") (citing *Carpenters*); *Fechter*

*v. Connecticut Gen. Life Ins. Co.,* 800 F. Supp. 182, 199-200 (E.D. Pa. 1992) ("Courts have

consistently and repeatedly held that if a specific contractual term is bargained for at arm's

length, adherence to that term, at a pre-determined price, is not a breach of fiduciary duty.")

(citations omitted).

   Here, as in the cases discussed above, the Contract specifically contemplates that

Hartford Life will receive and retain the Fees, which were disclosed to and acknowledged by

Phones Plus in connection with its execution of the Contract.   L.R. 56(a)1 Statement ¶¶ 57-63.

Nothing in the Contract requires Hartford Life to pass any portion of the Fees through to the Plan

(*id.* ¶ 62), although, in fact, the Fees offset the costs and effectively reduce the overall charges to

plans for the services Hartford Life provides.   *Id.* ¶¶ 12-17.   By retaining the Fees, Hartford Life

is simply adhering to the terms of the Contract and, thus, is neither acting as a fiduciary nor

breaching any alleged fiduciary duty.  As such, Plaintiff's claim to the Fees as "plan assets" fails under prevailing law.

> (iii)    <u>The Fees are not plan assets even under the novel test created in *Haddock v. Nationwide*, which, in any event, should not be followed</u>.

Ignoring the persuasive caselaw authority discussed above, Plaintiff tries to mold its claim of fiduciary liability into the novel definition of "plan assets" put forward in *Haddock v. Nationwide Financial Services, Inc.,* 419 F. Supp. 2d 156, 170-71 (D. Conn. 2006).  Under the *Haddock* court's unprecedented "functional" test, " 'plan assets' include items a defendant holds or receives: (1) as a result of its status as a fiduciary or its exercise of fiduciary discretion or authority, and (2) at the expense of plan participants or beneficiaries."  *Id.* at 170.  Tracking *Haddock*'s language, the Complaint alleges that "[t]he revenue sharing payments . . . constitute plan assets" because (a) "The Hartford received the payments as a result of its fiduciary status or function"; (b) "the mutual funds make payments to the Hartford at the expense of the Plans and participants"; and/or (c) "revenue-sharing payments effectively constitute the proceeds of the Plans' and participants' investments."  Am. Compl. ¶ 57.  Unfortunately for Plaintiff, the so-called "functional approach" to plan assets posited in *Haddock* and reflected in the Complaint is neither grounded in the prevailing law nor of any help to Phones Plus under the factual record before the Court.  Thus, each of Plaintiff's claims premised on this *Haddock* language fails as a matter of law.

As an initial matter, the *Haddock* decision suggests a test for defining plan assets which is without statutory authority or precedent under ERISA caselaw.  The *Haddock* court's approach ignores the consistent line of authorities holding that an asset does not become a "plan asset" merely because a plan has a disputed claim to it or because the manner in which the asset is handled by a service provider might adversely affect the plan's interests in some way; rather,

to be a "plan asset," the plan must have a traditionally recognized ownership interest in the asset at issue. *See supra*, pp. 23 - 25.

As a result, while respectfully suggesting that the *Haddock* court's approach should not be adopted by this Court, Hartford asserts that, even under the *Haddock* approach, and consistent with the abundance of authorities discussed above, Hartford Life is not a fiduciary to the Plan in any capacity and therefore would not satisfy the first step in the *Haddock* court's functional test. It exercised no fiduciary control or discretion and was not a fiduciary in contracting for its receipt of the Fees from the funds or in negotiating and entering into a contract with Phones Plus pursuant to which it had no obligation to transfer the Fees to the Phones Plus Plan.[12]

---

[12] Hartford Life cannot be deemed a fiduciary of the Plan with respect to its entry into agreements with the mutual fund families reflected on the menu of funds offered to Phones Plus for its selection. First, Hartford Life's entry into these arrangements necessarily occurred prior to contracting with Phones Plus. L.R. 56(a)1 Statement ¶¶ 18, 49. Moreover, such arrangements are incidental to the general conduct of Hartford Life's business and, without question, are *not* entered into on behalf of any specific plan or plan sponsor customer. *Id.* ¶ 18. .

