IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHONES PLUS, INC, Plan Administrator of the Phones Plus Retirement Savings Plan, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC., HARTFORD LIFE INSURANCE COMPANY and NEUBERGER BERMAN MANAGEMENT, INC.,<br><br>Defendants.<br>_____<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC. and HARTFORD LIFE INSURANCE COMPANY,<br><br>Third-Party Plaintiffs,<br><br>vs.<br><br>THOMAS SODEMANN and ROBERT SODEMANN, Trustees of the Phones Plus, Inc. Retirement Savings Plan and John Does, 1-20 *et al.*,<br><br>Third-Party Defendants. | Case No. 3:06-cv-1835 (AVC)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>March 27, 2008 |

**MEMORANDUM OF LAW IN SUPPORT OF THIRD PARTY DEFENDANTS'
MOTION TO DISMISS THIRD PARTY COMPLAINT**

Third-Party Defendants, Thomas Sodemann and Robert Sodemann, as Trustees of the

Phones Plus, Inc. Retirement Savings Plan (collectively, the "Sodemanns" or "Third Party

Defendants"), by their undersigned counsel, respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Third-Party Complaint (the "Complaint") of Third-Party Plaintiffs, The Hartford Financial Services Group, Inc. and Hartford Life Insurance Company (collectively, "The Hartford" or "Third-Party Plaintiffs"). Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Complaint fails to state a claim upon which relief can be granted and, therefore, should be dismissed in its entirety.

## SUMMARY OF ARGUMENT

The Hartford's Complaint is essentially identical to The Hartford's November 21, 2007 Counterclaims (the "Counterclaims"), except that the Complaint names as defendants the individual Trustees of the Phones Plus, Inc. Retirement Savings Plan (the "Plan"), rather than Phones Plus, Inc. ("Phones Plus") itself. Phones Plus has moved to dismiss the Counterclaims for many of the same arguments asserted by the Sodemanns here.

The Hartford's Complaint, which is bereft of any factual or legal basis, can only be characterized as a transparent attempt to cow the Sodemanns in retaliation for their efforts to hold The Hartford liable for its ongoing violations of the Employee Retirement Income Security Act of 1974 ("ERISA") arising from The Hartford's solicitation and retention of kick-backs from mutual fund companies whose mutual funds are offered as investment options in retirement plans created and administered by The Hartford. These kick-backs, described as "revenue sharing payments" in Phones Plus' March 5, 2007 Amended Class Action Complaint (the "Phones Plus Complaint"), are prohibited transactions pursuant to ERISA § 406(b).

Since it has admitted its receipt and retention of the revenue sharing payments, The Hartford's liability to the Plan and the proposed Class of similarly situated retirement plans

-2-

depends upon its status as a fiduciary under ERISA. Indeed, The Hartford recently moved for summary judgment on this issue in the underlying action. However, in an effort to distract and intimidate Phones Plus from the prosecution of its claims, The Hartford's Complaint alleges that if it is found liable for its violations of ERISA, it is nonetheless entitled to contribution or indemnity from the Sodemanns because they too are ERISA fiduciaries.

These arguments are untenable. First, The Hartford's Complaint fails to pass muster under the Second Circuit's plausibility standard for determining the sufficiency of pleadings because The Hartford cannot allege any facts suggesting that the Sodemanns' fault is equal to or greater than The Hartford's and, thus, there is no basis for contribution or indemnity. Second, although there is precedent in this Circuit recognizing an implied right of contribution or indemnity under ERISA, it is doubtful that this precedent is still "good" law in light of more recent holdings of the United States Supreme Court. Moreover, even if this Court follows the Second Circuit, its limited recognition of ERISA-based contribution or indemnity claims is inapplicable under the facts presented here. Indeed, it would be inherently inequitable to permit claims for contribution or indemnity to go forward because, if successful, they would allow The Hartford to be unjustly enriched for its violations of ERISA. Lastly, The Hartford's claim for breach of fiduciary duty is improper because any recovery would benefit The Hartford rather than the Plan. Accordingly, for these reasons, The Hartford's Complaint against the Sodemanns should be dismissed in its entirety.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Phones Plus, a Wisconsin corporation, is the Plan Administrator of the Plan, which is a 401(k) retirement plan governed by ERISA. Complaint, ¶¶ 1, 9. The Sodemanns are officers of

Phones Plus and Trustees of the Plan. Complaint, ¶¶ 2-3.

