# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHONES PLUS, INC., Plan Administrator of the Phones Plus Retirement Savings Plan, on behalf of itself and all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>HARTFORD LIFE INSURANCE COMPANY and NEUBERGER BERMAN MANAGEMENT INC., )<br><br>Defendants. | Civil Action No. 3:06-cv-01835 (AVC)<br><br><br><br>February 11, 2010 |

## SETTLEMENT AGREEMENT AND RELEASE

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

RECITALS ................................................................................................................. 1

I.     DEFINITIONS .................................................................................................... 4

II.    MOTION FOR PRELIMINARY APPROVAL AND CERTIFICATION OF
PROPOSED CLASSES FOR SETTLEMENT PURPOSES ........................................... 13

III.   PAYMENTS TO THE MONETARY RELIEF CLASS ................................................. 17

IV.   STRUCTURAL CHANGES ....................................................................................... 23

V.    SETTLEMENT ADMINISTRATION ........................................................................ 29

VI.   RELEASES AND COVENANTS ............................................................................... 31

VII.  CASE CONTRIBUTION FEE TO PLAINTIFF .......................................................... 34

VIII. ATTORNEYS' FEES .............................................................................................. 35

IX.   CONTINGENCIES, EFFECT OF DISAPPROVAL OR TERMINATION OF
SETTLEMENT ...................................................................................................... 36

X.    NO ADMISSION OF WRONGDOING ..................................................................... 38

XI.   MISCELLANEOUS ................................................................................................. 39

This Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is entered into on February 11, 2010 by and among Plaintiff Phones Plus, Inc. ("Phones Plus"), as sponsor and plan administrator of the Phones Plus Retirement Savings Plan (the "Phones Plus Plan"), on its own behalf and on behalf of the Settlement Classes defined herein, Defendant Hartford Life Insurance Company ("Hartford Life"), and Third-Party Defendants Robert Sodemann and Thomas Sodemann ("Third-Party Defendants").

## RECITALS

WHEREAS, on November 14, 2006, Phones Plus filed the above-captioned putative class action against The Hartford Financial Services Group, Inc. ("HFSG"), Hartford Life, and Neuberger Berman Management, Inc. ("Neuberger Berman") in the United States District Court for the District of Connecticut on its own behalf and on behalf of all trustees, sponsors, fiduciaries, and administrators of employee pension benefit plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA") subject to Internal Revenue Code ("IRC") § 401(k) for which, since November 14, 2003, Hartford Life has received revenue sharing payments (e.g., asset based sales compensation, service fees under distribution and/or servicing plans adopted by funds pursuant to Rule 12b-1 under the Investment Company Act of 1940, administrative service fees and additional payments, expense reimbursement and other similar compensation) from any mutual fund or investment adviser (the "Putative Class") (the initial complaint together with all subsequent pleadings and proceedings in the litigation are collectively referred to as the "Action");

WHEREAS, on January 13, 2009, the United States District Court for the District of Connecticut (the "Court") entered and approved a Stipulation of Dismissal as to the claims against HFSG;

WHEREAS, on July 17, 2009, the Court entered an Order of Final Approval of Class Action Settlement, Award of Attorney's Fees and Expenses, and Dismissal, which approved a settlement between Phones Plus and Neuberger Berman and dismissed all claims against Neuberger Berman with prejudice;

WHEREAS, the complaints and other filings by Phones Plus in the Action have alleged various claims against Hartford Life and/or HFSG relating to Hartford Life's operation of its retirement plan business, including but not limited to claims brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 et seq., for breach of fiduciary duty (29 U.S.C. § 1104), violation of the prohibited transaction rules (29 U.S.C. § 1106), and knowing participation in a breach of trust;

WHEREAS, all of these claims arise, in whole or in part, from Hartford Life's contractual arrangements with and/or provision of various services to retirement plans and/or its receipt from Fund Companies (as defined below) of Revenue Sharing payments (as defined below) (collectively, the "Claims");

WHEREAS, Hartford Life has asserted counterclaims against Phones Plus, the plan administrator and fiduciary of the Phones Plus Plan, for contribution under ERISA, indemnity under ERISA, common law contribution, common law indemnity, and breach of fiduciary duty and has stated that it reserves the right to assert the same or similar counterclaims against the Putative Class or the Putative Class's retirement plans (the "Counterclaims");

WHEREAS, Hartford Life, as Third-Party Plaintiff, has asserted third-party claims against the Third-Party Defendants, the trustees and fiduciaries of the Phones Plus Plan, for contribution under ERISA, indemnity under ERISA, common law contribution, common law indemnity, and breach of fiduciary duty and has stated that it reserves the right to assert the same

2

or similar claims against the trustees and fiduciaries of the Putative Class or of the Putative Class's retirement plans (the "Third-Party Claims");

WHEREAS, the discovery cut-off in the Action has passed, and during the discovery period, the parties engaged in substantial discovery to evaluate the merits of their respective claims and defenses;

WHEREAS, in an attempt to resolve the disputes between them, Phones Plus and Hartford Life engaged in multiple mediation sessions with an experienced and well-respected private mediator, Professor Eric D. Green of Resolutions LLC and the Boston University School of Law;

WHEREAS, following mediation efforts, the parties, through their respective attorneys, have reached an agreement to settle the Claims, Counterclaims, and Third-Party Claims in the Action on the terms and conditions set forth in this Agreement;

WHEREAS, Hartford Life, Phones Plus, and the Third-Party Defendants have vigorously denied, and continue to vigorously deny, any wrongdoing and any liability based on, respectively, the Claims, the Counterclaims, and the Third-Party Claims;

WHEREAS, the parties have decided to enter into this Settlement because it provides substantial and meaningful benefits to the Members of the Settlement Classes (defined below) and to avoid the uncertainties and halt the substantial expense, business disruption, and burden inherent in continued litigation; and

WHEREAS, entry into this Settlement Agreement is not an admission of liability by Hartford Life, Phones Plus, or the Third-Party Defendants.

NOW, THEREFORE, it is agreed, by and among the undersigned, that this Action shall be settled and dismissed with prejudice on the terms and conditions set forth herein, subject to judicial approval.

## I.   DEFINITIONS.

1.1   "Administration Costs" shall mean (i) the costs and expenses associated with the production and dissemination of the Long Form Notice, (ii) the costs and expenses associated with the production and publication of the Published Notice (as defined below and described in paragraph 2.6), (iii) any other administrative expenses (including but not limited to Taxes and Tax-Related Costs) necessitated by performance and implementation of this Settlement Agreement and any Court orders relating thereto; and (iv) the costs and expenses associated with the retention of an Independent Fiduciary engaged on behalf of the Members of the Settlement Classes.  Administration Costs shall not include Attorneys' Fees.

1.2   "Administration Costs Amount" shall mean the sum of $300,000.

1.3   "Attorneys' Fees" shall mean any and all attorneys' fees, costs (including expert costs) and expenses of Phones Plus's counsel for their past, present, and future work, efforts, and expenditures in connection with this Action.

1.4   "Case Contribution Fee" shall have the meaning ascribed to it in paragraph 7.1.

1.5   "Distributable Settlement Amount" shall have the meaning ascribed to it in paragraph 3.2(a).

1.6   "DOL" shall mean the United States Department of Labor.

4

1.7     "Effective Date" shall mean the date upon which the Final Order and Judgment becomes both final and no longer subject to appeal or review (or further appeal or review), whether by exhaustion of any possible appeal, lapse of time, or otherwise.

1.8     "Escrow Account" shall mean an account at Huntington National Bank  or a similar established financial institution agreed upon by the Parties that is established for the deposit of any amounts relating to the Settlement.

1.9     "Escrow Agent" shall mean the Settlement Administrator, or whatever other person or entity is approved by the Court to act as escrow agent for any portion of the Settlement Amount deposited in or accruing in the Escrow Account pursuant to this Agreement.

1.10     "Excess Administration Costs" shall mean any Administration Costs in excess of the Administration Costs Amount.

1.11     "Fairness Hearing" shall mean the hearing to be held before the Court pursuant to Federal Rule of Civil Procedure 23(e) to determine whether the Settlement Agreement should receive Final Approval by the Court.

1.12     "Fee and Expense Application" shall mean the petition, to be filed by Phones Plus's counsel, seeking approval of an award of Attorneys' Fees.

1.13     "Final Approval" shall mean the entry of the Final Order and Judgment.

1.14     "Final Order and Judgment" shall mean a final order entered by the Court after the Fairness Hearing, identical in all material respects to that attached hereto as Exhibit F,  granting its approval of the Settlement.

1.15    "Float" shall mean all items mentioned in DOL Advisory Opinion 93-24A and Field Assistance Bulletin 2002-3, including but not limited to earnings resulting from the short-term investment of cash received from plans in the form of funds awaiting investment into separate accounts or awaiting disbursement to plans or their participants.

1.16    "Fund Agreement" shall mean any agreement (whether written or oral ) between a Fund Company, on the one hand, and Hartford Life (whether on its own behalf, on behalf of a Hartford Life separate account or otherwise) or any affiliate of Hartford Life, on the other hand, relating to investment of funds by retirement plans.

1.17    "Fund Company" shall mean a regulated investment company or a collective investment fund with a pool of assets that regularly sells and redeems its shares, as well as all agents, investment advisers, underwriters, distributors, trustees, and affiliates of any such company.

1.18    "Hartford Life Released Parties" shall mean Hartford Life and each of its present, past, and future predecessors, successors, parents, subsidiaries, affiliates, divisions, assigns, officers, directors, committees, employees, fiduciaries, administrators, actuaries, agents, insurers, representatives, attorneys, retained experts and trustees.

1.19    "Hartford Life's Counsel" shall mean Sidley Austin LLP and Jorden Burt LLP.

1.20    "Instruction Form" shall mean the form, identical in all material respects to the document attached hereto as Exhibit B, to be provided to and then returned by Monetary Relief Class Members pursuant to paragraph 2.5.

6

1.21    "Long Form Notice" shall mean the notice, identical in all material respects to that attached hereto as Exhibit A, to be provided directly to Monetary Relief Class Members pursuant to paragraph 2.5 and made available on the Settlement Website and the websites of Class Counsel following publication of the Summary Notice (*i.e.*, the Published Notice).

1.22    "Member of the Settlement Classes" shall mean any retirement plan that is a member of one or both Settlement Classes or any person acting or claiming to act on behalf of such a plan, or claiming through such a plan, including but not limited to trustees, sponsors, fiduciaries, administrators, beneficiaries, and participants.

1.23    "Monetary Relief Class" shall have the meaning ascribed to it in paragraph 2.1(a).

1.24    "Monetary Relief Class Member" shall mean any retirement plan that is a member of the Monetary Relief Class or any person acting or claiming to act on behalf of such a plan, or claiming through such a plan, including but not limited to trustees, sponsors, fiduciaries, administrators, beneficiaries, and participants.

1.25    "Overall Menu" shall mean all of the investment options Hartford Life makes available for selection by fiduciaries or sponsors of retirement plans generally at any given point in time, as distinct from the investment options selected by the fiduciaries or sponsor of any particular plan to offer to the plan's participants.

1.26    "Parties" shall mean Hartford Life, Phones Plus, and the Third-Party Defendants.

7

1.27    "Phones Plus's Counsel" shall mean Shepherd, Finkelman, Miller & Shah, LLP; Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, LLP; and Law Offices of Steven Ross, P.A.

1.28    "Plan of Allocation" shall mean the plan or formula of allocation of the Distributable Settlement Amount as approved by the Court, which plan or formula shall govern the distribution of the Distributable Settlement Amount, in the form attached hereto as Exhibit D.  Notwithstanding any other provision of this Agreement, any revisions by the Court or any appellate court or otherwise relating solely to the Plan of Allocation shall not operate to terminate or cancel or otherwise affect this Agreement, provided that any such revisions do not require Hartford Life or its affiliates to incur additional expenses and costs to provide data not already readily available on their computer systems.

1.29    "Preliminary Approval Order" shall mean an order entered by the Court preliminarily approving the Settlement pursuant to paragraph 2.1 identical in all material respects to that attached hereto as Exhibit E.

1.30    "Regulatory Change" shall have the meaning ascribed to it in paragraph 4.7(b).