Similar claims of fiduciary status were recently advanced and rejected in *Deluca v. Blue Cross Blue Shield of Mich.*, No. 06-12552, 2007 WL 4591914, at *2 (E.D. Mich. Dec. 28, 2007), where the plaintiff, a plan participant in Flagstar Bank's health insurance plan, sued Blue Cross/Blue Shield of Michigan ("BCBSM") because BCBSM unilaterally negotiated higher rates with medical service providers for its traditional and PPO products (of which plaintiff was a participant) in exchange for lower rates for its preferred Blue Care Network ("BCN") plan. In rejecting plaintiff's claims, the court noted:

> While BCBSM exercises discretionary authority in its administration of the Flagstar Plan, including when it pays Michigan hospitals for services provided to plan enrollees, it was not engaged in those functions when it negotiated rate contracts with those hospitals. The undisputed evidence established that *BCBSM negotiates hospital reimbursement rates generally for its three health care products (traditional, PPO, and BCN), not for any specific ERISA plan*. The undisputed evidence further established that nothing in the agreement between BCBSM and the Flagstar Plan charges BCBSM with a duty to negotiate hospital rates for the plan or to act in the plan's interests when negotiating hospital rates.

*Id.* at *2 (citation omitted; emphasis added). *See also Deluca v. Blue Cross Blue Shield of Mich.*, No. 06-12552, 2007 WL 3203131, at *6 (E.D. Mich. Oct. 31, 2007) ("when BCBSM negotiates hospital reimbursement rates . . . [it] does not negotiate rates *for any specific ERISA plan*") (emphasis added). Moreover, violations of ERISA Section 406(b)'s prohibited transaction provisions are premised on a plan fiduciary improperly "deal[ing] with *assets of the plan*" or engaging in certain types of transactions

Accordingly, the first prong of the two-part *Haddock* test cannot be met because Hartford Life neither received nor held the Fees in a fiduciary capacity.[13]

In addition,  Plaintiff's allegation that the Fees are plan assets because they are paid "at the expense of the Plan and participants" is without merit and simply re-casts the same arguments which have been consistently rejected in the cases cited under subsection (ii) above. Moreover, it is undisputed that the Fees are not "paid at the expense of the Plan and its participants."  First, the Fees offset and reduce the costs to the Plan and its participants of Hartford Life's services.  L.R. 56(a)1 Statement ¶¶ 8, 12-17.  Thus, Hartford Life's receipt of fees redounded to the benefit of the Plan and its participants.  Second, the Plan, prior to contracting with Hartford Life, was made amply aware of exactly what the Plan's and participants' various expenses would be.  *Id.* ¶¶ 57-64; [Part A pp. 2,5,12, Exhibit 3 to the Affidavit of Todd Thompson, Exhibit A to L.R. 56(a)1 Statement; GAC, Contract Expense Schedule, Separate Account Rider(s) at 2, Exhibit 2 to Affidavit of Todd Thompson; ASA, Exhibit A, Exhibit 5 to the Affidavit of Todd Thompson.]  Each of the fund-level expenses was disclosed in the proposal materials, and each of the expenses charged to the Plan for Hartford

---

"involving the *assets of the plan*."  *See* ERISA § 406(b)(1) & (3), 29 U.S.C. § 1106(b)(1) & (3) (emphasis added).  Under *DeLuca*, supporting Circuit authority (*see, e.g., Carpenters*, *supra*, 474 F.3d at 473), and the indisputable facts of this case, Phones Plus simply cannot prevail on an argument that Hartford Life was dealing or transacting in plan assets in connection with its entry into agreements with the mutual fund families.

[13] In this sense, *Haddock* is distinguishable procedurally and substantively, as in *Haddock* the Court held that summary judgment was inappropriate because there remained questions of fact as to whether Nationwide made discretionary substitutions or deletions to those funds actually selected by the plans.  "Nationwide's authority at this stage may be limited to deleting and substituting mutual funds that have already been approved by the Plans ( *i.e.,* the subset that the Plans have chosen) and specified in their agreements."  *Haddock*, 419 F. Supp. 2d at 161. "The Trustees have produced evidence that would permit a reasonable fact-finder to conclude that Nationwide is a fiduciary to the extent it *exercises* authority or control over the disposition of retirement contributions that are represented by the accumulation units (shares) in the variable accounts."  *Id.* at 165 (emphasis added).  Here, by contrast, the incontrovertible facts demonstrate that Hartford Life did not have, and indisputably did not exercise, any discretion or control by initiating or recommending any deletion or substitution from the set of funds Phones Plus selected for the Plan.  L.R. 56(a)1 Statement ¶¶ 53-56 .