Third-Party Plaintiff, The Hartford Financial Services Group, Inc., is a diversified insurance and financial services company which provides, directly and/or through its subsidiaries and affiliates, including Third-Party Plaintiff, Hartford Life Insurance Company, savings and retirement products to the Plan and other 401(k) and retirement plans. Complaint, ¶¶ 5-6, 10. The Plan is administered by The Hartford, which provides the investment options (the "menu") in which the Plan and its participants (*i.e.*, current and/or former employees of Phones Plus) can invest their retirement savings. Complaint, ¶¶ 5, 11. The Hartford receives revenue sharing payments from mutual fund families when mutual funds of those families are offered as investment options in the menu to the Plan, allegedly in exchange for certain benefits and services provided by The Hartford. Complaint, ¶ 13.

On November 14, 2006, Phones Plus, as Trustee of the Plan, commenced the underlying class action against The Hartford and Neuberger Berman Management, Inc. ("Neuberger"), alleging the violation of ERISA based upon The Hartford's solicitation and receipt of revenue sharing payments, which are essentially kick-backs to The Hartford in exchange for offering certain mutual funds as investment options in those retirement plans created and administered by The Hartford. In response to the Phones Plus Complaint, The Hartford asserted its second Motion to Dismiss, which the Court denied by Order dated October 23, 2007. On November 21, 2007, The Hartford filed its Answer, Affirmative Defenses and Counterclaims; on November 28, 2007, Neuberger filed its Answer and Affirmative Defenses.

### A. The Underlying Action

The Phones Plus Complaint alleges that The Hartford implemented and participated in a

scheme whereby mutual funds made revenue sharing payments to The Hartford based upon a percentage of the Plans' assets invested in these mutual funds, respectively, by and through The Hartford. (Phones Plus Complaint ¶ 38 (the Phones Plus Complaint is attached to the Third-Party Complaint as Exhibit 1)).  The Hartford implicitly and/or explicitly made it a condition to offering a mutual fund family's funds to the Plans that the mutual fund family pay them revenue sharing on a majority or all of the funds offered and/or recommended by The Hartford.  Phones Plus Complaint ¶ 38.  To implement this scheme, The Hartford initiated changes to its contract pricing to account for revenue sharing arrangements and negotiated revenue sharing agreements with mutual funds on behalf of itself and its affiliates.  Phones Plus Complaint ¶ 39.

While the revenue sharing payments are often described in revenue sharing contracts as reimbursements for expenses incurred in providing services to the mutual funds, those services by which mutual funds may incidentally benefit are actually ones that The Hartford had historically provided to the Plans as a necessary part of its business in return for the fees directly collected by it, and these fees did not change as a result of revenue sharing or based upon the percentage or the magnitude of a plan's investments in the mutual fund.  Phones Plus Complaint ¶ 41.  At all pertinent times, The Hartford (and/or their subsidiaries or affiliates) have been arranging for, receiving and keeping the revenue sharing payments for their own use and benefit, in violation of ERISA's prohibited transaction rules and in breach of its fiduciary duties under ERISA.  Phones Plus Complaint ¶ 43.