1.31    "Released Claims" shall mean any and all claims, liabilities, demands, causes of action, or lawsuits, known or unknown (including Unknown Claims), whether legal, statutory, equitable or of any other type or form, whether under federal or state law, and whether brought in an individual, representative or any other capacity, that in any way relate to or arise out of or in connection with acts, omissions, facts, statements, matters, transactions, or occurrences that have been alleged or referred to or could have

8

been alleged in the Action, including in any court filing or any discovery request or response, including but not limited to (a) matters pertaining to or arising out of the solicitation, negotiation, or receipt of Revenue Sharing, (b) disclosures about Revenue Sharing, (c) assembly, substitution, addition, or removal of investment options from the Overall Menu, (d) Fund Agreements, (e) operation of any Separate Accounts, (f) matters pertaining to disclosure and retention of Float, (g) the reinvestment of dividends paid by any Fund Company, (h) sufficiency of the information about investment options, fees, and charges that is provided in connection with the operation of Hartford Life's retirement plan business, (i) contractual arrangements or conduct as a service provider relating to any Monetary Relief Class Member, including but not limited to any alleged rights, obligations, discretion or conduct by Hartford Life as a service provider claimed to give rise to fiduciary status on the part of Hartford Life with respect to Revenue Sharing, and (j) any actions arising out of or related to the negotiation or performance of the Settlement Agreement or matters relating thereto.

1.32   "Released Counterclaims" shall mean any and all claims, liabilities, demands, causes of action, or lawsuits, known or unknown (including Unknown Claims), whether legal, statutory, equitable or of any other type or form, whether under federal or state law, and whether brought in an individual, representative or any other capacity, that in any way relate to or arise out of acts, omissions, facts, statements, matters, transactions, or occurrences that have been alleged or referred to or could have been alleged in the Action.

1.33   "Released Third-Party Claims" shall mean any and all claims, liabilities, demands, causes of action, or lawsuits, known or unknown (including Unknown Claims),

9

whether legal, statutory, equitable or of any other type or form, whether under federal or state law, and whether brought in an individual, representative or any other capacity, that in any way relate to or arise out of acts, omissions, facts, statements, matters, transactions, or occurrences that have been alleged or referred to or could have been alleged in the Action, including in any court filing or any discovery request or response.

1.34    "Revenue Sharing" shall mean any compensation or consideration paid, directly or indirectly, by a Fund Company pursuant to a Fund Agreement.

1.35    "Separate Account" shall mean an account established by Hartford Life separating the assets funding the variable benefits for a group variable annuity contract or for a group funding agreement from the other assets of Hartford Life.

1.36    "Settlement" shall mean the compromise and settlement embodied in this Settlement Agreement.

1.37    "Settlement Administrator" shall mean The Garden City Group, Inc.

1.38    "Settlement Amount" shall mean the amount of $13,775,000.

1.39    "Settlement Classes" shall mean the classes composed of members of the Monetary Relief Class and the Structural Changes Class.

1.40    "Settlement Website" shall have the meaning ascribed to it in paragraph 2.8.

1.41    "Structural Changes Class" shall have the meaning ascribed to it in paragraph 2.1(b).

1.42    "Structural Changes Class Member" shall mean any retirement plan that is a member of the Structural Changes Class or any person acting or claiming to act on

behalf of such a plan, or claiming through such a plan, including but not limited to trustees, sponsors, fiduciaries, administrators, beneficiaries, and participants.

1.43    "Summary Notice" or "Published Notice" shall mean the notice described fully in paragraph 2.6 and a copy of which is attached as Exhibit C.

1.44    "Taxes" shall have the meaning ascribed to it in paragraph 3.1(g).

1.45    "Tax-Related Costs" shall have the meaning ascribed to it in paragraph 3.1(g).

1.46    "Third-Party Complaint" shall mean the Defendant/Third-Party Plaintiff Hartford Life Insurance Company's Amended Third-Party Complaint Against Thomas Sodemann and Robert Sodemann filed by Hartford Life against the Third-Party Defendants in the Action.

1.47    "Unknown Claims" shall mean any Released Claims which Phones Plus, a Member of the Settlement Classes and/or any of the other Parties does not know or suspect to exist in its favor at the time of the release of the Released Parties which, if known by it, might have affected its settlement with and release of the Released Parties, or might have affected its decision not to object to this settlement.  Without admitting that California law in any way applies to this Agreement, with respect to any and all Released Claims, the parties agree that, upon the Effective Date, Phones Plus, each Monetary Relief Class Member and all other Parties shall be deemed to have, and by operation of the Final Order and Judgment shall have, expressly waived the provisions, rights and benefits of California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER

11

FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
OR HER SETTLEMENT WITH THE DEBTOR.

Phones Plus, each Monetary Relief Class Member and all other Parties shall be deemed

to have, and by operation of the Final Order and Judgment shall have, expressly waived

all provisions, rights and benefits conferred by any law of any state or territory of the

United States, or principle of common law, which is similar, comparable or equivalent to

California Civil Code § 1542.  Phones Plus, a Monetary Relief Class Member and any of

the other Parties may later discover facts in addition to or different from those which it

now knows or believes to be true with respect to the subject matter of the Released

Claims, but Phones Plus, each Monetary Relief Class Member and all of the other Parties,

upon the Effective Date, shall be deemed to have, and by operation of the Final Order and

Judgment shall have, fully, finally, and forever settled and released any and all Released

Claims, known or unknown, suspected or unsuspected, contingent or non-contingent,

whether or not concealed or hidden, which now exist, or heretofore have existed, upon

any theory of law or equity now existing or coming into existence in the future, including

but not limited to conduct which is negligent, intentional, with or without malice, or a

breach of any duty, law or rule, without regard to the subsequent discovery or existence

of such different or additional facts.  Phones Plus, each Monetary Relief Class Member

and all of the other Parties shall be deemed by operation of the Final Order and Judgment

to have acknowledged that the foregoing waiver was separately bargained for and a key

element of the Settlement of which this release is a part.

## II.   MOTION FOR PRELIMINARY APPROVAL AND CERTIFICATION OF PROPOSED CLASSES FOR SETTLEMENT PURPOSES.

2.1   ***Motion for Preliminary Approval and Certification of Settlement Classes***.  As soon as practicable after execution of this Agreement, Phones Plus shall move the Court (i) for preliminary approval of the Settlement, including entry of an order identical in all material respects to the form of the Preliminary Approval Order attached as Exhibit E hereto, and (ii) for purposes of this Settlement only, conditional certification of the following two settlement classes:

### (a)   The Monetary Relief Class

The "Monetary Relief Class" will consist of all current and former trustees, sponsors, fiduciaries, and administrators of employee pension benefit plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA") subject to Internal Revenue Code ("IRC") §§ 401(a) or 401(k) for which employee pension benefit plans Hartford Life has acted as a service provider at any time from November 14, 2003 through the date that the Court enters the Preliminary Approval Order.

### (b)   The Structural Changes Class

The "Structural Changes Class" will consist of all trustees, sponsors, fiduciaries, and administrators of employee pension benefit plans covered by ERISA subject to IRC §§ 401(a) or 401(k) for which employee pension benefit plans Hartford Life acts as a service provider on the date that the Court enters the Preliminary Approval Order and all trustees, sponsors, fiduciaries, and administrators of employee pension benefit plans covered by ERISA subject to IRC §§ 401(a) or 401(k) for which employee pension benefit plans Hartford Life acts as a service provider after the date the Preliminary Approval Order is entered.

2.2   ***Basis for Certification of Settlement Classes***.  Plaintiff will seek certification of the Monetary Relief Class under Rule 23(b)(3), and will seek certification of the Structural Changes Class under Rule 23(b)(1).

2.3     ***Certification for Settlement Purposes Only***.  Hartford Life agrees not to take any position with respect to certification of the Settlement Classes only for the limited purpose of effectuating the Settlement Agreement; Hartford Life reserves all rights to object to the propriety of class certification in the Action in all other contexts and for all other purposes.

2.4     ***Vacating Settlement Certification and Reservation of Rights***.  The certification of the Settlement Classes shall be binding only with respect to the Settlement of the Action.  If the Settlement Agreement is terminated, or is reversed, vacated, or modified in any material respect by the Court or any other court, the certification of the Settlement Classes shall be vacated, the Action shall proceed as though the Settlement Classes had never been certified, and no reference to the prior Settlement Classes or any documents related thereto shall be made for any purpose.

2.5     ***Long Form Notice and Instruction Form***.

(a)     Within thirty (30) days of the entry of the Preliminary Approval Order, the Settlement Administrator shall send the Long Form Notice and the Instruction Form by first-class mail and electronic mail (if available) to the Monetary Relief Class Members.  The Long Form Notice and the Instruction Form will be sent to the last known electronic mail address (if any) and last known mailing address of the Monetary Relief Class Member, which mailing address will be updated through the National Change of Address ("NCOA") database by the Settlement Administrator before mailing (with all returned mail skip-traced and promptly re-mailed), and will be in the forms attached hereto as Exhibits A and B.

14

(b)     On the Instruction Form, Class Members will be given options concerning the manner in which they would like to receive payment from the Distributable Settlement Amount.  A Monetary Relief Class Member that has an in-force contract with Hartford Life will be given the option of receiving a payment in one of two forms:  (i) a check payable to the plan, or (ii) credits to the Hartford Life 401(a) or 401(k) accounts of the current participants in the plan.  A Monetary Relief Class Member that does not have an in-force contract with Hartford Life will be given the option of receiving a payment in one of two forms:  (i) a check payable to the plan, or (ii) a check made payable to its current 401(a) or 401(k) service provider.  A Monetary Relief Class Member that does not have an in-force 401(a) or 401(k) contract with Hartford Life also will be asked to provide the identity of the person or entity to whom a check should be made payable, and to confirm that such person or entity acts on behalf of the plan.

(c)     The Instruction Form must be returned to the Settlement Administrator within 120 days of the entry of the Preliminary Approval Order.  For each Monetary Relief Class Member that has not returned the Instruction Form within 75 days of the entry of the Preliminary Approval Order, the Settlement Administrator will send within fourteen (14)  days thereafter a post-card by electronic mail (if available) and regular mail to such Monetary Relief Class Member notifying them again of the deadline by which to submit the Instruction Form unless the previous mailings and communications to the Monetary Relief Class Member have been returned as undeliverable and the

Settlement Administrator is unable to identify a valid electronic mail or physical

mailing address through the exercise of reasonable and good faith efforts .

2.6    ***Published Notice to Both Classes.***  Between 37 and 44 days after the entry

of the Preliminary Approval Order, the Settlement Administrator shall cause to be

published once in the Legal Notices section of the *Wall Street Journal* a summary class

notice (with dimensions of 5.35" x 6" or 1/8 of a page) that provides the general details of

the Settlement Agreement and directs members of both the Monetary Relief Class and the

Structural Changes Class to the Settlement Website (the "Published Notice" or

"Summary Notice"), where the Long Form Notice, Settlement Agreement and its exhibits

all will be available.

2.7    ***Class Action Fairness Act Notice.***  Hartford Life shall comply with the

notice requirements of 28 U.S.C. § 1715 and shall file a notice confirming compliance

prior to the Fairness Hearing.

2.8    ***Settlement Website.***  Within thirty (30) days of the entry of the

Preliminary Approval Order, and no later than the first date that the mailing of the Long

Form Notice occurs, the Settlement Administrator shall establish a settlement website

that will contain the Long Form Notice and this Settlement Agreement and its exhibits

(the "Settlement Website").  The Long Form Notice and the Published Notice will

identify the web address of the Settlement Website.  The Settlement Website also will

contain an electronic version on the Instruction Form that can be completed on-line by

Monetary Class Members.

2.9    ***Settlement Information Line.***  Within thirty (30) days of the entry of the

Preliminary Approval Order, and no later than the first date of mailing of the Long Form

16

Notice, the Settlement Administrator shall establish a toll-free telephone number (the "Settlement Information Line") to which Settlement Class Members can direct questions about the settlement. The Settlement Administrator shall develop a question-and-answer-type script, with input and approval from Hartford Life and Phones Plus's Counsel, for the use of persons who answer calls to the Settlement Information Line.

2.10    *Rights of Exclusion*. Monetary Relief Class Members shall be permitted to opt out of the Monetary Relief Class (but not from the Structural Changes Class, to the extent they qualify as a Structural Changes Class Member), provided they comply with the requirements for doing so as set forth in the Preliminary Approval Order. Structural Changes Class Members shall not be permitted to exclude themselves from the Structural Changes Class.

2.11    *Right to Object*. Members of the Settlement Classes shall be permitted to object to the Settlement. Requirements for filing an objection shall be as set forth in the Preliminary Approval Order.

## III.    PAYMENTS TO THE MONETARY RELIEF CLASS.

3.1    *The Settlement Amount.*

(a)    Hartford Life shall cause the Administration Costs Amount and the Settlement Amount to be deposited by wire transfer into the Escrow Account within fourteen (14) days of entry of the Final Order and Judgment.

(i)    The Settlement Amount is to be used solely for the purposes set forth in paragraph 3.1(h) below.

(ii)    The Monetary Relief Class Members agree that the Settlement Amount shall not be considered "plan assets," as that term is defined in ERISA and the regulations promulgated pursuant to ERISA, until such time and in such amounts as they are disbursed from the Escrow Account and deposited into the trusts of the respective plans (or in the case of checks, until such checks are cashed by the plans).