Life's services was fully disclosed in the Contract and proposal materials. *Id.* Phones Plus does not and cannot allege that any expenses beyond those disclosed were charged.

Plaintiff was free to take or leave the proposed retirement product offered by Hartford Life, in which all fees were disclosed, and in which no charges beyond those disclosed were charged. L.R. 56(a)1 Statement ¶¶ 59, 61-64. It chose to enter into the Contract on those terms. *Id.* Further, Phones Plus was informed that it could obtain further information about the Fees from the mutual fund families if it wished to. *Id.* ¶ 57. The information would have been made available orally and in writing had it so requested. *Id.* Phones Plus did not avail itself of this opportunity prior to entering into the Contract. *Id.* ¶ 58.

In sum, like all of its other claims of purported fiduciary status, Plaintiff's amorphous claim that Hartford Life is somehow a fiduciary by virtue of its authority or control over "plan assets" fails even under the novel *Haddock* test, were the Court to follow it. Based on Plaintiff's inability to establish that Hartford Life acted as a fiduciary to the Plan with respect to the receipt and retention of the Fees, Hartford Life and HFSG are entitled to summary judgment on Counts I and II of the Complaint, and on Plaintiff's co-fiduciary claim under Count III.

> **B.     Phones Plus cannot establish that it sustained any out-of-pocket loss, or suffered any damages, and its Section 404(a) and 406(b) claims therefore fail as a matter of law on this ground as well.**

In addition to the fatal flaws in its liability theories, Phones Plus cannot demonstrate that the Plan sustained any loss as a result of Fees paid by mutual funds to Hartford Life. To prove damages in this context, Plaintiff would have to demonstrate, at a minimum, (1) that the Fees paid to Hartford Life by participating funds were somehow excessive; (2) that the funds would have been able to pay for those same services from different vendors at a lesser price; (3) that any benefit enjoyed by the funds of obtaining equivalent services at a lesser price than that

charged by Hartford Life would have redounded to the benefit of the Plan in the form of lower

fund-level expenses; (4) that Hartford Life would not have charged the Plan higher fees which

would have offset any fund-level expense savings; and (5) that Phones Plus could have bargained

for and obtained lower service charges.  Plaintiff has not even attempted to plead such a chain of

loss causation, nor could it conceivably point to any evidence to support the damages element of

its claims.[14]  For this separate and independent reason, Plaintiff's ERISA claims under Counts I,

II and III must be dismissed.

    As decisions in this District and Circuit confirm, the lack of evidence of loss causation

and damages is fatal to Plaintiff's breach of fiduciary duty claims under ERISA Section 404.  In

*Tardif v. Gen. Elec. Co*., No. 4:98-CV-1374, 2000 WL 33376644 (D. Conn. Sept. 30, 2000), the

Court observed:

> Despite the fact that neither Section 404(a)(1) nor Section 502(a)(3) [of ERISA]
> contains express language of causation, a plaintiff seeking to enforce the former
> via the latter must demonstrate that the alleged breach caused damages
> recoverable under Section 502(a)(3). . .  It is fundamental that proof of damages is
> part of a plaintiff's burden, including the burden to prove that the damages
> claimed to have been suffered were caused by the wrong claimed to have been
> committed.