In early 2007, in response to the Phones Plus Complaint, in an attempt to foreclose its continuing liability for its ERISA violations, The Hartford issued the following statement and made the following admissions with respect to its receipt of revenue sharing payments and

misconduct:

> We want you to know that Hartford [Hartford Life Insurance Company and its affiliates] receives substantial fees and payments with respect to the underlying funds that are offered as Sub-Accounts to your Plan through the Contract. We consider these fees and payments, among a number of other factors, when deciding to include a fund to the menu of Funds that we offer through the Contract. These fees and payments are received by Hartford under agreements between Hartford and the principal underwriters, transfer agents, investment advisers and/or other entities related to the Funds in amounts up to 1.30% of assets invested in a Fund. These fees and payments may include asset based sales compensation and service fees under distribution and/or servicing plans adopted by funds pursuant to Rule 12b-1 under the Investment Company Act of 1940. They may also include administrative service fees and additional payments, expense reimbursement and compensation sometimes referred to as "revenue sharing" payments. Hartford receives these fees and payments for its own account and expects to make a profit on the amount of the fees and payments that exceed Hartford's own expenses, including our expenses of paying compensation to broker-dealers, financial institutions and other persons for selling the Contracts.
>
> We also want you to understand that not all fund families pay the same amount of fees and compensation to us and not all funds pay according to the same formula. Because of this, the amount of fees and payments received by Hartford varies by fund and Hartford may receive greater or less fees and payments depending on which variable investment options your Plan selects.
>
> * * *
>
> You should know that the principal underwriters of certain funds have chosen to offer for sale, and Hartford has selected, fund share classes with asset based sales charges and/or service fees that may or may not be higher than other available share classes of the same fund. As a result of any higher asset based fees and charges paid by investors in such share classes, the amount of fees and payments that might otherwise need to be paid by such fund principal underwriters or their affiliates to Hartford would decrease.

> Some of the Sub-Accounts available in the Contract invest in Funds that are part of our own affiliated family of funds. In addition to any fees and payments Hartford may receive with respect to those funds, one or more of our affiliates receives compensation from the funds, including among other things a management fee and 12b-1 fees from the funds.

Phones Plus Complaint ¶ 22. The Hartford's belated admission of the receipt and profit from revenue sharing payments establishes: the payments at issue are *per se* unlawful and cannot be excused by alleged disclosure or purported consent and The Hartford's past and current representations regarding the nature of the fees that it receives from mutual funds were and are false and misleading when issued.

## B. The Third-Party Complaint

The claims asserted in The Hartford's Complaint are all contingent on a finding that The Hartford is a fiduciary under ERISA and that its receipt and retention of the revenue sharing payments violated ERISA. *See*, *e.g.*, Complaint ¶ 1 ("to the extent that [the Defendants are] adjudged liable to Phones Plus (on behalf of the Plan) for any or all such relief [asserted in the Phones Plus Complaint], [the Defendants are] entitled to recover from the Third-Party defendants for any such liability as set forth herein"). The ERISA-based claims for contribution, indemnity and breach of fiduciary duty, as well as the common law claims for contribution and indemnity, are all predicated upon "a finding in favor of Phones Plus on any of its allegations that conduct of [The Hartford] in receiving and retaining payments from mutual fund families was somehow violative of alleged duties owed to the Plan and its participants ..." Complaint, ¶¶ 23, 31, 38, 45, 54. Thus, by its Complaint, The Hartford asserts that the Sodemanns should be required to pay The Hartford for any Plan losses resulting from The Hartford's receipt and retention of payments

from mutual fund families, in violation of duties owed to the Plan and its participants. Such a result is both factually and legally unsupportable.

## II. ARGUMENT

### A. Standard of Review

A complaint is subject to dismissal pursuant to Rule 12(b)(6) where it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1974 (2007). As the Second Circuit has recently instructed, *Twombly* requires that a party bringing a claim satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). A party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (internal punctuation omitted). In order to state a claim, the factual allegations contained in the pleading "must be enough to raise a right to relief above the speculative level." *Id*. at 1965; *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiffs' claims across the line from conceivable to plausible").