(b)    Subject to Court approval and oversight, the Escrow Account will be controlled by the Settlement Administrator.  Neither Hartford Life, Plaintiff nor the Third-Party Defendants shall have any liability whatsoever for the acts or omissions of the Settlement Administrator appointed by the Court.  The Settlement Administrator shall not disburse the Settlement Amount, the Administration Costs Amount or any portion thereof except as provided for in this Agreement, by an order of the Court, or with prior written agreement of Hartford Life's Counsel and Phones Plus's Counsel.

(c)    The Settlement Administrator is authorized to execute transactions on behalf of the Monetary Relief Class Members that are consistent with the terms of this Agreement and with orders of the Court.

(d)    All funds held in the Escrow Account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until the funds are distributed in accordance with this Settlement Agreement.

(e)    The Settlement Administrator shall, to the extent practicable, invest the Settlement Amount and the Administration Costs Amount deposited

18

pursuant to paragraph 3.1(a) above in discrete and identifiable instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates. The Settlement Administrator shall maintain records identifying in detail each instrument in which the Settlement Amount, the Administration Costs Amount or any portion thereof has been invested, and identifying the precise location (including safe deposit box number) of each such instrument. Neither the Settlement Amount, the Administration Costs Amount nor any portion thereof shall be commingled with any other monies in any instruments. Any cash portion of the Settlement Amount or the Administration Costs Amount not invested in instruments of the type described in the first sentence of this paragraph shall be maintained by the Settlement Administrator, and not commingled with any other monies, at a bank account, which shall promptly be identified to Hartford Life and Phones Plus at either party's request by account number and any other identifying information. The Settlement Administrator and Monetary Relief Class Members shall bear all risks related to investment of the Settlement Amount.

(f)    The Escrow Account is intended to be a "Qualified Settlement Fund" within the meaning of Treasury Regulation § 1.468B-1. The Settlement Administrator, as administrator of the Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be solely responsible for filing tax returns for the Escrow Account and paying from the Escrow Account any Taxes owed with respect to the Escrow Account. Hartford Life agrees to

19

provide the Settlement Administrator the statement described in Treasury Regulation §1.468B-3(e). Neither Hartford Life, Hartford Life's Counsel, Plaintiff, Plaintiff's Counsel, the Third Party Defendants nor the Third Party Defendants' Counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any taxes with respect to the Escrow Account.

(g)    All (i) taxes on the income of the Escrow Account ("Taxes"), and (ii) expenses and costs incurred in connection with the taxation of the Escrow Account (including, without limitation, expenses of tax attorneys and accountants) ("Tax-Related Costs") shall be timely paid by the Settlement Administrator out of the Escrow Account.

(h)    The Settlement Amount, together with any interest accrued thereon, will be used to pay the following amounts associated with the Settlement:

(i)    Compensation to Monetary Relief Class Members determined in accordance with paragraph 3.2;

(ii)    Any Case Contribution Fee (as defined in paragraph 7.1 below) approved by the Court;

(iii)    All Attorneys' Fees approved by the Court;

(iv)    All Excess Administration Costs; and

(v)    Taxes and Tax-Related Costs.

(i)    For every Monetary Relief Class Member that fails to timely submit a properly completed Instruction Form, in accordance with the Plan of

20

Allocation, there shall be a proportional increase in the Settlement Amount allocated to those Monetary Relief Class Members that timely submitted a properly completed Instruction Form.

3.2     ***Distribution to Monetary Relief Class Members.***

(a)     The money remaining from the Settlement Amount, including any accrued interest thereon, after the payment of any approved Case Contribution Fee, approved Attorneys' Fees, any Excess Administration Costs, and Taxes and Tax-Related Costs, shall be available for distribution to Monetary Relief Class Members (the "Distributable Settlement Amount").

(b)     The Distributable Settlement Amount will be divided among Monetary Relief Class Members in accordance with the Plan of Allocation attached hereto as Exhibit D or such other allocation plan as may be ordered by the Court.

(c)     The Settlement Administrator shall pay the Distributable Settlement Amount to or for the benefit of Monetary Relief Class Members in accordance with the directions of the Monetary Relief Class Members provided on the Instruction Form.  The Settlement Administrator shall have no obligation to send any payment to a Monetary Relief Class Member that fails timely to return a fully-completed Instruction Form.

(d)     The Settlement Administrator shall disburse the Distributable Settlement Amount as promptly as possible after the deadline for the completion

and submission of all Instruction Forms (but not before the Effective Date) and, in any event, no later than 270 days after the Effective Date.

(e) Monetary Relief Class Members that have elected to receive checks must cash those checks within ninety (90) days of issuance. If they do not do so, the checks will be void. This limitation shall be printed on the face of each check.

3.3 *Treatment of Undistributed Funds and Uncashed Checks*. Any funds associated with checks that are not cashed within ninety (90) days of issuance, and any funds that cannot be distributed to Monetary Relief Class Members for any other reason, together with any interest earned on them, and after the payment of any applicable taxes by the Escrow Agent, shall be donated to an appropriate charity or charities pursuant to a *cy* pres award of the Court. No later than 45 days following the Effective Date, Plaintiff shall make any application for a *cy* pres award of any such funds to the Court. Plaintiff will meet and confer with Hartford Life regarding the proposed recipients of any *cy pres* awards before making such application and Hartford Life shall have the right to object to any proposed *cy pres* recipient if it does not believe that such a recipient is appropriate to receive such an award.

3.4 *Administration Costs Amount.*

(a) The Administration Costs Amount, together with any accrued interest thereon, shall be used by the Settlement Administrator solely to pay for Administration Costs. Beginning sixty (60) days after the entry of the Preliminary Approval Order and on every thirty (30) days thereafter, the Settlement Administrator shall provide Hartford Life and Phones Plus with a detailed accounting any administrative costs expended to

22

date, as well as the amount of interest accrued on the Administration Costs Amount and the interest accrued on the Settlement Amount

(b)     No later than 45 days after the contribution to the *cy* pres charities described in section 3.3, the Settlement Administrator shall return to Hartford Life any remaining portion of the Administration Costs Amount which has not been expended, together with any accrued interest and an accounting of all portions of the Administration Costs Amount expended.

3.5     ***Entire Monetary Obligation.***  In no event, and notwithstanding anything else in this Settlement Agreement (except with respect to any obligations it may be required to incur with respect to implementation of the structural changes described in section IV below), shall Hartford Life be required to pay any amounts other than the Settlement Amount and the Administration Costs Amount.  It is understood and agreed that Hartford Life's monetary obligations under this Settlement Agreement will be fully discharged by paying the amounts specified in paragraphs 3.1(a) above, and that Hartford Life shall have no other monetary obligations, or obligations to make any other payments under this Agreement or otherwise.

## IV.    STRUCTURAL CHANGES.

4.1     ***Changes to Business Practices.***  As part of the Settlement of this Action, Hartford Life agrees to make certain specified changes to its business practices as set forth in the remaining paragraphs of this section 4.  It is understood and agreed by the Parties that by making the changes described in section 4, Hartford Life does not agree with or in any way admit, and shall not be deemed to agree with or in any way admit, (a) any theories of Phones Plus or Phones Plus's Counsel regarding Hartford Life's liability

23

in the Action, including without limitation that Hartford Life has or exercises any discretion or control with respect to the business practices described in section 4, or possesses any fiduciary status or obligations in relation thereto, or (b) that any of its prior or existing business practices violate any federal or state laws, statutes, or regulations. Hartford Life is agreeing to make the changes described in section 4 solely to resolve disputes and provide agreed clarity on a going-forward basis as to the propriety of its future conduct and its future receipt of Revenue Sharing.

    4.2    ***Revisions to the Contracting Documents***.  Subject to the provisions of paragraphs 4.5 and 4.7, Hartford Life will implement the following changes to its contracting documents:

    (a)    ***Qualified Retirement Plan Basic Plan Document***.  Within sixty (60) days of Preliminary Approval, Hartford Life will cease offering to plans a Qualified Retirement Plan Basic Plan Document that contains the following language (which was found in section 7.22(D) (Permissible Investments) of the Qualified Retirement Plan Basic Plan Document offered to Phones Plus): "Notwithstanding the preceding sentence, the Prototype Sponsor may, as a condition of making the Plan available to the Adopting Employer, limit the types of property in which the assets of the Plan may be invested."  With respect to any customer which has adopted a Qualified Retirement Plan Basic Plan Document containing this language, Hartford Life agrees that, beginning on the date of Preliminary Approval, it will not enforce this language in any of its Qualified Retirement Plan Basic Plan Documents as a means to restrict a plan's selection of investment options from the Overall Menu.  The Parties acknowledge that it is

Hartford Life's position that it has not used the above-quoted language at any time in the past as a means to restrict a plan's selection of investment options from the Overall Menu or otherwise.

       (b)     ***Group Annuity Contract and Group Funding Agreement***.

          (i)     **Applicability.**  The provisions of this paragraph 4.2(b), including all subparagraphs, will apply to both the Separate Account Rider attached to and incorporated into the Group Annuity Contract, and any similar language that appears directly in either the Group Annuity Contract or the Group Funding Agreement.

          (ii)     **Mode of Investment.**  Section B.2. (Mode of Investment) of the Separate Account Rider currently provides as follows:  "In addition, The Hartford may periodically invest such assets in short term money market instruments, cash, or cash equivalents."  Beginning on the date of Preliminary Approval, Hartford Life agrees that it will not enforce the above-quoted sentence in any of its Separate Account Riders, without receiving the instruction and consent of a plan.

          (iii)     **Fund Availability.**  Within sixty (60) days of the Effective Date, Hartford Life will commence the process of seeking approval from the relevant Departments of Insurance to revise the portion of its Group Annuity Contract and Group Funding Agreement that addresses mutual fund availability to make clear Hartford Life will not delete or substitute an investment option chosen by a plan from the Overall Menu and offered

25

to that plan's participants, unless the investment option is no longer
available either (a) due to a change in applicable law or (b) due to a
change or event initiated by a Fund Company, including but not limited to,
a merger, liquidation or closure.  Hartford Life will begin using any such
new Group Annuity Contract and Group Funding Agreement for
customers who purchase such products as soon as practicable after receipt
of approvals from the Departments of Insurance.  Beginning on the date of
Preliminary Approval, Hartford Life agrees that it will not enforce any
provision of its Separate Account Rider that is inconsistent with the
foregoing revisions.  Each Structural Changes Class Member shall be
deemed, as of the date of Preliminary Approval, to have authorized in
advance and directed discontinuance of an investment option that becomes
unavailable for investment for any of the reasons set forth above.

4.3     ***Dividend Reinvestment.***  All Structural Changes Class Members hereby
direct, and shall be deemed to have directed as of the Preliminary Approval Date, that all
dividends and capital gains distributions payable on the shares of any Fund shall be paid
in the form of additional shares of the Fund, and Hartford Life agrees that it will follow
such direction.  All account opening documents for any Structural Changes Class
Member who or which is not a customer of Hartford Life on the date of Final Approval
but who or which later becomes a customer shall contain a disclosure that all dividends
and capital gains distributions payable on the shares of any Fund are paid in the form of
additional shares of that Fund, if available, and an instruction from the customer that all

such dividends and capital gains distributions should be received in such form so long as available.

4.4 **_Revisions to Hartford Life's Disclosures._**

(a) **_Changes in Disclosure Documents and Related Materials._** Hartford Life will include language in its disclosure documents or related materials supplied to new customers, or newly supplied to existing customers, which discloses that all of the mutual fund investment options available on the Overall Menu make Revenue Sharing payments to Hartford Life or an affiliate, so long as such a statement remains true. Notwithstanding the foregoing, Hartford Life retains the right to modify any such disclosure in its disclosure documents or related materials should any funds currently available on its Overall Menu cease paying Revenue Sharing or should Hartford Life add new funds to its current Overall Menu that do not pay Revenue Sharing.

(b) **_Disclosure of Revenue Sharing Rates._** Hartford Life will make available to all Structural Changes Class Members with in-force contracts a list of all investment options offered for such plan's product and the Revenue Sharing rates paid by the relevant Fund Company.

(c) **_Disclosure of Revenue Sharing Amounts and Information._** Starting within a year of the Effective Date, and at least once every twelve months thereafter, Hartford Life will make available to each Structural Changes Class Member that is a then-current customer of Hartford Life the following information: (i) the Revenue Sharing rate for the investment options offered by the Structural Changes Class Member to its participants; (ii) the published

27

expense ratio for the investment options offered by the Structural Changes Class

Member to its participants; (iii) an estimate of the dollar amount of Revenue

Sharing received by Hartford Life in relation to the investments of the Structural

Changes Class Member (based on an estimated dollar amount of a plan's account

balance in each applicable investment option); (iv) a note explaining how the

estimate described in subparagraph 4.4(c)(iii) was calculated; (v) a narrative

description of Revenue Sharing; and (vi) a listing of the Separate Account fee (in

percentage and dollar terms), the annual maintenance fee (in dollar terms), and the

per-participant fee (in dollars per participant terms).  Hartford Life will notify

each such plan by either electronic or first class mail that this information has

been made available and the communication shall describe the information being

made available.