*Id.* at *8 (citations omitted).  The absence of evidence of damage is also fatal to Plaintiff's

prohibited transaction claims under Section 406.  *See, e.g., Henry v. Champlain Enters., Inc.*, 468

---

[14] Moreover, Hartford Life's liability is contractually limited to "*direct* damages caused by the negligent acts or willful misconduct of Hartford Life and its affiliates, *provided that the Plan Sponsor notifies Hartford Life in writing of such acts within forty-five (45)* days following the end of the calendar quarter to which such acts were first reflected in reports made by Hartford Life to the Plan Sponsor or the Participants. . . ."  *See* ASA, §16.9 (emphasis added).  First, because Plaintiff cannot demonstrate even a hypothetical chain of damage causation to itself from Hartford Life's alleged conduct, it certainly cannot demonstrate the "direct" damages to which Hartford Life's liability is limited by the parties' agreement. Second, Hartford Life's liability is limited strictly to those damages arising from its negligent acts or willful misconduct about which it has been notified within forty-five days of discovery.  Despite its current allegation that Hartford Life has been improperly receiving and retaining the disclosed Fees since the inception of the Contract well over four years ago, Phones Plus never notified Hartford Life of any purported "negligent acts or willful misconduct" prior to the date upon which Hartford Life received notice of Plaintiff's lawsuit.  L.R. 56(a)1 Statement ¶ 66.

F. Supp. 2d 368, 373 (W.D.N.Y. 2007) (In considering ERISA § 406 prohibited transaction claim on remand, court noted that subject plan "suffered no damages from its purchase of the convertible preferred stock because the amount paid was less than the stock's value. Since all of the causes of action have damages as an essential element, and no damages were incurred, all claims must be dismissed.").

The Seventh Circuit recently addressed the issue of proof of damages under ERISA in *Nelson v. Hodowal*, 512 F.3d 347 (7th Cir. 2008). In *Nelson,* participants of a defined contribution supplemental retirement plan asserted that plan fiduciaries – company executives who, after a merger, divested themselves of company stock and left the company – wrongfully failed to disclose their divestiture of investments in which the participants also had invested funds through the plan. The court found that the plaintiffs failed to demonstrate that a disclosure of the divestitures would have materially affected the value of the participants' investments. On this basis, the court held that "a non-disclosure that may affect a person's choice about which securities to hold, but does not relate to the value of those securities, yields transaction causation but not loss causation. And without loss causation there is no liability." *Id* at 351 (citation omitted).

Here, Hartford Life had a contractual right to retain the Fees for itself, which Fees in any event are paid by the mutual funds or their affiliates, not Phones Plus. Phones Plus and/or the Plan paid only (1) the Contract-related fees to which Phones Plus had agreed and (2) the fully disclosed fund-level expenses for the investment options it selected. *Id.* ¶¶ 61, 64. Hartford Life never initiated any change to the investment options Phones Plus selected, so nothing Hartford Life did could have affected the value or cost of the investment options actually selected by

Phones Plus from the menu.  Thus, Plaintiff cannot demonstrate the necessary causal link between Hartford Life's purported conduct and the Plan's purported losses.

Moreover, Plaintiff's Section 404 and 406 claims fail for the additional reason that, to demonstrate loss causation, Plaintiff would necessarily have to ignore the most critical link in the chain:  Plaintiff's own decision to contract with Hartford Life, with knowledge of Hartford Life's receipt of the Fees.  This intervening cause breaks any alleged chain of causation between Hartford Life's purported conduct and any purported loss to the Plan.  *See Tardif, supra,* at *8 (ERISA plaintiff has burden of proving that damages claimed were caused by alleged wrong by ERISA fiduciary).  *Cf. National Market Share, Inc. v. Sterling Nat. Bank*, 392 F.3d 520, 526 (2d. Cir. 2004) (to support prima facie case in breach of contract action, damages must be directly traceable to breach, not remote or the result of intervening causes) (citations omitted).  In other words, but for Plaintiff's own acquiescence in Hartford Life's fee arrangements with the funds, as evidenced by its officer's (and Plan trustee's) signature below the fee disclosures, its claimed purported losses would not have occurred.  Because Plaintiff cannot demonstrate a direct causal link between Hartford Life's purported conduct and any conceivable loss to the Plan, Hartford is entitled to summary judgment on this additional basis.