Reference to the Phones Plus Complaint, which this Court determined sufficiently stated claims for violations of ERISA, does not establish the adequacy of The Hartford's allegations against the Third-Party Defendants. The underlying Phones Plus Complaint does not even mention the Sodemanns, and The Hartford clearly is not excused from its obligation to give them "fair notice of what the claim is and the grounds upon which it rests." *Iqbal*, 490 F.3d at 157

(citation and internal quotations omitted). As the Second Circuit recently explained, *Twombly* requires the allegation of facts "that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citations omitted). Here, there are no such facts alleged which "plausibly suggest" the conclusion that the Sodemanns are liable to The Hartford.

> A. Under The Doctrine Of Relative Fault, The Hartford Has Not And Cannot Plead The Required Elements To State A Claim For Contribution Or Indemnification

In *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 18 (2d Cir. 1991), *cert. denied*, 505 U.S. 1212 (1992), the Second Circuit Court of Appeals recognized that any claim for contribution or indemnity under ERISA arises as a federal common law right under the law of trusts. *See Chemung*, 939 F.2d at 16 ("federal courts have been authorized to develop a federal common law under ERISA, and in doing so, are to be guided by the principles of traditional trust law").[1] As explained below, it is the Sodemanns' position that *Chemung* has been effectively overruled by subsequent decisions of the United States Supreme Court. Moreover, even if *Chemung* could still be considered as "good" law, it is nevertheless clear that The Hartford cannot, consistent with its obligations under Federal Rule of Civil Procedure 11, plead facts justifying the right to contribution or indemnification under the law of trusts.

Section 258 of the Restatement (Second) of the Law on Trusts, governing "Contribution or Indemnity From Co-Trustee," states as follows:

---

[1] *See Emmons v. Equitable Life Assur. Soc. Of U.S.*, 799 F.Supp. 1123, 1127 (D. N.M. 1992) (any right to contribution or indemnification in an ERISA case arises as part of the federal common law of trusts because any state law claims would be preempted by ERISA).

> (1) Except as stated in Subsection (2), where two trustees are liable to the beneficiary for a breach of trust, each of them is entitled to contribution from the other, except that
>
>> (a) ***if one of them is substantially more at fault than the other, he is not entitled to contribution from the other but the other is entitled to indemnity from him***; or
>>
>> (b) if one of them receives a benefit from the breach of trust, the other is entitled to indemnity from him to the extent of the benefit; and for any further liability, if neither is more at fault than the other, each is entitled to contribution.
>
> (2) A trustee who commits a breach of trust in bad faith is not entitled to contribution or indemnity from his co-trustee.

*Restatement (Second) of Trusts* § 258 (emphasis added). *See Sunderlin v. First Reliance Standard Life Ins. Co.*, 235 F.Supp.2d 222, 237 (W.D.N.Y. 2002) (dismissing cross-claim for contribution and indemnity under ERISA for failure to state a claim upon which relief could be granted because cross-claim failed to articulate a basis from which one could conclude that the party from which contribution and indemnity was sought could be deemed to be at equal or greater fault than the party seeking contribution and indemnity); *Harris Trust and Savings v. John Hancock Mutual*, 122 F.Supp.2d 444, 464 (S.D.N.Y. 2001) (dismissing claims for contribution of insurer under ERISA on the basis that insurer was substantially more at fault than co-fiduciaries), *aff'd in pertinent part and rev'd in part*, 302 F.3d 18 (2d Cir. 2002); *Scalp & Blade, Inc. v. Advest, Inc.*, 300 A.D.2d 1068, 1069, 755 N.Y.S.2d 140, 141 (4th Dept. 2002) (defendant was not entitled to contribution from his fellow trustees where damages sought were in the form of economic loss and defendant was substantially more at fault than other trustees); *Matter of Hadleigh D. Hyde Trust*, 458 N.W.2d 802, 806 (S.D. 1990) (co-trustee who was