4.5    Unless otherwise specified in this Section 4, Hartford Life agrees that it

will begin to implement the changes set forth in this Section 4 within sixty (60) days of

the Effective Date.  Hartford Life further agrees that it will make diligent and good faith

efforts to ensure that the implementation of the changes set forth in this Section 4 is

concluded within six (6) months of the Effective Date.

4.6    Subject to the provisions of paragraph 4.7, Hartford Life agrees that the

actions it undertakes pursuant to this Section 4 will remain in effect for a minimum of

five years from the Effective Date of this Agreement.

4.7     *Changes in Applicable Law.*

(a)     Notwithstanding anything in this Section 4 to the contrary, Hartford Life shall not be required to comply with any provision of this Section 4 should any change in applicable law render such compliance unlawful.

(b)     Notwithstanding anything in this Section 4 to the contrary, Hartford Life shall have the right, at its sole option, to modify any of the contractual, disclosure or other changes described in Section 4 if Congress, the Department of Labor, or any other applicable regulatory or self-regulatory body imposes different disclosure or other substantive requirements, whether through statute, regulation, official guidance, or otherwise (a "Regulatory Change"); provided, however, that, in the event of a Regulatory Change that affects only certain of the provisions of this Section 4, Hartford Life shall be required to continue to comply with all other provisions of Section 4 that are not affected by the Regulatory Change.  In the event of a Regulatory Change, Hartford Life's compliance with the Regulatory Change shall be deemed compliance with the terms of this Agreement to the extent that the Regulatory Change is inconsistent with the Structural Changes outlined in Section 4.

# V.     SETTLEMENT ADMINISTRATION.

5.1     The Settlement Administrator shall administer the Settlement subject to the supervision of Phones Plus's Counsel and the Court as circumstances may require.

5.2     It is understood and agreed by the Parties that the proposed Plan of

Allocation is not part of this Agreement and is to be considered by the Court separately

from the Court's consideration of the fairness, reasonableness, and adequacy of the

Settlement, and any order or proceeding relating to the Plan of Allocation shall not

operate to terminate or cancel this Agreement or affect the finality of the Court's Final

Order and Judgment approving the Settlement or any other orders entered pursuant to the

Agreement.  Notwithstanding the foregoing, or anything else in this Agreement, any

revisions to the Plan of Allocation that would require Hartford Life or its affiliates to

incur additional expense or costs or to provide data not already readily available on their

computer systems shall be deemed a material alteration of this Agreement, and entitle

Hartford Life, at its election, to terminate the Agreement.

5.3     Hartford Life and Hartford Life's Counsel shall have no responsibility for,

interest in, or liability whatsoever with respect to:

(a)     any act, omission or determination of the Settlement

Administrator, Phones Plus's Counsel or designees or agents of Phones Plus's

Counsel or the Settlement Administrator;

(b)     any act, omission or determination of Phones Plus's Counsel or

their designees or agents in connection with the administration of the Settlement;

(c)     the management, investment, or distribution of the Settlement

Amount or the Distributable Settlement Amount; or

30

(d)     the determination, administration, calculation, or payment of any claims asserted against the Settlement Amount or the Distributable Settlement Amount.

5.4     The Settlement Administrator shall provide to the counsel for Hartford Life and Phones Plus, no less than monthly, a full accounting of all expenditures made in connection with the Settlement, including any expenditures from the Administration Costs Amount or constituting Excess Administration Costs, or distributions from the Settlement Amount.

5.5     The Settlement Administrator shall provide such information as may be reasonably requested by Hartford Life or Phones Plus to implement any distribution of funds under this Agreement.

## VI.   RELEASES AND COVENANTS.

6.1     *Releases*.  Upon the Effective Date:

(a)     the Monetary Relief Class Members, on behalf of themselves, their predecessors, successors and assigns, shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged, and shall be forever enjoined from the prosecution of, each and every Released Claim, whether arising before or after the date of the Final Order and Judgment, against any and all of the Hartford Life Released Parties, provided, however, that nothing herein is meant to bar any claim seeking enforcement of this Agreement or court orders relating to it;

31

(b)    Hartford Life, on behalf of itself, its predecessors, successors and assigns, shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged, and shall be forever enjoined from the prosecution of, each and every Released Counterclaim, arising on or prior to the date of the Final Order and Judgment, against Phones Plus and the Members of the Settlement Classes, provided, however, that nothing herein is meant to bar any claim seeking enforcement of this Agreement or court orders relating to it; and

(c)    Hartford Life, on behalf of itself, its predecessors, successors and assigns, shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged, and shall be forever enjoined from the prosecution of, each and every Released Third-Party Claim, arising on or prior to the date of the Final Order and Judgment, against the Third-Party Defendants and the trustees and fiduciaries of the Members of the Settlement Class, provided, however, that nothing herein is meant to bar any claim seeking enforcement of this Agreement or court orders relating to it.

6.2    *Indemnification of Attorneys' Fees and Expenses for Breach of Release.*

(a)    If a Monetary Relief Class Member or Structural Changes Class Member brings a claim or action that is determined to encompass either a Released Claim or a claim subject to the covenant not to sue set forth in paragraph 6.3 below, that Class Member shall indemnify Hartford Life, Phones Plus and the

Third Party Defendants for any attorneys' fees, expenses, or other costs incurred by them in defending any such action.

(b)    Hartford Life shall indemnify Phones Plus and the Members of the Settlement Class for any attorneys' fees, expenses, or other costs incurred by them in defending any claim or action brought by Hartford Life that is determined to encompass a Released Counterclaim.

(c)    Hartford Life shall indemnify the Third-Party Defendants and the trustees and fiduciaries of the Members of the Settlement Class for any attorneys' fees, expenses, or other costs incurred by them in defending any claim or action brought by Hartford Life that is determined to encompass a Released Third-Party Claim.

6.3    *Covenant Not to Sue*.  The Parties recognize that the changes to Hartford Life's business practices described in section 4 of this Settlement Agreement are designed to result in a uniform set of standard business practices, to the benefit of the Structural Changes Class Members; will affect the way that Hartford Life generally operates its retirement plan business; and have been designed to provide future certainty, for the benefit of both Hartford Life and Structural Changes Class Members, so as to eliminate any potential future controversies over the matters involved in this Action.  In order to ensure that Hartford Life's business practices are not subject to future potentially inconsistent challenges or standards, and in consideration for Hartford Life's willingness to make the changes, the Structural Changes Class Members agree that, from the date of Preliminary Approval and for as long as Hartford Life continues to comply with Section 4 above, none of them will institute, maintain, prosecute, sue, or assert in any action or

proceeding in any federal or state forum any claim, based on conduct subsequent to, or

any liability or damages claimed to arise or occur after, the date of Preliminary Approval,

with respect to (a) matters pertaining to or arising out of the solicitation, negotiation, or

receipt of Revenue Sharing, (b) disclosures about Revenue Sharing, (c) assembly,

substitution, addition, or removal of investment options from the Overall Menu, (d) Fund

Agreements, (e) operation of any Separate Accounts, (f) matters pertaining to disclosure

and retention of Float, (g) the reinvestment of dividends paid by any Fund Company, (h)

sufficiency of the information about investment options, fees, and charges that is

provided in connection with the operation of Hartford Life's retirement plan business, (i)

contractual arrangements or conduct as a service provider relating to any Structural

Changes Class Member, including but not limited to any alleged rights, obligations,

discretion or conduct by Hartford Life as a service provider claimed to give rise to

fiduciary status on the part of Hartford Life with respect to Revenue Sharing, and (j) any

actions arising out of or related to the negotiation or performance of the Settlement

Agreement or matters relating thereto.

## VII.    CASE CONTRIBUTION FEE TO PLAINTIFF.

7.1     Phones Plus intends to seek an Case Contribution Fee not to exceed the

amount of $25,000, which will be subject to Court approval (the "Case Contribution

Fee"). Hartford Life will not oppose or take any position with respect to the Case

Contribution Fee up to that amount.  Any Case Contribution Fee approved by the Court

will be paid within thirty days of the Effective Date.  The Case Contribution Fee shall be

paid by the Settlement Administrator solely out of the Settlement Amount and shall be

deducted (to the extent approved by the Court) from the Settlement Amount on or after the Effective Date and prior to the distribution to the Monetary Relief Class Members.

7.2    Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of any application for the Case Contribution Fee are to be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the Case Contribution Fee, or any appeal of any order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

## VIII.   ATTORNEYS' FEES.

8.1    Phones Plus's Counsel intends to submit a Fee and Expense Application, seeking an award based on the value of the Settlement and the work performed in an amount not to exceed $6,862,500.  Hartford Life will take no position with respect to the Fee and Expense Application up to that amount.  Any amount awarded by the Court in response to such Fee and Expense Application shall be paid  by the Settlement Administrator solely out of the Settlement Amount and shall be deducted (to the extent approved by the Court) from the Settlement Amount and paid to Phones Plus's Counsel within fourteen (14) days of entry of the Effective Date.  The amount awarded by the Court shall earn interest from the date that the Settlement Amount is deposited into the Escrow Account.

8.2    Notwithstanding any other provision of this Agreement to the contrary, the procedure for and the allowance or disallowance (in whole or in part) by the Court of the Fee and Expense Application to be paid out of the Settlement Amount are to be

considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to the award of Attorneys' Fees, or any appeal of any order relating thereto, shall not operate to terminate or cancel this Agreement or be deemed material thereto.

## IX. CONTINGENCIES, EFFECT OF DISAPPROVAL OR TERMINATION OF SETTLEMENT.

9.1     If the Court or, in the event of an appeal, any appellate court refuses to approve, or modifies any material aspect of this Agreement or the proposed Preliminary Approval Order or Final Order and Judgment, including but not limited to any judicial findings included therein, any of Hartford Life, Phones Plus, or the Third-Party Defendants may terminate this Agreement and the Settlement as set forth below.

9.2     This Agreement and the Settlement shall terminate and be cancelled if within ten (10) business days after any of the following events, one of the Parties provides written notification of an election to terminate the Settlement:

(a)     The Court declines to provide preliminary approval of this Agreement, or declines to enter or materially modifies the contents of the Preliminary Approval Order attached hereto as Exhibit E;

(b)     The Court declines to provide final approval of this Agreement, or declines to enter or materially modifies the contents of the Final Order and Judgment attached hereto as Exhibit F;

(c)     The Court's Final Order and Judgment is vacated, reversed or modified in any material respect on any appeal or other review or in a collateral proceeding occurring prior to the Effective Date; or

(d)    The Effective Date does not occur for some other reason.

For purposes of this Agreement and this paragraph 9.2, no order of the Court, or modification or reversal on appeal of any order of the Court, solely concerning the Plan of Allocation (except as set forth in the last sentence of paragraph 5.2), the administration of the settlement or the persons performing such administrative functions, or the amount, advancement or award of any Attorneys' Fees or Case Contribution Fee shall constitute grounds for cancellation or termination of the Agreement.

9.3    This Agreement and the Settlement shall terminate and be cancelled if (a), Monetary Relief Class Members representing in the aggregate two percent or more of the Distributable Settlement Amount according to the Plan of Allocation opt out of the Settlement, and (b) within ten business days after receiving written notice from the Settlement Administrator of such opt-outs and the percentage of the Distributable Settlement Amount that they represent, Hartford Life provides written notification of its election to terminate the Settlement.

9.4    This Agreement and the Settlement shall terminate and be cancelled if (a) any federal or state authorities object to or request material modifications to the Agreement, and (b) within ten (10) business days of receiving any such objection or request, Hartford Life provides written notice of its election to terminate the Settlement.

9.5    If for any reason this Agreement is terminated or fails to become effective,

37

then:

    (a)    The Settling Parties shall be deemed to have reverted to their respective status in the Action as of September 1, 2009, which shall then resume proceedings in the Court, and, except as otherwise expressly provided in this Settlement Agreement, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered.

    (b)    In addition to this Section 9 and its provisions, paragraphs 2.3 and 2.4 and Section 10 shall survive any termination of this Settlement.