## II.   HARTFORD LIFE AND HFSG ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S "ALTERNATIVE" CLAIM UNDER COUNT III FOR KNOWING PARTICIPATION IN A BREACH OF TRUST

"In the alternative," paragraph 72 within Count III of the Complaint alleges that, to the extent Hartford Life or HFSG "are not deemed fiduciaries or co-fiduciaries under ERISA, each . . . is liable . . . as non-fiduciaries that knowingly participated in a breach of trust."  Am. Compl. ¶ 72.  A non-fiduciary can be liable for knowing participation in a breach of trust under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a), if it "is a transferee of ill-gotten trust assets" where it

"knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of trust." *Carlson v. Principal Fin. Group,* 320 F.3d 301, 308 (2d Cir. 2003) (quoting *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 520 U.S. 238, 250 (2000)). To demonstrate a knowing breach of trust by a non-fiduciary, Plaintiff must therefore demonstrate that (1) the defendant received trust assets, and (2) the defendant "had actual or constructive knowledge of the circumstances that rendered [its] transaction unlawful." *Carlson,* 320 F.3d at 308.

As *Carlson* makes clear, only a recipient of plan (or "trust") assets can be liable for knowing participation in a breach of trust. *Carlson,* 320 F.3d at 308. As discussed above, however, the Fees Hartford Life receives from the mutual fund complexes, as a matter of fact and law, are not "plan assets." For this reason alone, Plaintiff's "knowing participation" claim fails as a matter of law.

The "knowing participation" claim likewise fails because there is no "unlawful" transaction upon which to predicate the claim. The Complaint alleges that Neuberger breached its fiduciary duties by, among other things, failing to advise the Plan of the existence of the Fees and by "knowingly permitting The Hartford's misconduct." Am. Compl. ¶¶ 27, 61. However, in this context, it is important to bear in mind that Plaintiff's alternative claim of participation by a non-fiduciary in a breach of trust is premised on Hartford Life (and/or HFSG) being a *non-fiduciary*. As such, Hartford Life's receipt and retention of the Fees could not have violated ERISA Sections 404 or 406 and therefore could not be characterized as "unlawful." Thus, Plaintiff's claim, by definition, fails the second prong of the *Carlson* test.

Even if Plaintiff could demonstrate that it was somehow misled by Neuberger, or was somehow damaged by an alleged breach of fiduciary duty by Neuberger (none of which Plaintiff

can actually demonstrate), Hartford Life (and/or HFSG) would still not be liable for "knowing

participation" in any breach because Plaintiff cannot under any circumstances demonstrate (1)

that Neuberger *committed* any breach of its fiduciary duty with respect to Hartford Life's receipt

and retention of the Fees (again, under the fundamental predicate of the claim that Hartford is

deemed *not* to be a fiduciary and therefore *not* to have violated ERISA Sections 404 or 406); or

(2) that Hartford had any involvement in what Neuberger may or may not have been doing or

saying to the Plan relative to monitoring Fees received by Hartford Life.  *See*  L.R. 56(a)1

Statement ¶ 25.

For all the foregoing reasons, Plaintiff's "knowing participation" claim fails as a matter

of law.

## III.    HFSG IS ALSO ENTITLED TO SUMMARY JUDGMENT ON COUNT III BECAUSE IT IS NOT A PARTY TO THE PHONES PLUS CONTRACT AND WAS NOT OTHERWISE INVOLVED, DIRECTLY OR INDIRECTLY, IN ANY OF THE ALLEGED CONDUCT OR TRANSACTIONS AT ISSUE

With respect to Hartford Life's indirect corporate parent, HFSG, Plaintiff's allegations

under Count III, paragraphs 70-71, appear to be limited to the cryptic assertion that HFSG is

liable as a fiduciary or a co-fiduciary, "in the same manner and to the same extent as is Hartford

Life," for Hartford Life's alleged violations of ERISA Sections 404 and 406.  The basis for

Plaintiff's claim appears to be that HFSG "controlled and directed Hartford Life in engaging in

the [alleged] conduct."  Am. Compl. ¶ 70.  However, the undisputed facts demonstrate, as

discussed at length above, that Hartford Life itself is not a fiduciary with respect to the Plan.

Also, as set forth below, Plaintiff can present no evidence to support its allegation that HFSG

"controlled and directed Hartford Life" with respect to the Plan, nor can Plaintiff offer any facts

that would support disregarding HFSG's or Hartford Life's existence as distinct corporate

entities.  Plaintiff's fiduciary and co-fiduciary claims against HFSG therefore fail as a matter of law for each of these reasons.