unaware of commodity trading until after losses were incurred was not liable for contribution to co-trustee who committed the breach); *see also Free v. Briody*, 732 F.2d 1331, 1336-37 (7th Cir. 1984) (explaining that "ERISA allows a passive trustee to seek indemnification from a more culpable active trustee"); Bogert's *Trusts and Trustees* § 701 (recognizing that active violator of trust cannot recover contribution or indemnification from trustee that is less at fault or committed only a technical breach). Here, The Hartford has not even attempted to allege that the Sodemanns are of equal or even comparable fault with respect to the revenue sharing kick-backs that The Hartford collected and retained for its own benefit, to the detriment of the Plan. Thus, under *Twombly*, since The Hartford is unable to plead facts, as opposed to conclusions, making it plausible that the Third-Party Defendants have any fault (much less sufficient fault) to be subjected to a claim for indemnification or contribution, as a matter of law, the claims against the Sodemanns must be dismissed.[2]

---

[2] Since The Hartford clearly received the benefit of its revenue sharing payment/kickback scheme, under Restatement (Second) of the Law on Trusts § 258(1)(b), the Sodemanns have an automatic right to indemnification from The Hartford, thereby foreclosing the possibility of any claim for contribution or indemnity as well. As explained by the Seventh Circuit Court of Appeals in *TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 153 F.3d 822 (7th Cir. 1998):

> Restatement (2d) of Trusts § 258(1)(b) provides that where co-trustees are each liable for a breach of trust, and "***one of them receives a benefit from the breach of trust, the other is entitled to indemnity from him to the extent of the benefit***." TRW alleges that (1) it and Security were co-trustees of all the deposits in the escrow account during December 1989, (2) Liberty, as agent of both, breached the trust when it used the funds of the new TRW depositors to close the old Security depositors' deals, and (3) TRW benefitted to the tune of total relief from liability on its letters.

*Id.*, 153 F.3d at 827, n.2 (emphasis added).

B.  **There Is No Implied Right To Contribution Or Indemnity Under ERISA**

While the Second Circuit recognized an implied right to contribution and indemnity by ERISA fiduciaries in *Chemung*, 939 F.2d at 18, since then, the Supreme Court has ruled that remedies or causes of action not expressly set forth in ERISA cannot be read into the statute. In *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993), and more recently, *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002), the Supreme Court considered whether certain causes of actions or remedies not clearly specified in the statute could nonetheless still be read into ERISA. In both instances, the Court declined to recognize remedies or causes of action not specifically authorized by ERISA's text. In doing so, the *Great-West* Court explicitly set forth the restrictive scope applied to determine permissible civil remedies under ERISA, holding as follows:

> We have observed repeatedly that ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system. We have therefore been especially reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text. Indeed, we have noted that ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that **Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.**

*Great-West*, 534 US at 322 (emphasis added; citations and internal quotations omitted).

The reasoning of *Mertens* and *Great West* have obviously influenced whether claims for contribution and indemnity can be read into ERISA. In concluding that ERISA does not permit contribution claims, the Eighth Circuit expressly cited the above Supreme Court language of *Great West* as the basis for its decision. *See Travelers Casualty and Surety Company of America*