## X.    NO ADMISSION OF WRONGDOING.

10.1    Hartford Life, Phones Plus and the Third Party Defendants vigorously denied, and continue to deny, that they committed any violation of ERISA or other laws, and have vigorously denied and continues to deny all allegations of wrongdoing or liability whatsoever with respect to the Released Claims, including any and all claims of wrongdoing or liability alleged or asserted in the Action. The Parties are agreeing to this Settlement solely because it provides substantial and meaningful benefits the Members of the Settlement Classes and will eliminate the substantial burden, expense and uncertainties of further litigation and the concomitant distraction of resources and efforts from its business. This Agreement, and any of its terms, any agreement or order relating thereto, and any payment or consideration provided for herein, is not and shall not be construed as an admission by Hartford Life, any of the Hartford Life Released Parties, Phones Plus or the Third Party Defendants of any fault, wrongdoing, or liability whatsoever, or an admission by Phones Plus of any lack of merit of its claims against Hartford Life. This Agreement, and any of its terms, and any agreement or order relating

38

thereto, shall not be offered by any party to be received in evidence in any civil, criminal, administrative, or other proceeding, or utilized in any manner as a presumption, a concession, or an admission of any fault, wrongdoing, or liability on the part of Hartford Life, any Hartford Life Released Parties, Phones Plus or the Third Party Defendants. However, nothing contained in this paragraph shall prevent this Agreement (or any agreement or order relating thereto) from being used, offered, or received in evidence in any proceeding to approve, enforce, or otherwise effectuate the Settlement (or any agreement or order relating thereto) or the Final Order and Judgment. This Agreement may be filed and used in other proceedings, where relevant, to demonstrate the fact of its existence and of this Settlement, including but not limited to the Hartford Life Released Parties filing the Agreement and/or the Final Order and Judgment in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, waiver, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

## XI.    MISCELLANEOUS.

11.1    *No Disparaging Statements.*   Other than as required by law, Hartford Life, Hartford Life's Counsel, Phones Plus, Phones Plus's Counsel, Third-Party Defendants and Third-Party Defendants' Counsel shall make no statements to the press or make any other public statements describing this Settlement that disparage any Party or accuse any Party of wrongdoing.   The Parties will agree upon a joint statement to utilize in response to any inquiries from the press or otherwise regarding this Settlement.

11.2    *Duty to Cooperate*.   The Parties promise to cooperate in good faith and to take all actions reasonably necessary to effectuate this Agreement.  The Parties further

agree that if before the Effective Date any issues regarding interpretation or implementation of, or compliance with, this Settlement Agreement arise among the Parties and such issues cannot be resolved by the Parties, that such issues shall be mediated before Eric D. Green of Resolutions, LLC, who will make a non-binding recommendation to the Court.

11.3    **_Entire Agreement_**.  This Agreement is the entire agreement among the Parties and it supersedes any prior agreements, written or oral, including any Proposed Settlement Term Sheet exchanged by the Parties.  This Settlement Agreement cannot be altered, modified or amended except through a writing executed by all Parties.

11.4    **_Construction of Agreement_**.  This Settlement Agreement shall be construed to effectuate the intent of the Parties to resolve all disputes encompassed by the Agreement.  All Parties have participated in the drafting of this Agreement, and any ambiguity should not be resolved by virtue of a presumption in favor of any Party.  The Settlement Agreement was reached at arm's-length by Parties represented by counsel.

11.5    **_Executed in Counterparts_**.  This Agreement may be executed in counterparts, all of which shall be considered the same as if a single document had been executed, and shall become effective when such counterparts have been signed by each of the Parties and delivered to each of the other Parties.

11.6    **_Notices_**.  Unless otherwise provided herein, any notice, request, instruction, application for Court approval, or application for Court order sought in connection with the Agreement shall be in writing and delivered personally or sent by certified mail or overnight delivery service, postage pre-paid, with copies by facsimile or

e-mail to the attention of Phones Plus's Counsel, Hartford Life's Counsel, or the Third-Party Defendants' counsel (as well as to any other recipients that a court may specify).

As of the date hereof, the respective representatives are as follows:

|  |  |
|---|---|
| For Hartford Life: | **David F. Graham**<br>Sidley Austin LLP<br>1 South Dearborn St.<br>Chicago, IL 60603<br>Telephone: (312) 853-7000<br>Fax: (312) 853-7036<br>dgraham@sidley.com |
| For Phones Plus: | **James E. Miller**<br>Shepherd, Finkelman, Miller &<br>Shah, LLP<br>65 Main Street<br>Chester, CT 06412<br>Telephone: (860) 526-1100<br>Fax: (860) 526-1120<br>jmiller@sfmslaw.com |
| For the Third-Party<br>Defendants: | **David V. Meany**<br>Dewitt Ross & Stevens S.C.<br>Metro Milwaukee Office<br>13935 Bishop's Drive, Suit 300<br>Brookfield, WI 53005<br>Telephone: (262) 754-2840<br>Fax: (262) 754-2845<br>dvm@dewittross.com |

**11.7   *Extensions of Time.*** The Parties may agree, subject to the approval of a court where required, to reasonable extensions of time to carry out the provisions of the Agreement.

**11.8   *Governing Law.*** This Agreement shall be governed by and construed in accordance with the laws of Connecticut without giving effect to any conflict of law

41

provisions that would cause the application of the laws of any jurisdiction other than Connecticut.

11.9 ***Expenses.*** Except as otherwise expressly set forth herein, each Party hereto will pay all fees, costs and expenses incurred in connection with the Action, including fees, costs and expenses incident to its or his negotiation, preparation or compliance with this Agreement, and including any fees, expenses and disbursements of its counsel, accountants, and other advisors. Nothing in this Agreement shall require Hartford Life to pay any monies other than as expressly provided herein.

11.10 ***Retention of Jurisdiction.*** The Parties shall request that the Court retain jurisdiction of this matter after the Effective Date and enter such orders as are necessary or appropriate to effectuate the terms of the Agreement.

**Agreed to on behalf of Phones Plus, Inc., the Phones Plus Retirement and Savings Plan, and the Settlement Classes**

Dated: February 9, 2010

By: _____
    Phones Plus

_____
Attorney

**Agreed to on behalf of Hartford Life Insurance Company**

Dated: February ___, 2010

By: _____
    Hartford Life

_____
Attorney

**Agreed to by Robert Sodemann**

Dated: February 9, 2010

By: _____
    Robert Sodemann

_____
Attorney

**Agreed to by Thomas Sodemann**

Dated: February 9, 2010

By: _____
    Thomas Sodemann

_____
Attorney

**Agreed to on behalf of Phones Plus, Inc., the Phones Plus Retirement and Savings Plan, and the Settlement Classes**

Dated: February ___, 2010                 By: _____
                                               Phones Plus


                                               _____
                                               Attorney


**Agreed to on behalf of Hartford Life Insurance Company**

Dated: February _11_, 2010                 By: _Rochelle S Cummings_____
                                               Hartford Life
                                               Rochelle   S.   Cummings
                                               Vice President & Director of Life
                                               Litigation
                                               _____
                                               Attorney


**Agreed to by Robert Sodemann**

Dated: February ___, 2010                  By: _____
                                               Robert Sodemann


                                               _____
                                               Attorney


**Agreed to by Thomas Sodemann**

Dated: February ___, 2010                  By: _____
                                               Thomas Sodemann


                                               _____
                                               Attorney

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

**If you are the current or former trustee, sponsor, fiduciary, or administrator of an
employee pension plan covered by the Employee Retirement Income Security Act
("ERISA") subject to Internal Revenue Code sections 401(a) or 401(k), and if Hartford Life
Insurance Company has acted as a service provider for the plan at any time from
November 14, 2003 through [the date that the Court enters the Preliminary Approval
Order], you may benefit from this class action Settlement.**

*The case is called Phones Plus, Inc. v. Hartford Life Insurance Company,
No. 3:06-cv-01835 (D. Conn.).
A Court authorized this notice. This is not a solicitation from a lawyer.*

This Notice advises you of a Settlement (the "Settlement") of a lawsuit against Hartford Life
Insurance Company ("Hartford Life"). In the lawsuit, Plaintiff Phones Plus, Inc., as the Plan
Administrator of the Phones Plus Retirement Savings Plan, claimed that Hartford Life breached
its fiduciary duties under ERISA and engaged in prohibited transactions through "revenue
sharing" arrangements with mutual fund companies. You should read this entire Notice carefully
because your legal rights may be affected whether you act or not.

Your rights and options, and the deadline for you to object if you are opposed to the Settlement,
are explained in this Notice.

# WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ............................................................................................**1**

1. Why did I get this notice? .............................................................1
2. What is this lawsuit about? ...........................................................1
3. What is a class action lawsuit? .....................................................1
4. Why is there a Settlement? ...........................................................2
5. How do I get more information about the Settlement? ..............2
6. Who will administer the Settlement? ...........................................2

**THE SETTLEMENT BENEFITS – WHAT YOU MAY GET** .............................**2**

7. What does the Settlement provide? ..............................................2
8. How will I benefit from the Settlement? ......................................3
9. How do I submit a claim for compensation? ...............................3
10. What is the Plaintiff receiving from the Settlement? ..................3

**THE SETTLEMENT BENEFITS – WHAT YOU GIVE UP** ............................**4**

11. What do I give up by participating in the Settlement? ..............4

**THE LAWYERS REPRESENTING YOU** ...............................................**4**

12. Do I have a lawyer in this case? ..................................................4
13. How will the lawyers (Class Counsel) be paid? ..........................4

**OPTING OUT OF THE SETTLEMENT** .................................................**4**

14. Can I exclude myself from the class? ..........................................4
15. How do I exclude myself from the Monetary Relief Class? ........5

**OBJECTING TO THE SETTLEMENT** ..................................................**5**

16. What does it mean to object? ........................................................5
17. What is the procedure for objecting to the Settlement? .............5

**THE COURT'S FAIRNESS HEARING** ..................................................**6**

18. When/where will the Court decide whether to approve the Settlement? ..................................................................................6
19. Do I have to attend the Fairness Hearing? ................................6
20. May I speak at the Fairness Hearing? .........................................6

**IF YOU DO NOTHING** ....................................................................**6**

21. What happens if I do nothing at all? ...........................................6

## BASIC INFORMATION

### 1.   Why did I get this Notice?

You have been identified as a trustee, sponsor, fiduciary or administrator of a 401(k) or 401(a) plan that now contracts or previously contracted with Hartford Life for certain administrative services. This notice is being sent to current and former trustees, sponsors, fiduciaries, and administrators of employee pension benefit plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA") subject to Internal Revenue Code ("IRC") sections 401(a) or 401(k) that used Hartford Life as a service provider at any time from November 14, 2003 through [the date that the Court enters the Preliminary Approval Order].

You are receiving this Notice because you have a right to know about a proposed Settlement of a class action lawsuit in which you are a class member before the Court decides whether to approve the Settlement.

Everyone who meets the following description is a class member: all current and former trustees, sponsors, fiduciaries, and administrators of employee pension benefit plans covered by ERISA subject to IRC sections 401(a) or 401(k) for which employee pension benefit plans Hartford Life has acted as a service provider at any time from November 14, 2003 through [the date that the Court enters the Preliminary Approval Order]. This class is referred to in the Settlement Agreement as the "Monetary Relief Class." There is another class defined in the Settlement Agreement as the "Structural Changes Class." For additional information about the Structural Changes Class, please review the Settlement Agreement.

This Notice summarizes the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The lawsuit is pending in the United States District Court for the District of Connecticut. It is known as *Phones Plus, Inc. v. Hartford Life Insurance Company*, No. 3:06-cv-01835 (AVC). Phones Plus brought the lawsuit against Hartford Life.

### 2.   What is this lawsuit about?

On November 14, 2006, Phones Plus filed a lawsuit against Hartford Life, alleging that Hartford Life had breached fiduciary duties under ERISA and engaged in prohibited transactions under ERISA by contracting with mutual fund companies to receive "revenue sharing" payments.

Hartford Life has denied and continues to deny any wrongdoing or liability, and will vigorously defend the lawsuit if the proposed Settlement is not approved.

### 3.   What is a class action lawsuit?

In a class action lawsuit, one or more people called "class representatives" sue on their own behalf and on behalf of other people who have similar claims. One court resolves all the issues for all class members in a single lawsuit. Phones Plus is the class representative in this lawsuit.

### 4.    Why is there a Settlement?

The parties have agreed to a Settlement after extensive negotiations. By agreeing to a Settlement, the parties avoid the costs and risks of further litigation, and Plaintiff and the other members of the class will get compensation and other benefits. Class Counsel have conducted an extensive review of the evidence in the case and the potential risks and benefits of continued litigation. Plaintiff and Class Counsel agree that the Settlement is in the best interest of the class. The Court has not made any finding that Hartford Life has done anything wrong or violated any law or regulation.

Class Counsel retained an independent fiduciary to evaluate the fairness of the Settlement. The independent fiduciary is Nicholas L. Saakvitne, Esquire. The independent fiduciary agrees that the Settlement is in the best interest of the class.