First, HFSG is *not* a party to the Contract, the Hartford-Neuberger Agreement, or any of the agreements with the mutual fund complexes relating to the Fees.  *See generally* Contract [Exhibits 2-5 to the Affidavit of Todd Thompson, Exhibit A to L.R. 56(a)1 Statement]; Hartford-Neuberger Agreement [Exhibit A to the Affidavit of James Davey, Exhibit C to L.R. 56(a)1 Statement].  L.R. 56(a)1 Statement ¶¶ 30-31.  Second, although Plaintiff alleges that Hartford Life is a wholly owned subsidiary of HFSG (Am. Compl.  ¶ 7),[15] this alone is an insufficient basis to create any liability on HFSG's part.  Third, Plaintiff cannot demonstrate any independent conduct or involvement by HFSG with respect to Phones Plus or the Plan.  Despite Plaintiff's misleading attempt to create the appearance that HFSG is somehow involved in this dispute by referring to Hartford Life and HFSG as "collectively, 'The Hartford,'" *see* Am. Compl. ¶ 10, such a pleading tactic does not (and cannot) change the facts that the two companies are separate and distinct entities and that HFSG, a holding company, had no involvement whatsoever with Phones Plus or the Plan and did not otherwise "control" or "direct" Hartford Life with respect to any of the conduct alleged in the Complaint.  *See*  L.R. 56(a)1 Statement ¶¶ 28, 30.

It is well-established that a corporate parent is not liable for its subsidiary's actions unless there is a sufficient reason to pierce the subsidiary's or parent company's corporate veil.  *See, e.g., Brooks v. Von Lenthe,* 207 Fed. Appx. 85 (2d Cir. 2006) (claim fails where "sole allegation" was that defendant "owned" a corporation that was a proper party to the action and there was no properly alleged basis for the court to "pierce the corporate veil").  Plaintiff has not suggested any facts to support piercing the corporate veil in this instance.  *See De Jesus v. Sears, Roebuck*

---

[15] As set forth above, HFSG is Hartford Life's indirect corporate parent. *See* Rule 7.1 Corporate Disclosure Statement (Docket No. 21).

*& Co.*, 87 F.3d 65, 69-70 (2d Cir. 1996) (to pierce corporate veil, plaintiff must make showing of "actual domination" of subsidiary by parent) (citation omitted) *cert. denied* 519 U.S. 1007; *In re Smithkline Beecham Clinical Labs., Inc.*, 108 F. Supp. 2d 84, 103-04 (D. Conn. 1999) ("Mere labels *do not*, without more, confer fiduciary status" under ERISA; rather, to state a claim, plaintiffs must "provid[e] specific facts supporting their allegations of fiduciary status.") (emphasis added).  Since Plaintiff cannot demonstrate any element of its hollow "direct" claims against HFSG or any basis upon which to pierce the corporate veil, HFSG is entitled to judgment as a matter of law.

## **CONCLUSION**

Based on the foregoing, Hartford Life and HFSG respectfully request that the Court enter judgment in their favor on all claims asserted against them by Phones Plus under the Amended Class Action Complaint.

By:  /s/ Michael A. Valerio
    Christopher G. Barnes (ct23166)
    Michael A. Valerio (ct19335)
    Ben V. Seessel (ct27526)
    John C. Pitblado (ct 25563)
    JORDEN BURT LLP
    175 Powder Forest Drive, Suite 201
    Simsbury, Connecticut 06089-9658
    Telephone:   (860) 392-5000
    Facsimile:    (860) 392-5058
    E-mail:  cgb@jordenusa.com
    E-mail:  mav@jordenusa.com
    E-mail:  bvs@jordenusa.com
    E-mail:  jcp@jordenusa.com


    and

James F. Jorden (admitted *pro hac vice*)
JORDEN BURT LLP
1025 Thomas Jefferson St., N.W.
Suite 400 East
Washington, D.C.  20007-5208
Telephone:   (202) 965-8126
Facsimile:    (202) 965-8104
E-mail:  jfj@jordenusa.com

Attorneys for Defendants,
The Hartford Financial Services Group, Inc.,
and Hartford Life Insurance Company

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 3rd day of March, 2008, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by electronic mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

/s/ Michael A. Valerio
Michael A. Valerio