v. *IADA Services, Inc.*, 497 F.3d 862, 865 (8th Cir. 2007). Other courts have similarly noted the impact of *Mertens* and/or *Great West* in denying contribution claims under ERISA. *See*, *e.g.*, *Gilbert v. National Employee Benefit Companies, Inc.*, 466 F.Supp.2d 928, 930-31 (N.D. Ohio 2006) (claims for contribution and indemnification between fiduciaries not permitted under ERISA); *Kloots v. American Express Tax & Business Services, Inc.*, No. 5:04 CV 2152, 2006 WL 1644373, at *5 (N.D. Ohio June 12, 2006) (rejecting argument that right to contribution or indemnity existed under ERISA); *Toledo Blade Newspaper Unions-Blade Pension Plan v. Investment Performance Services, LLC*, 448 F.Supp.2d 871, 875 (N.D. Ohio 2006) (claims for contribution and indemnity do not exist under ERISA); *Openshaw v. Cohen, Klingenstein & Marks, Inc.*, 320 F.Supp.2d 357, 364 (D. Md. 2004) (dismissing counterclaim for contribution as not permitted under ERISA); *Williams v. Provident Inv. Counsel, Inc.*, 279 F.Supp.2d 894, 900 (N.D. Ohio 2003) (holding that claims for contribution and indemnity are not cognizable under ERISA); *Meoli v. American Medical Services of San Diego*, 35 F.Supp.2d 761, 763 (S.D. Cal. 1999) (ERISA did not give fiduciary right to seek indemnification from co-fiduciary for breach of fiduciary duty); *International Brotherhood of Painters v. Duval*, Civ. A. No. 92-1099 (JHG), 1994 WL 903314, at *3 (D.D.C. April 14, 1994) (holding that "despite the comprehensive nature of ERISA, Congress could have included provisions for indemnification or contribution among fiduciaries, but did not," rejecting the reasoning of *Chemung* as unpersuasive and holding that, in light of *Mertens*, "this Court cannot find that ERISA allows a claim for contribution or indemnification among fiduciaries"); *see also Kim v. Fujikawa*, 871 F.2d 1427, 1432-33 (9th Cir. 1989) (holding, prior to *Mertens* and *Great-West*, that neither contribution nor indemnification are available under ERISA to a breaching fiduciary).

Importantly, the Second Circuit in 2003 acknowledged the importance of *Great-West's* restrictive reading of ERISA's remedial scheme. In declining to extend a cause of action against a non-fiduciary under ERISA, the Second Circuit specifically observed as follows:

> Great West is quite explicit, however, that it is not our job to find reasons for what Congress has plainly done. That comment ... makes evident that ***we are no longer free to fill in unwritten gaps in ERISA's civil remedies*** .... The Supreme Court has instructed that it is not for us to decide the best ERISA remedial scheme.

*Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 322 (2d Cir.), *cert. denied*, 540 U.S. 1074 (2003) (emphasis added; citations and internal quotations omitted.). *Gerosa's* observation that the courts in this Circuit may no longer read remedies into ERISA, which are not expressly provided for in the statute, strongly suggests that the holding in *Chemung* is no longer good law. Accordingly, the Sodemanns request that this Court refrain from relying on *Chemung*, and determine that, consistent with *Great-West* and *Gerosa*, The Hartford's claims for contribution and indemnification are unavailable as a matter of law.

### C.  Even If This Court Follows *Chemung*, The Hartford Has Failed To State Claims For Contribution Or Indemnity

Even if the Court does not find that *Chemung* has been effectively overruled, it is clear that, even under *Chemung*, the Hartford's ERISA-based claims are insufficient as a matter of law. As Judge Dorsey explained in *Petrilli v. Gow*, 957 F.Supp. 366 (D. Conn. 1997), "[i]n *Chemung*, contribution and indemnification were allowed as a matter of apportionment among fiduciaries, ***each of whom could have been sued by plaintiffs***" and "[g]iven the *Mertens* holding, there can be no such right of contribution or indemnification." *Petrilli*, 957 F.Supp. at 375 (emphasis added). Here, the claims asserted by The Hartford do not purport to apportion liability

between fiduciaries that could have been sued by plaintiffs. Instead, in an astounding departure from the logic of *Chemung*, The Hartford seeks to avoid liability for its own wrongdoing by shifting the blame to parties who have stepped forward to hold The Hartford responsible for its misconduct. Thus, unlike *Chemung*, where the Court of Appeals was concerned about one fiduciary being held responsible where a number of co-fiduciaries were equally or more responsible, based upon the vagaries of which fiduciary the plaintiff chose to sue, there is no cognizable (much less a compelling) rationale to permit claims for contribution or indemnification in circumstances such as those present in this case. *See Radutzky v. Wallert*, No. 87 Civ. 4340, 1988 WL 142666, at *3 (E.D.N.Y. Dec. 30, 1988) (dismissing counterclaim for contribution because, "in asserting plaintiffs' joint and several liability, defendants do not seek to recover additional funds for the Funds," but "[r]ather they seek to diminish their own exposure by apportioning some of the liability to plaintiffs"). For this reason, to the extent the Court does not find that *Chemung* has been overruled by the Supreme Court and the Second Circuit in *Gerosa*, at a minimum, the Court should dismiss The Hartford's ERISA-based claims for contribution and indemnity as beyond the limited scope and purpose of those claims that were implied into ERISA by *Chemung*.