### 5.    How do I get more information about the Settlement?

This notice is only a summary of the lawsuit and the proposed Settlement. It is not a complete description of the lawsuit or the proposed Settlement. You may inspect the pleadings and other papers (including the Settlement Agreement) that have been filed in this lawsuit at the office of the Clerk of the United States District Court for the District of Connecticut, which is located in the Abraham Ribicoff Federal Building, 450 Main Street, Hartford, CT 06103. You can also review the Settlement Agreement and related documents at **[Settlement website].**

If you have questions about this Notice or the proposed Settlement, you may contact Class Counsel (see answer to question 15 for contact information) or the Settlement Administrator (see answer to question 6 for contact information).

> **Do not contact the Court or Hartford Life for information about the Settlement. The Settlement Administrator or Class Counsel can answer any questions you may have about the proposed Settlement.**

### 6.    Who will administer the Settlement?

The Settlement Administrator, The Garden City Group, will administer the Settlement, including the processing of the Instruction Form that plans need to fill out and send in to receive any money. You may contact the Settlement Administrator by: (a) sending a letter to **[insert contact information]**; (b) sending an e-mail to **[insert]**; (c) visiting the Settlement website at **[insert address of Settlement website]**; or (d) calling (800) _____.

## THE SETTLEMENT BENEFITS – WHAT YOU MAY GET

### 7.    What does the Settlement provide?

Hartford Life has agreed to pay a total of $13,775,000 in cash to settle the case. In addition, Hartford Life has agreed to pay up to $300,000 towards the costs of administering the Settlement. The $13,775,000 will be used to pay (a) compensation to Monetary Relief Class Members, (b) any Case Contribution Fee to Phones Plus, (c) all Attorneys' Fees approved by the Court to Class Counsel, (d) any costs of administering the Settlement that exceed $300,000, and (e) certain taxes and tax-related costs relating to the Settlement. The amount that will be

available for distribution to Monetary Relief Class Members (known as the "Distributable Settlement Amount") will be $13,775,000 *minus* the amounts used for other Settlement purposes (Case Contribution Fee, Court-approved Attorneys' Fees to Class Counsel, administration costs, if any, that exceed $300,000, and certain taxes and tax-related costs).

As part of the Settlement, Hartford Life has also agreed to change certain of its business practices that relate to the way Hartford Life contracts with plans and the information it provides to plans about revenue sharing.

### 8.    How will I benefit from the Settlement?

You will benefit in two ways. First, you may be entitled to have your plan receive a portion of the Distributable Settlement Amount. The amount paid to each plan will be determined by a Plan of Allocation. As explained below, all you have to do is submit the enclosed Instruction Form that tells Hartford Life how the money should be distributed.

Second, if your plan currently contracts with Hartford Life (or if your plan contracts with Hartford Life in the future), you will receive the benefit of the changed business practices that Hartford Life has agreed to follow. Among other things, Hartford Life has agreed to provide additional disclosures about the sorts of fees it receives.

### 9.    How do I submit a claim for compensation?

For your plan to receive money, it must submit an Instruction Form that tells Hartford Life how the money should be distributed. A copy of the Instruction Form is enclosed. A Monetary Relief Class Member that has an in-force contract with Hartford Life can receive payment in one of two forms:  (i) a check payable to the plan, or (ii) credits to the 401(a) or 401(k) accounts of the current participants in the plan. A Monetary Relief Class Member that does *not* have an in-force contract with Hartford Life can receive payment in one of two forms:  (i) a check payable to the plan, or (ii) a check payable to its current 401(a) or 401(k) service provider. All checks must be cashed within 90 days of issuance.

**If you want to receive any monetary benefits from the Settlement, you must submit the Instruction Form by [DATE], 2010. The Instruction Form should be mailed to the address shown on the Form.**

An Instruction Form will be deemed submitted when it is actually received by the Settlement Administrator at the address listed in the Instruction Form.

**Even if you do not submit an Instruction Form, you will be bound by the Settlement unless you opt out. (See answers to questions 12, 14 and 15 below.)**

### 10.    What is the Plaintiff receiving from the Settlement?

In this case, there is one class representative, Phones Plus. Class Counsel intends to ask the Court to award Phones Plus a Case Contribution Fee of $25,000. Hartford Life has agreed not to take any position with respect to the Case Contribution Fee up to that amount.

## THE SETTLEMENT BENEFITS – WHAT YOU GIVE UP

**11.     What do I give up by participating in the Settlement?**

Unless you opt out of the Monetary Relief Class, each member of the Monetary Relief Class gives Hartford Life a "release."  A release means you give up the right to sue Hartford Life or receive any benefits from any other lawsuit against Hartford Life if the lawsuit asserts claims or relates in any way to the practices at issue in this lawsuit.

For additional details about the scope of the release, consult the Settlement Agreement or contact Class Counsel. (See answer to question 5 for details.)

If you are a member of the Structural Changes Class, you will be giving Hartford Life a "covenant not to sue" with respect to the business practices it will follow as a result of this Settlement.  A covenant not to sue means that you give up the right to file a future lawsuit against Hartford Life that relates to the business practices that were challenged in this lawsuit and the new business practices that Hartford Life has agreed to follow as a result of the Settlement.

## THE LAWYERS REPRESENTING YOU

**12.     Do I have a lawyer in this case?**

Yes. The Court has appointed three law firms to represent you and other Class Members: Shepherd, Finkelman, Miller & Shah, LLP; Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor, LLP; and the Law Offices of Steven Ross, P.A. These lawyers are called Class Counsel. You will not be charged for the work of these lawyers. If you want to be represented by a different lawyer in this case, you may hire one at your own expense.

**13.     How will the lawyers (Class Counsel) be paid?**

Class Counsel will ask the Court for an award of reasonable attorneys' fees of up to $6,862,500, which would be paid out of the $13,775,000 Settlement amount. Hartford Life has agreed that it will take no position with respect to Class Counsel's request for attorneys' fees and expenses so long as the total amount does not exceed $6,862,500.

## OPTING OUT OF THE SETTLEMENT

**14.     Can I exclude myself from the Monetary Relief Class?**

You can exclude yourself from the Monetary Relief Class and the Settlement. By excluding yourself, you give up your right to receive money from the Settlement. By opting out, you preserve your right to bring your own lawsuit against Hartford Life.

As mentioned above, the Court has certified a separate class known as the Structural Changes Class. You cannot exclude yourself from the Structural Changes Class.  Therefore, the information provided in question 15 below is not applicable to members of the Structural Changes Class.

### 15.    How do I exclude myself from the Monetary Relief Class?

To exclude yourself from the Monetary Relief Class, an authorized representative of the plan must submit a written request for exclusion that includes (a) your name and the name of your plan, (b) your address, (c) your telephone number, and (d) a signed statement that "I/we hereby request that I/we be excluded from the proposed class in the *Phones Plus, Inc. v. Hartford Life* litigation." Requests for exclusion must be mailed separately to the Settlement Administrator and Class Counsel at the addresses listed below, and must be received no later than **[date]**.

The exclusion request should be addressed as follows:

*Class Counsel:*

> James E. Miller
> Shepherd, Finkelman, Miller & Shah, LLP
> 65 Main Street
> Chester, CT 06412

*Settlement Administrator:*

> The Garden City Group
> ADDRESS

### OBJECTING TO THE SETTLEMENT

### 16.    What does it mean to object?

Objecting is simply telling the Court that you do not like something about the Settlement. Objecting will not have any bearing on your right to receive the benefits of the Settlement if it is approved by the Court.

### 17.    What is the procedure for objecting to the Settlement?

Any class member who wants to object to all or any part of the Settlement, or the Case Contribution Fee or attorneys' fees, must file an objection in writing. Your objection must be received on or before **[date]**, and must list your name and the name of your plan, address, and telephone number and, if applicable, the name, address, and telephone number of your attorney. Your objection must be accompanied by any supporting papers or briefs you intend to submit in support of your objection. Objections must be filed with the Court <u>and</u> mailed to Class Counsel and Hartford Life's Counsel at the addresses listed below. You may also attend the Settlement hearing. If you intend to appear personally or through your own lawyer at the hearing, you must include a notice of intent to appear in addition to your objection and mail copies of the notice to the Court, Class Counsel, and Hartford Life's Counsel. Your objection must also include (1) a statement of membership in the class, (2) a description of the specific grounds for your objection, and (3) all papers you intend to present to the Court in opposition to the Settlement Agreement. **ANY CLASS MEMBER WHO DOES NOT OBJECT IN THE MANNER DESCRIBED ABOVE SHALL BE DEEMED TO HAVE WAIVED ANY OBJECTION AND SHALL**

**NOT HAVE ANY RIGHT TO OBJECT TO THE FAIRNESS OR ADEQUACY OF THE SETTLEMENT.**

| Clerk of the Court | Class Counsel | Defense Counsel |
|---|---|---|
| Clerk of Court<br>Abraham Ribicoff Federal Building<br>450 Main Street<br>Hartford, CT 06103 | James E. Miller<br>Shepherd, Finkelman, Miller & Shah, LLP<br>65 Main Street<br>Chester, CT 06412 | David F. Graham<br>Sidley Austin LLP<br>One South Dearborn Street<br>Chicago, IL 60603 |

## THE COURT'S FAIRNESS HEARING

### 18.   When/where will the Court decide whether to approve the Settlement?

On **[date]**, 2010, at **[time]** __.m., in Courtroom ____ of the Abraham Ribicoff Federal Building, 450 Main Street, Hartford, CT 06103, the Court will hold a fairness hearing to determine (a) whether the proposed Settlement is fair, reasonable, and adequate and whether it should be approved; (b) whether judgment should be entered dismissing the lawsuit with prejudice; (c) the amount Phones Plus will receive as a Case Contribution Fee; and (d) the amount of attorneys' fees and costs to be awarded to Class Counsel. The hearing may be continued from time to time by the Court without further notice.

### 19.   Do I have to attend the Fairness Hearing?

No. However, you are welcome to attend at your own expense. If you file an objection to the Settlement, you do not have to go to Court to talk about it. As long as your objection is filed by **[date]**, and you comply with the requirements in answer to question 15 above, the Court will consider it. You also may send your own lawyer to attend the Fairness Hearing

### 20.   May I speak at the Fairness Hearing?

You may ask the Court for permission to speak at the hearing. Anyone wishing to appear must state in their written objection their intention to appear at the Fairness Hearing.

## IF YOU DO NOTHING

### 21.   What happens if I do nothing at all?

You will be bound by the Settlement, including the release of claims against Hartford Life, but you will not receive any of the monetary benefits described above in answer to question 7.

DATED:

THIS NOTICE HAS BEEN SENT TO YOU BY ORDER
OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

# EXHIBIT B

# INSTRUCTION FORM

In order to receive a distribution from the Settlement, an authorized representative of the plan needs to complete this Instruction Form.  Please fill this out and return it to the following address:  **[insert address]**.

## I.      Information about the plan

Name of Plan:_____

Plan Tax ID Number:  _____

Group Number:  _____

Name of Authorized Plan Fiduciary:_____

## II.     Instructions to Hartford Life

**Question 1:**  Does the plan currently have a group annuity contract or group funding agreement with Hartford Life and/or use Hartford Life as its 401(k) or 401(a) service provider?

Yes    No      (Circle one)

If the answer is no, skip Question 2 and proceed to Question 3.

**Question 2:**  How does the plan want Hartford Life to apply its portion of the proceeds under the Settlement? [check only one]

____  The plan instructs Hartford Life to distribute any Settlement proceeds by issuing a check payable to the plan.  **Important note:** If you choose this option, the proceeds may only be used to defray reasonable plan expenses.  Check with your legal advisor if you have questions about how the proceeds may be used.

____  The plan instructs Hartford Life to distribute any Settlement proceeds to all current participants in the plan.  The Settlement proceeds shall be allocated to all current participants on the following basis [check only one of the options below]:

    ____  *Proportionately based on account balance.*  Allocate the full amount of the Settlement proceeds to current participants' account balances on a pro rata basis.  For example, a participant whose account balance represented one percent of the total assets in the plan would receive one percent of the allocation.  For each individual participant, the proceeds will be allocated as earnings across all contribution types on a pro rata basis.

___    *Per capita.* Divide the amount of the Settlement equally among all current participants.  Allocate the proceeds in accordance with the participant's current investment elections for new contributions.

☞Note:  Please provide (1) an Excel file of all participants receiving an allocation under this method, (2) the contribution source in which the proceeds are to be allocated (i.e. pre-tax, employer match, etc), and ensure that the total to be allocated equals the amount of the settlement proceeds.

If you checked one of the boxes in Question 2, above, please skip the remaining questions in Section II and proceed to Section III.

**Question 3:**  Did the plan previously have a group annuity contract or group funding agreement with Hartford Life and/or use Hartford Life as its 401(k) or 401(a) service provider?