### D. If Permitted, Claims For Contribution Or Indemnity Would Result In The Hartford's Unjust Enrichment

As noted above, assuming *arguendo* that contribution and indemnity are permissible claim under ERISA, they arise under the federal common law and are "to be guided by the principles of traditional trust law." *Chemung*, 939 F.2d at 16. Under these principles, first and foremost, contribution and indemnity must serve as "an *equitable* means of apportioning

wrongdoing." *Id.* (emphasis added). Thus, in situations where contribution and indemnity would not be equitable, they should not be permitted.

State and federal courts across the country have recognized that the basis for an indemnity claim is unjust enrichment. *See, e.g.*, *United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 398 (9th Cir. 1964). Indemnity claims require courts to "examine carefully both parties' conduct in light of general notions of justice." *Grinnell Mut. Reins. Co. v. Center Mut. Ins. Co.*, 658 N.W.2d 363, 378 (N.D. 2003). The theory of indemnity and contribution is that, when two or more parties are responsible for a loss, but only one of them bears the financial consequences of that loss, the other party is unjustly enriched by shifting the entire burden based on the happenstance of whom the plaintiff elects to sue. *LNC Investments, Inc. v. First Fidelity Bank, Nat'l Ass'n*, 935 F. Supp. 1333, 1352 (S.D.N.Y. 1996); *State v. Stewart's Ice Cream Co.*, 64 N.Y.2d 83, 473 N.E.2d 1184, 1186 (1984). Thus, for example, in an imprudent investment ERISA case, a loss to someone is inevitable because the investments' decline in value means that it is too late to restore the parties to the same economic position that they should have occupied absent the breach. Under those circumstances, where different fiduciaries had the opportunity to prevent the loss, it might be appropriate to use indemnity or contribution to spread the loss among the various fiduciaries who were at fault.

Here, the facts alleged are much different. In this case, the issue is not a loss or injury that must ultimately be borne by someone. Instead, the issue is payments made to ***The Hartford*** in direct violation of ERISA's prohibited transaction rules. In other words, all of the money at issue in the underlying action ended up with The Hartford. Under these circumstances, neither indemnity nor contribution is appropriate. Indemnity or contribution would allow The Hartford

to realize a profit from its unlawful conduct, in square contradiction to the equitable principles underlying these claims, and the public policy established by ERISA itself. *Beerman Realty Co. v. Alloyd Asbestos Abatement Co.*, 653 N.E.2d 1218, 1223 (Ohio Ct. App. 1995) ("[I]ndemnification will not be allowed if such indemnification violates public policy").

Perhaps the clearest case in support of this conclusion is *Rheiner v. Varner*, 627 S.W.2d 459, 463 (Tex. App. 1981, no writ). There, an owner declined to pay his general contractor's subcontractors for "extra" work on the ground that the owner had not authorized the work with a written change order, as required by the general contract. The subcontractors recovered from the owner on a quantum meruit theory, based on the reasoning that the owners would be unjustly enriched if they kept the "extra" work without paying for it. However, at trial, the owner in turn recovered from the general contractor on an indemnity theory. The appellate court reversed the indemnity award, reasoning that "[i]f the owners are unjustly enriched unless they are made to pay [the subcontractor] for his extra work, they are still unjustly enriched if they are indemnified by the general contractor." *Id.* Here, too, The Hartford is unjustly enriched because it received payments in violation of ERISA's prohibited transaction rules. It is still unjustly enriched if it is indemnified by *anyone* (including the Sodemanns) after reimbursing the Plan for those payments.