Yes    No    (Circle one)

[If the answer is no, skip Question 4 and proceed to Question 5].

**Question 4:**  How does the plan want Hartford Life to distribute any proceeds under the Settlement? [check only one]

___    The plan instructs Hartford Life to distribute any Settlement proceeds by a check payable to the plan.  The check should be made payable to: _____ and mailed to the following address: _____.
**Important note:** If you choose this option, the proceeds may only be used to defray reasonable plan expenses.  Check with your legal advisor if you have questions about how the proceeds may be used.

___    The plan instructs Hartford Life to distribute any Settlement proceeds by a check payable to the plan's current service provider, which is _____ [insert name of service provider and the plan's contract number or other identifying information].

If you checked one of the boxes in Question 4, above, please proceed to Section III.

**Question 5:**  If you answered "no" to questions 1 and 3, the plan is likely not eligible to receive any money from the Settlement.  Please explain why you believe the plan is entitled to some distribution (attach additional sheets if necessary).  Attach documentation to support your belief.

**III.    Certification**

As authorized fiduciary for the above-identified plan, I hereby authorize and direct Hartford Life Insurance Company to utilize the allocation method selected above in applying the Settlement proceeds conveyed to the plan from *Phones Plus, Inc. v. Hartford Life Insurance Co.* or, if applicable, to forward the Settlement proceeds as instructed in response to Question 4.


Signature of Authorized Plan Fiduciary:_____

Print Name of Authorized Plan Fiduciary: _____

Date:_____

5167750

# EXHIBIT C

**If you are a fiduciary of a 401(k) or 401(a) ERISA plan that contracted, or may contract in the future, with Hartford Life Insurance Company, you should be aware of a class action settlement.**

*This is a summary.  See below for more information.*

**What is this about?**
In a lawsuit in federal court in Connecticut, the plaintiff, Phones Plus, Inc., has alleged that Hartford Life violated ERISA by receiving payments from mutual fund companies whose funds are offered as investment options to 401(k) and 401(a) retirement plans ("revenue sharing payments"). The court has not made any rulings about whether Hartford Life did anything wrong, and Hartford Life denies any wrongdoing.  Phones Plus has agreed to settle the case because it believes that the settlement provides substantial and meaningful benefits to the members of the settlement classes and in light of the potential risks of further litigation. Hartford Life has agreed to settle to avoid the business expense and distraction from further litigation.

**What does the settlement provide?**
Plans that have contracts with Hartford Life or have contracted with Hartford Life since November 14, 2003, can receive a payment from a settlement fund of $13,775,000. Hartford Life has also agreed to make a number of changes in its business practices for the next five years.

**Who represents me?**
The court has appointed lawyers to represent two classes of retirement plans at no cost to class members.  These attorneys will ask the court to award up to $6,862,500 from the settlement fund for their fees and expenses and the court will determine the reasonable fees and expenses to be paid. You may hire your own attorney if you wish, but at your own cost.

**What are my rights?**

- To get money, your plan must submit a completed Instruction Form by [DATE]. If you do nothing, you will remain in the class but receive no money. You do not need to do anything to get the benefit of the new business practices.

- You may exclude yourself from the class that can receive money by sending a letter to the address below postmarked no later than [DATE]. Your plan cannot get any money if you do so. You cannot exclude yourself from the structural changes class that includes in-force contracts and contracts that are purchased in the future.

- You may object to the settlement by filing an objection with the Court no later than [DATE].

- If the settlement is approved by the Court, class members who do not opt out will give up any claims covered by the settlement and will be bound by the Court's orders in the case.

The Court will hold a hearing on _____, 2010 at _____ to consider whether the settlement is fair, reasonable, and adequate, and to consider the motion for attorneys' fees and expenses.

**To request a copy of the full class notice or an Instruction Form, or for further information:**

**Call: 1 800-xxx-xxxx**

**Visit: www.xxxxxxxx**

**Write: Settlement Administrator
c/o The Garden City Group, Inc.
ADDRESS**

5167656

# EXHIBIT D

# PLAN OF ALLOCATION

This document describes the plan by which the Distributable Settlement Amount will be allocated to plans that are part of the Monetary Relief Class. Capitalized terms have the same meaning as they do in the Settlement Agreement. The steps set forth below will be completed by relying on data from Hartford Life's computer systems. Hartford Life shall exercise its best efforts to obtain all readily available data to implement the Plan of Allocation, but shall have no obligation to obtain data that is not readily available.

**Step 1:** The parties will identify all Monetary Relief Class Members.

**Step 2:** The parties will eliminate all plans that fail to timely return a fully completed Instruction Form or that opt out of the Settlement.   The resulting list will be known as the list of "Recipient Plans."

**Step 3:** The parties will determine the average assets of each Recipient Plan during the entire class period. For Recipient Plans that did not use Hartford Life for the entire class period, the amount of average assets will be reduced in proportion to the time during the class period when the Recipient Plan did not use Hartford Life's services.

**Step 4:** Using the dollar figures generated in step 3, each Recipient Plan's total average assets shall be divided by the total average assets of all Recipient Plans to determine the percentage that each Recipient Plan's assets bear to the total of all Recipient Plans' assets. Each resulting figure will be known as the Recipient Plan's "Percentage."

**Step 5:** Each Recipient Plan's Percentage will be multiplied by the Distributable Settlement Amount. The product will be the amount distributed to the Recipient Plan.

# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

PHONES PLUS, INC., Plan Administrator )
of the Phones Plus Retirement Savings Plan, )
on behalf of itself and all others similarly )
Situated, )
 )
    Plaintiff, )
 )
v. ) Civil Action No. 3:06-cv-01835 (AVC)
 )
HARTFORD LIFE INSURANCE COMPANY )
and NEUBERGER BERMAN )
MANAGEMENT INC., )
 )
    Defendants. )

## ORDER PRELIMINARILY APPROVING SETTLEMENT
## AND APPROVING FORM AND MANNER OF NOTICE

WHEREAS, the above-titled putative nationwide class action is pending before the Court; and

WHEREAS, Phones Plus, on behalf of itself and the Members of the Settlement Classes in the Action, Hartford Life, and the Third-Party Defendants have entered into a Settlement Agreement and Release dated as of February 11, 2009 (the "Agreement"), which is subject to review and approval under Rule 23 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and which, together with the exhibits thereto, sets forth the terms and conditions for the proposed settlement of the Action and the dismissal of the Action with prejudice; and the Court having read and considered the Agreement and the accompanying documents; and the parties to the Agreement having consented to entry of this Order; and all capitalized terms used herein having the same meanings set forth in the Agreement;

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. Pursuant to Fed. R. Civ. P. 23(b)(3), the Court preliminarily certifies, for purposes of effectuating the Settlement only, a "Monetary Relief Class" consisting of all current and former trustees, sponsors, fiduciaries, and administrators of employee pension benefit plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA") subject to Internal Revenue Code ("IRC") §§ 401(a) or 401(k) for which employee pension benefit plans Hartford Life has acted as a service provider at any time from November 14, 2003 through the date that the Court enters this Preliminary Approval Order.

2. Pursuant to Fed. R. Civ. P. 23(b)(1), the Court preliminarily certifies, for purposes of effectuating the Settlement only, a Structural Changes Class consisting of all trustees, sponsors, fiduciaries, and administrators of employee pension benefit plans covered by ERISA subject to IRC §§ 401(a) or 401(k) for which employee pension benefit plans Hartford Life acts as a service provider on the date that the Court enters this Preliminary Approval Order and all trustees, sponsors, fiduciaries, and administrators of employee pension benefit plans covered by ERISA subject to IRC §§ 401(a) or 401(k) for which employee pension benefit plans Hartford Life acts as a service provider after the date the Preliminary Approval Order is entered.

3. The Court appoints Phones Plus, Inc., the sponsor and the plan administrator of the Phones Plus Retirement Savings Plan ("Phones Plus"), as the Class Representative for both the Monetary Relief Class and the Structural Changes Class (collectively, the "Settlement Classes"),

4. The Court appoints the following firms as counsel to the Settlement Classes: (a) Shepherd, Finkelman, Miller & Shah, LLP; (b) Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP; and (c) Law Offices of Steven Ross, P.A.

5. The terms of the Agreement, and the Settlement provided for therein, are preliminarily approved as fair, reasonable and adequate.

2

6.      The Court approves, in form and content, the Long Form Notice and the Published Notice annexed as exhibits A and C, respectively, to the Agreement, and finds that the dissemination, mailing and Internet posting of the Long Form Notice and the publication of the Published Notice in the form set forth in the exhibits to the Agreement and as set forth herein, meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and the Rules of this Court, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.

7.      The Garden City Group, Inc. is hereby appointed Settlement Administrator to supervise and administer the notice process as well as to oversee the administration of the Settlement, as more fully set forth in the Agreement.

8.      The Settlement Administrator may proceed with the distribution of the class notices as follows:

(a)      Within thirty (30) days of the entry of this Order, the Settlement Administrator shall send the Long Form Notice and the Instruction Form in accordance with section 2.5 of the Agreement.

(b)      Within thirty (30) days of the entry of this Order, and at least one day after the first date on which the Long Form Notice is mailed, the Settlement Administrator shall cause to be published once the Published Notice as set forth in paragraph 2.6 of the Agreement.

9.      Any Monetary Relief Class Member may request exclusion from the Monetary Relief Class (but not from the Structural Changes Class, to the extent it qualifies as a Structural Changes Class Member) by expressly stating its request in a written exclusion request (the "Exclusion Request"). Exclusion Requests must be received by the Settlement Administrator by _____, 2010, which is fourteen (14) days prior to the Final Approval Hearing. Structural

3

Changes Class Members shall not be permitted to exclude themselves from the Structural Changes Class.

10.     Any Member of the Settlement Classes who objects to any aspect of the Agreement or the amount of the attorneys' fees and costs that Phones Plus's Counsel has indicated it intends to seek, may do so, either personally or through an attorney, by filing with the Court a written notice of objection, together with any supporting written or documentary materials with the Clerk of the Court on or before _____, which is twenty-one (21) days prior to the Final Approval Hearing.

11.     Monetary Relief Class Members shall complete and submit an Instruction Form in accordance with paragraph 2.5 of the Agreement.  Such Instruction Form must be received by _____,

12.     Pending the final determination of the fairness, reasonableness, and adequacy of the proposed Settlement: (a) no Monetary Relief Class Member may, either directly, representatively, or in any other capacity, prosecute, institute, or commence any individual, class, or other action with respect to the Released Claims against any of the Hartford Life Released Parties; (b) Hartford Life may not, either directly, representatively, or in any other capacity, prosecute, institute, or commence any individual, class, or other action with respect to the Released Counter claims against Phones Plus or any Member of the Settlement Classes; and (c) Hartford Life may not, either directly, representatively, or in any other capacity, prosecute, institute, or commence any individual, class, or other action with respect to the Released Third-Party Claims against the Third-Party Defendants or any trustees, sponsors, fiduciaries, or administrators of any Member of the Settlement Classes.

13.     Pending the final determination of the fairness, reasonableness, and adequacy of the proposed Settlement, no Structural Changes Class Member may, either directly, representatively, or in any other capacity, prosecute, institute, or commence any individual, class, or other action in any federal or state forum any claim with respect to (a) matters pertaining to or arising out of the

4

solicitation, negotiation, or receipt of Revenue Sharing, (b) disclosures about Revenue Sharing, (c) assembly, substitution, addition, or removal of investment options from the Overall Menu, (d) Fund Agreements, (e) operation of any Separate Accounts, (f) matters pertaining to disclosure and retention of Float, (g) the reinvestment of dividends paid by mutual funds, (h) sufficiency of the information about investment options, fees, and charges that is provided in connection with the operation of Hartford Life's retirement plan business, (i) contractual arrangements or conduct as a service provider with respect to any Structural Changes Class Member, including but not limited to any alleged rights, obligations, discretion or conduct by Hartford Life as a service provider claimed to give rise to fiduciary status on the part of Hartford Life with respect to Revenue Sharing, and (j) any actions arising out of or related to the negotiation or performance of the Settlement Agreement or matters related thereto.

14.     The Court reserves the right to approve the Settlement with such modifications as may be agreed to by the parties and without further notice to Members of the Settlement Classes. The parties shall be permitted to make any jointly agreed, non-substantive corrections or changes to the notices to the Settlement Classes, the Instruction Form and other settlement documents without seeking further approval of the Court.

15.     All papers in support of the Settlement, and responses to any objections thereto, shall be filed with the Court and served on or before **[date]**.