Other cases yield the same conclusion. In *Miller v. Ellis*, 126 Cal. Rptr. 2d 667, 670 (Ct. App. 2002), two attorneys, Miller and Ellis, were each responsible for legal malpractice toward their common client. The malpractice action settled, with Miller's malpractice carrier paying $75,000 in settlement and all but $5,000 of the attorneys' fees incurred by Miller in defense of the malpractice claim. The trial court concluded that Miller and Ellis were equally liable for the

-17-

malpractice, and awarded Miller indemnity in the amount of 50% of the settlement amount and the attorneys' fees incurred on his behalf.  The Court of Appeal reversed, reasoning that since the only loss suffered by Miller was $5,000 toward his attorneys' fees, he was only entitled to indemnity for half of that amount.  In other words, other than that $5,000 payment, Miller was already in the same position as if he had never committed malpractice.  Indeed, as the Court of Appeal observed, allowing indemnity would permit Miller to profit from his own act of malpractice.  *Id.* at 672 ("[E]quitable indemnity is not appropriate where it would have the perverse effect of allowing one tortfeasor to profit at the expense of other tortfeasors.  This would clearly defeat the very purpose of the doctrine, which is to ***prevent*** unjust enrichment."), 673 ("To permit Miller now to receive 'indemnification' from Ellis . . . would effectively reward Miller for his own wrongdoing."); *see also Leiker v. Gafford*, 819 P.2d 655, 658-59 (Kan. 1991) (denying an indemnity claim where the underlying judgment was entirely paid by insurance).

      Here, after paying any judgment in full, The Hartford will be in precisely the same position as if it had complied with ERISA in the first case.  Indemnity or contribution would award The Hartford profits that ERISA forbids it to retain.  The result would be to encourage violations of ERISA's prohibited transaction rules, because a fiduciary in The Hartford's position would reason that, even if the unlawful conduct is discovered, a claim for indemnity or contribution against other fiduciaries would still result in the realization of at least some profit.  In short, an indemnity or contribution claim here is contrary to public policy as articulated by ERISA.  For this reason as well, The Hartford's claims for indemnity and contribution must be dismissed.

### E. The Claim For Breach Of Fiduciary Duty Also Must Be Dismissed

The Hartford also has desperately asserted a claim for breach of fiduciary duty against the Sodemanns in the event that The Hartford is deemed a fiduciary. This claim is purportedly asserted on behalf of the Plan. *See* Complaint ¶ 56. But, as in *Radutzky*, 1988 WL 142666, at *3, it is apparent that The Hartford "do[es] not seek to recover additional funds for the [Plan]" but "[r]ather they seek to diminish their own exposure by apportioning some of the liability to plaintiff...." Moreover, it is well established that "[s]tanding to pursue claims on behalf of the plan and the right to seek contribution are mutually exclusive." *Duncan v. Santaniello*, 900 F.Supp.2d 547, 556 (D.Mass. 1995) (citing *Chemung*, 939 F.2d at 15). Thus, since the claim for an alleged fiduciary duty breach actually seeks no benefit for the Plan, as a matter of law, this cause of action must be dismissed as well.

### III. CONCLUSION

For the foregoing reasons, this Court should grant Third-Party Defendants' Motion to Dismiss and dismiss the Third-Party Complaint.

                              THOMAS SODEMANN and
                              ROBERT SODEMANN

By: _____
     Bruce E. Newman
     Newman, Creed & Associates
     99 North Street, Route 6
     P.O. Box 575
     Bristol, CT 06011-0575
     (860) 583-5200
     Federal Bar No.: CT 12301

> David V. Meany
> DeWitt Ross & Stevens, S.C.
> 13935 Bishop's Drive, Suite 300
> Brookfield, WI 53005
> (262) 754-2866
> (262) 754-2845 (facsimile)
> dvm@dewittross.com
>
> Their Counsel