16.     A hearing (the "Final Approval Hearing"), pursuant to Fed. R. Civ. P. 23(e), shall be held before the Court on _____, 2010, at __:__ __.m. in Courtroom 125 of the United States District Court for the District of Connecticut, Abraham Ribicoff Federal Building, United States Courthouse, 450 Main Street, Hartford, Connecticut (or such adjourned time or times as the Court may without further notice direct):

5

(a)      to determine whether to finally certify the Monetary Relief Class pursuant to Fed. R. Civ. P. 23(b)(3) and the Structural Changes Class pursuant to Fed. R. Civ. P. 23(b)(1);

(b)      to determine whether the terms of the Agreement and the proposed Settlement provided for therein are fair, reasonable, adequate and in the best interests of the Settlement Classes and should be approved by the Court;

(c)      to determine whether the proposed Plan of Allocation for distributing the settlement proceeds among Monetary Relief Class Members should be approved by the Court;

(d)      to consider the applications for attorneys' fees, costs, and Case Contribution Fees; and

(e)      to hear and rule upon such other matters as the Court may deem appropriate.


DATED: _____      _____
                            THE HONORABLE ALFRED V. COVELLO
                            UNITED STATES DISTRICT JUDGE

# EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

PHONES PLUS, INC., Plan Administrator )
of the Phones Plus Retirement Savings Plan, )
on behalf of itself and all others similarly )
Situated, )
                        )
           Plaintiff, )
                        )
v. )     Civil Action No. 3:06-cv-01835 (AVC)
                        )
HARTFORD LIFE INSURANCE COMPANY )
and NEUBERGER BERMAN )
MANAGEMENT INC., )
                        )
          Defendants. )

## FINAL APPROVAL ORDER AND JUDGMENT

WHEREAS, on _____, 2010, this Court conducted a hearing (1) to

determine whether to finally certify the Monetary Relief Class pursuant to Fed. R. Civ. P.

23(b)(3) and the Structural Changes Class pursuant to Fed. R. Civ. P. 23(b)(1); (2) to determine

whether the terms of the Settlement Agreement and the proposed Settlement provided for therein

are fair, reasonable, adequate and in the best interests of the Settlement Classes and should be

approved by the Court; (3) to determine whether the proposed Plan of Allocation for distributing

the settlement proceeds among Monetary Relief Class Members should be approved by the

Court; (4) to consider the applications for attorneys' fees, costs and the Case Contribution Fee;

and (5) to hear and rule upon such other matters as the Court may deem appropriate (the "Final

Approval Hearing");

WHEREAS, the Court was advised at the Final Approval Hearing that the Long

Form Notice in the form approved by the Court was provided to all Monetary Relief Class

Members pursuant to the terms of the Parties' Settlement Agreement and posted on the

Settlement Website, and that the Published Notice in the form approved by the Court was published in *The Wall Street Journal*; and

WHEREAS, the Court having considered all matters submitted to it at the Final Approval Hearing, including the arguments of counsel for the parties and counsel for any objectors;

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Settlement Agreement, including the definitions contained therein, is incorporated by reference in this Final Approval Order and Judgment.

2.      The Court has jurisdiction over the subject matter of the Action, Phones Plus, all the Members of the Settlement Classes, Hartford Life, and the Third-Party Defendants.

3.      Pursuant to Fed. R. Civ. P. 23(b)(3), the Court hereby finally certifies, for purposes of effectuating the Settlement only, a Monetary Relief Class consisting of all current and former trustees, sponsors, fiduciaries, and administrators of employee pension benefit plans covered by the Employee Retirement Income Security Act of 1974 ("ERISA") subject to Internal Revenue Code ("IRC") §§ 401(a) or 401(k) for which employee pension benefit plans Hartford Life has acted as a service provider at any time from November 14, 2003 through February __, 2010 **[insert date of the Preliminary Approval Order]**.

4.      Pursuant to Fed. R. Civ. P. 23(b)(1), the Court hereby certifies, for purposes of effectuating the Settlement only, a Structural Changes Class consisting of all trustees, sponsors, fiduciaries, and administrators of employee pension benefit plans covered by ERISA subject to IRC §§ 401(a) or 401(k) for which employee pension benefit plans The Hartford acts as a service provider on the date that the Court enters the Preliminary Approval Order and all trustees, sponsors, fiduciaries, and administrators of employee pension benefit plans covered by ERISA subject to IRC

§§ 401(a) or 401(k) for which employee pension benefit plans Hartford Life acts as a service provider after the date the Preliminary Approval Order is entered.

5.    The Court appoints Phones Plus, Inc., the sponsor and the plan administrator of the Phones Plus Retirement Savings Plan ("Phones Plus"), as the Class Representative for both the Monetary Relief Class and the Structural Changes Class (collectively, the "Settlement Classes")

6.    The Court appoints the following firms as counsel to the Settlement Classes: (a) Shepherd, Finkelman, Miller & Shah, LLP; (b) Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP; and (c) Law Offices of Steven Ross, P.A.

7.    The Court finds that Hartford Life has complied with the notice requirements of 28 U.S.C. § 1715 and has previously filed a notice confirming its compliance.

8.    The Long Form Notice was provided to all Monetary Relief Class Members who could be identified with reasonable effort, and the Published Notice was published in *The Wall Street Journal*. The form and method of notifying the Settlement Classes of the terms and conditions of the proposed Settlement met the requirements of Fed. R. Civ. P. 23, due process, and any other applicable law; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto.

9.    A total of __ plans opted to exclude themselves from the Monetary Relief Class. A list of the plans that have validly excluded themselves from the Monetary Relief Class is attached as Exhibit [1] hereto.

10.    A total of ___ objections to the settlement were filed. The Court finds that none of these objections are well taken, and overrules all of these objections.

11.    The Settlement is approved as fair, reasonable and adequate, and the Parties are directed to consummate the Settlement Agreement in accordance with its terms and conditions.

12.    The Plan of Allocation is also hereby approved as fair, reasonable and adequate.

3

13.     The Action, Counterclaims, and Third-Party Claims are hereby dismissed with prejudice in their entirety and without an award of costs.

14.     As a result of Hartford Life's agreement to implement the actions described in Section IV of the Agreement, and for so long as Hartford Life continues to abide by the practices described in Section IV of the Agreement, the Court makes the following findings of fact:

(a)     Hartford Life is not a fiduciary with respect to the receipt of Revenue Sharing within the meaning of any of the subsections of 29 U.S.C. § 1002(21)(A);

(b)     With respect to Hartford Life's future receipt of Revenue Sharing in connection with any Structural Changes Class Member:

(i)     Hartford Life does not exercise any discretionary authority or discretionary control respecting management of any Structural Changes Class Member, and does not exercise any authority or control respecting the management or disposition of any the Structural Changes Class Member's assets;

(ii)     Hartford Life does not render investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or property of any Structural Changes Class Member, nor does it have any authority or responsibility to do so; and

(iii)     Hartford Life does not have any discretionary authority or discretionary responsibility in the administration of any Structural Changes Class Member.

15.     Based on the findings of fact in paragraph 14 above, the Court declares that Hartford Life is not a fiduciary, within the meaning of any subsection of 29 U.S.C. § 1002(21)(A), with respect to the receipt of Revenue Sharing.  In addition, the Court declares and finds that Hartford Life's compliance with the terms of the Agreement shall not constitute a breach of fiduciary duty, a violation of any prohibited transaction rule, or any violation of ERISA in any respect. The Court is not finding that, in the absence of the changes described in Section IV of the Agreement, Hartford

4

Life was a fiduciary with respect to receipt of Revenue Sharing, breached its fiduciary duty, violated

any prohibited transaction rule, or was otherwise in violation of ERISA in any respect.

16.    (a) For purposes of this section 16, the following definitions (which are identical to

the definitions contained in the Settlement Agreement) shall apply:

"Hartford Life Released Parties" shall mean Hartford Life and each of its present,

past, and future predecessors, successors, parents, subsidiaries, affiliates, divisions, assigns, officers,

directors, committees, employees, fiduciaries, administrators, actuaries, agents, insurers,

representatives, attorneys, retained experts and trustees.

"Released Claims" shall mean any and all claims, liabilities, demands, causes of

action, or lawsuits, known or unknown (including Unknown Claims), whether legal, statutory,

equitable or of any other type or form, whether under federal or state law, and whether brought in an

individual, representative or any other capacity, that in any way relate to or arise out of or in

connection with acts, omissions, facts, statements, matters, transactions, or occurrences that have

been alleged or referred to or could have been alleged in the Action, including in any court filing or

any discovery request or response, including but not limited to (a) matters pertaining to or arising out

of the solicitation, negotiation, or receipt of Revenue Sharing, (b) disclosures about Revenue

Sharing, (c) assembly, substitution, addition, or removal of investment options from the Overall

Menu, (d) Fund Agreements, (e) operation of any Separate Accounts, (f) matters pertaining to

disclosure and retention of Float, (g) the reinvestment of dividends paid by any Fund Company, (h)

sufficiency of the information about investment options, fees, and charges that is provided in

connection with the operation of Hartford Life's retirement plan business, (i) contractual

arrangements or conduct as a service provider relating to any Monetary Relief Class Member,

including but not limited to any alleged rights, obligations, discretion or conduct by Hartford Life as

a service provider claimed to give rise to fiduciary status on the part of Hartford Life with respect to

Revenue Sharing, and (j) any actions arising out of or related to the negotiation or performance of the Settlement Agreement or matters relating thereto.

"Released Counterclaims" shall mean any and all claims, liabilities, demands, causes of action, or lawsuits, known or unknown (including Unknown Claims), whether legal, statutory, equitable or of any other type or form, whether under federal or state law, and whether brought in an individual, representative or any other capacity, that in any way relate to or arise out of acts, omissions, facts, statements, matters, transactions, or occurrences that have been alleged or referred to or could have been alleged in the Action.

"Released Third-Party Claims" shall mean any and all claims, liabilities, demands, causes of action, or lawsuits, known or unknown (including Unknown Claims), whether legal, statutory, equitable or of any other type or form, whether under federal or state law, and whether brought in an individual, representative or any other capacity, that in any way relate to or arise out of acts, omissions, facts, statements, matters, transactions, or occurrences that have been alleged or referred to or could have been alleged in the Action, including in any court filing or any discovery request or response.

(b)   Upon the occurrence of the Effective Date, (a) all Monetary Relief Class Members are permanently enjoined from, either directly, representatively, or in any other capacity, prosecuting, instituting, or commencing any individual, class, or other action with respect to the Released Claims against any of the Hartford Life Released Parties; (b) Hartford Life is permanently enjoined from, either directly, representatively, or in any other capacity, prosecuting, instituting, or commencing any individual, class, or other action with respect to the Released Counterclaims against Phones Plus or any Member of the Settlement Classes; and (c) Hartford Life is permanently enjoined from, either directly, representatively, or in any other capacity, prosecuting, instituting, or commencing any individual, class, or other action with respect to the Released Third-Party Claims

6

against the Third-Party Defendants or any trustees, sponsors, fiduciaries, or administrators of any Member of the Settlement Classes.

17.     For as long Hartford Life continues to comply with Section IV of the Agreement, all Structural Changes Class Members are permanently enjoined from instituting, maintaining, prosecuting, suing, or asserting in any action or proceeding in any federal or state forum any claim with respect to matters that have been alleged or referred to or could have been alleged in the Action, including in any court filing or any discovery request or response, including but not limited to (a) matters pertaining to or arising out of the solicitation, negotiation, or receipt of Revenue Sharing, (b) disclosures about Revenue Sharing, (c) assembly, substitution, addition, or removal of investment options from the Overall Menu, (d) Fund Agreements, (e) operation of any Separate Accounts, (f) matters pertaining to disclosure and retention of Float, (g) the reinvestment of dividends paid by mutual funds, (h) sufficiency of the information about investment options, fees, and charges that is provided in connection with the operation of Hartford Life's retirement plan business, (i) contractual arrangements or conduct as a service provider with respect to any Structural Changes Class Member, including but not limited to any alleged rights, obligations, discretion or conduct by Hartford Life as a service provider claimed to give rise to fiduciary status on the part of Hartford Life with respect to Revenue Sharing, and (j) any actions arising out of or related to the negotiation or performance of the Settlement Agreement or matters related thereto.

19.     In recognition of their work, the time and expenses incurred on behalf of the Members of the Settlement Classes and the value of the results achieved on behalf of the Members of the Settlement Classes, pursuant to the terms of the Settlement Agreement, Plaintiff shall be entitled to receive any Case Contribution Fee in the amount of $25,000, and counsel to the Settlement Classes shall be entitled to receive reasonable attorneys' fees in the amount of _____ plus  reasonable costs and other expenses in the amount of _____.

7

18.     Without affecting the finality of this Final Approval Order and Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the Settlement and any award or distribution of the Distributable Settlement Amount, including interest earned thereon; and (b) the Parties for purposes of construing, enforcing and administering the Agreement.

DATED: _____    _____

THE HONORABLE ALFRED V. COVELLO
UNITED STATES DISTRICT JUDGE

8

5084168